# EXHIBIT A

1  Stephan C. Dean and Liza D Dean
   DBA SUREFILE FILING SYSTEMS
2  37187 Bankside Drive #2
   Cathedral City, CA 92234
3  **b323**-314-9692
   Surefile@msn.com
4
   In Pro Per
5

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 03 2025

J. Reyes

6

7            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                      **COUNTY OF RIVERSIDE**

9                      **PALM SPRINGS BRANCH**

10

11  STEPHAN C. DEAN and LIZA D. DEAN,    ) Case No.: **CVPS 2 5 0 7 2 5 0**
    individually and DBA SUREFILE FILING )
12  SYSTEMS,                             ) Assigned to :
                                         )
13               Plaintiffs,             ) COMPLAINT
                                         )
14  v.                                   ) JURY TRIAL DEMANDED
                                         )
15  KAISER FOUNDATION HEALTH PLAN, INC., ) BREACH OF CONTRACT DECLARATORY
    KAISER FOUNDATION HOSPITALS, and Does)
    1-50 Inclusive,                      ) RELIEF
16
                Defendants.                Request for judicial notice attached and incorporated by
17
                                           reference the Declaration of Thomas Stefanelli, Declaration
18
                                           of Stephan C Dean and Liza D Dean DBA Surefile Filing
19
                                           Systems, July 2010 Transfer agreement, March 2011
20
                                           Settlement and Release Agreement, October 2012 Kaiser
21
                                           lawsuit, July 31, 2013 Transcript on Deans motion for
22
                                           summary judgement, August 20, 2013 State
23
                                           Court Ruling on Summary Judgement
24

25  Plaintiffs, Stephan C. Dean and Liza D. Dean; individually and doing business as SureFile Filing
26  Systems, allege:
27                      **I.  Parties and Relevant Persons**
28

                                                                                                1

1    1. Plaintiffs, Stephan C. Dean and Liza D. Dean reside in Cathedral City California and do business

2       as SureFile Filing Systems. They are referred to herein collectively and "DEAN". Even though

3       DEAN is referred to herein in the singular for convenience, it refers to both Stephan C. Dean and

4       Liza D. Dean unless specified otherwise.

5    2. Defendants Kaiser Foundation Health Plan, Inc. is a corporation that does business throughout

6       California, including Riverside County.

7    3. Defendants Kaiser Foundation Hospitals is an unincorporated entity that does business

8       throughout California, including Riverside Count and is an affiliate of Kaiser Foundation Health

9       Plan, Inc., Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals are referred to

10      herein collectively as "KAISER".

11    4. Defendants named herein as Docs 1-50 inclusive are presently unknown to Dean who therefore

12      names said defendants by such fictitious names. When the true names and capacities of said

13      Defendants DOES 1-50 are ascertained, this Complaint will be amended accordingly.

14    5. DEAN is informed and believes and theron alleges that at all times herein mention, the DOE

15      Defendants and Kaiser Foundation Hospitals were the agents, employees, co-venturers, affiliates,

16      or partners of each other Defendant and of Kaiser Foundation Health Plan, Inc. and in doing or

17      planning the actions herein alleged, each Defendant was acting with the course and scope of that

18      agency, employment, partnership or joint venture with the knowledge, consent, and approval of

19      the Defendant.

20        **The Parties Dispute in 2011 Was Over the Deans Future Use of the Kaiser Name and**

21                       **Trademark Without a License**

22    6. For years the Deans have done business with Kaiser. Between 2008 and 2010, plaintiffs entered

23      into two written contracts and numerous verbal agreements by which Kaiser transmitted to Dean

24      certain information about some of Kaiser's patients or members for storing and scanning by

25      Dean on plaintiff's computers until requested by Kaiser. The written contracts are commonly

26      referred to as the "West Los Angeles Agreement" and the "Moreno Valley Agreement"

27      (collectively, along with the verbal agreements, "the Storage/Scanning Contracts"). Both

28      terminated written contracts contained a prohibition on Dean using the Kaiser trademark or name

in advertising unless it was affirmatively granted in writing by Kaiser. Please see declaration of Thomas Stefanelli, Exhibit A, attached and incorporated by reference into this complaint, to wit: *"Publicity. Supplier will not, without the prior written consent of Kaiser Permanente, use in advertising, p[publicity, on the internet or otherwise the names, trade names, service marks, trade dress or logo of Kaiser Permanente, the Kaiser Permanente Medical Care Program or any affiliates of these entities or refer to the existence of this Agreement any press releases, advertising, web sites or material distributed or made available to prospective customers or other third parties"*.

7.  In 2010, Kaiser terminated the Storage/Scanning Contracts. The Plaintiffs demanded that the Deans restore to them all the paper documents regarding Plaintiffs members and patients that had been transferred to Dean under the terminated contracts. The plaintiffs entered into a transfer agreement to facilitate the transfer. Request for judicial notice, Dean Declaration (Exhibit 1). Kaiser conceded in that agreement that they owed the Plaintiffs money for storage and services rendered. In late 2010 the Deans wanted to be paid the money plaintiffs owed them of $110,000.00. The dispute was not about paying the money owed or even how much was owed. Kaiser refused to pay the money unless the parties agreed to resolve any future name and Trademark issues. Please see declaration of Thomas Stefanelli, page four, attached and incorporated by reference into this complaint:

*"As you can imagine, I'm a bit disappointed we couldn't close this off last year. I fear that Mr. Dean is backing himself into a corner with little upside. As you are aware, my client's offer to do a complete settlement in consideration for payment of $110,000 has expired. Sounds to me like you client never really intended to do a complete release. I had tried to be very clear that the only basis for resuming discussions with Mr. Dean last year was based on Mr. Dean's agreement to release all claims . I was quite surprised that Mr. Dean felt he had some surviving claims."*

### The Settlement Agreement

8.              In 2010 and 2011 the plaintiffs in this case were in a dispute over future trademark licensing terms.

The extrinsic admissible evidence attached and incorporated by reference in this complaint proves this material fact. Representing Kaiser was Holly Burke, their in-house attorney and representing the Deans was Thomas Stefanelli. *See Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.,*

*69 Cal.2nd 33 Holding, "Extrinsic evidence is admissible to explain the meaning of a written
agreement if the offered evidence is relevant to prove a meaning to which the language of the
instrument is reasonably susceptible."* **The key takeaway from this case is it is known for
establishing that extrinsic evidence is admissible to interpret a written contract if the
language could reasonable be understood in more than one way regarding the parties' intent.
This principle ensures that courts consider all relevant evidence when the contract's
language isn't clear.**

9.  Unless this court considers the evidence presented, it will not understand the parties' intent in

    executing the settlement agreement and the subject matter of the dispute and any, and all future

    claims are. The Deans are not asking this court to add or delete or amend the agreement, but to

    allow the evidence to explain the intent of the parties and prove that Kaiser's name and

    trademarks were the subject of the dispute in 2011. The evidence attached and incorporated by

    reference into this complaint is central to the Deans's allegations and plaintiff depends on it and

    proves this court has already decided this case in 2013. This will be discussed in detail in this

    complaint. Based on this admissible evidence this courts 2013 uncontested order granting Deans

    motion for Summary Judgement, see Dean Declaration, Exhibit 5, Request for Judicial Notice

    provides this matter has already been fully adjudicated to a final uncontested judgement and

    claim and issue preclusion do apply. The evidence provides that prior to Kaiser signing the

    agreement in 2011 the use of the name and Trademark was the outstanding issue (other claims).

    The ruling and interpretation provide that the March 2011 settlement and release resolved not

    only "disputes arising out of the subject agreements": but "all outstanding issues" between the

    parties" and "resolution of all disputes between the parties". The evidence provides that

    trademarks were an outstanding issue in 2011 prior to executing the settlement agreement by the

    plaintiffs in this case. It is too late to relitigate the issue or for Kaiser the expand the issues in

    this or any other court more than a decade later. The plaintiffs in this case agreed a decade ago

    to have this court interpret the settlement agreement and have subject matter jurisdiction of their

    federal claims. This court allowed Kaiser to amend their complaint to Breach of the Settlement

    agreement expanding the issues and present parole evidence (as the Deans are doing here). The

    plaintiff in 2013 instead decided to dismiss all their claims with prejudice making this court's

    ruling a final adjudication based on the merits and this court's interpretation of the settlement

agreement and this court's order on the Settlement Agreement controls. The plaintiff, by not amending conceded by way of dismissal with prejudice that they could not legally plead a cause of action that would not be defeated by the Settlement Agreements Release in paragraph 3. See Dean Exhibit 4, pg 27, line 1 – 12. Kaiser did not and cannot prove fraud. This courts final ruling states "It is a waiver of proof by conceding its truth, and it has the effect of removing the matter from the issues". See Dean Declaration, Exhibit 5, pg 4, starting at line 7. The conduct alleged was part of the original dispute in 2011 prior to executing the agreement and the agreement resolved all trademark issues. In other words, this conduct was addressed by this court in 2013 because the agreement resolved "ALL OUTSTANDING ISSUES", "RESOLUTION OF ALL DISPUTES" between the parties, and the Kaiser name and trademark was at issue in 2011 prior to filing the lawsuit. The declaration of Thomas Stefanelli attached and incorporated by reference in this complaint along with this court's judicially noticed litigation support this.

**In the case at bar the terms "Any and All Claims" "Other Claims" and "Future Claims" are Ambiguous**

10. The Deans are not contending, that the ambiguous terms "other claims" and "future claims" allow them to drive their car through Kaiser's doors and say the agreement shields them from all future claims. That would turn contract law on its head and require pages and pages of what parties to a contract can and cannot do. Notwithstanding, they are claiming the ambiguous term "other claims" and "future claims" in the settlement agreement relates to Kaisers name and trademark, which in the Storage/Scanning contracts Kaiser maintained the affirmative right, but as the admissible evidence proves, bargained away.

11. As is evident from the Declaration, **the dispute was about Dean being prohibited from using the KAISER name or logo in the future** in his business unless Kaiser affirmatively granted that right in writing a (trademark license) as was incorporated in the terminated Storage/Scanning agreements. Ms. Burke made clear that Kaisers trademark licensing claims had to survive this

fully integrated bi lateral settlement and release of all future claims. **Her intent was that Kaiser be able to continue to enforce its protected mark in the future and prevent the Deans from using it for commercial purposes in the future. The plaintiffs were not trying to settle a Trademark infringement claims that had never occurred. See Declaration of Thomas Stefanneli Exhibits A, B, C and D:**

> *"As I mentioned in my email last night, I believe the Publicity clause in the executed contract with Surefile restricts Surefile from using the KP name or logo without KP consent (see email below). KP does not intend to modify this requirement. If Surefile wants to use KP's name. Mr. Dean should contact Jules Parent in KP's Procurement & Supply organization, to obtain prior written consent. Mr. Dean has Jules's contact info.".*

> *"Please note that the no publicity clause applies across the board to all of our vendors. I believe it is enforceable as Kaiser Permanente is a protected mark. I believe KP is firmly entitled to prevent a party from using this mark and logo for commercial purposes."*

### Dean makes the offer and Kaiser accepts

12. After negotiating with Dean and his counsel regarding whether DEAN would be prohibited from using the Kaiser name and logo in Deans future businesses without Kaiser affirmatively granting it by written authorization and the price of such prohibition, plaintiff elected not to include such a provision in the Settlement Agreement and as a result, to pay a lower amount to Dean than Kaiser would have had to pay in order to include this licensing term in the Settlement Agreement. This decision was made after full consideration by Kaiser executives and its counsel; the plaintiff knew and understood that because of its deliberate choice, it would thenceforth be legally unable to prevent Dean from using the plaintiff's name or logo in the future as it had in the previous storage/scanning agreements.

13. This constituted not only plaintiff's releasing any future trademark claims against the Deans but also Kaiser bargained away that right and made it part of the consideration to Dean. In exchange the plaintiffs agreed to this bi lateral fully integrated release agreement. As is clear from Ms. Burkes email Dean made an offer and Kaiser accepted it. See Declaration of Thomas Stefanneli,

Exhibit F. Ms. Burke, Kaisers legal counsel even states *"I want to minimize any confusion at this point" "Without publicity restrictions".* Here is the offer, acceptance and consideration.

---

Tom

--- On Tue, 3/8/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
To: lawstef7771@yahoo.com
Date: Tuesday, March 8, 2011, 6:06 PM

Hi Tom,

I'm really sorry to hear about your Dad.

Thanks for getting back to me. I wanted to get confirmation on the current Dean offer. I want to minimize any confusion at this important point.

I wondered if you could confirm my understanding. As I understand the new offer, we have two options.

1. Option 1: $110K to settle with the previous language re: confidentiality. Please see Option 1 document, which is Version 9 (without additional confidentiality and publicity restrictions). I want to confirm if the document as marked was the acceptable version to go with Option 1. We would need to update the dates in this version.

2. Option 2: $200k with updated language re confidentiality, publicity and disparagement. Please see Option 2 document, which is Version 9 that I sent to you in mid-Jan. We would need to update the $ amounts and dates in this version.

**Option 1 Document:**

**Option 2 Document:**

Can you let me know if this is correct?

Thanks much,
Holly

---

The evidence provides that the Kaiser name and trademark was the underlying issue of the dispute prior to signing the agreement. Once Kaiser signed and paid the Deans on March 24, 2011, it became a binding release agreement, and they were no longer entitled to enforce

publicity restrictions on the Deans. See Declaration of Dean, Exhibit 2. "The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date." A release is a permission tool and is a promise by the owner not to sue for unauthorized use. Kaiser released publicity restrictions to the Deans on March 24, 2011. The plaintiff agreed and compromised ahead of time not to sue the Deans over future name and trademark claims. The admissible extrinsic evidence attached and incorporated by reference in this complaint proves this material fact.

## The ICANN Arbitration over DEAN's Domain Name
### The Breach

On October 15, 2021, KAISER submitted to ICANN (a nationwide clearing and enforcement organization for internet domain names) a complaint against DEAN alleging that DEAN had wrongfully used KAISER's trademarked name and logo in his website. On December 7, 2021, the arbitrators issued their decision. The arbitrators found that DEAN had wrongfully and in bad faith created a domain that infringed KAISER's rights and ordered that the domain name kphealthconnectusa.com be transferred to KAISER. The panel decided that because the settlement agreement contained no affirmative granting of the right for the Deans to use the Kaiser trademarks or name that the Deans had infringed on Kaisers rights, they also noted Kaiser never would have known about potential cybersquatting eleven years before it happened. The arbitrators decided they had the authority to add a term to a fully integrated agreement, in this case a term which Kaiser in 2011 bargained away as part of the consideration to Dean.

As of March 24, 2011, Kaiser no longer had a legal right to submit a claim with ICANN against Dean and was aware of this material fact when initiating the ICANN claim. Kaisers' actions in this matter constitute a Breach of the March 24, 2011, settlement and release.

## THE LAW

1  California law is clear on this matter "Courts will not add a term about which a contract is

2  silent." Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch., 229 Cal. 18App. 4th 549, 569

3  (2014). Similar to Plaintiffs' argument here, the Dameron plaintiff contended that a health plan it

4  contracted with had an obligation to help it pursue additional payments from third parties, even though

5  the contract did not say so, based on a history of cooperation. Id. At 568-69. The court rejected this

6  argument, explaining that the "contract's silence as to any obligation to assist in collection from third

7  party tortfeasors does not allow us to graft a new obligation into the agreement." Id. at 569. Instead, the

8  court explained, its "function is to determine what, in terms and substance, is contained in the contract,

9  not to insert what has been omitted." Id. Simply put, "[c]ourts will not add a term about which a contract

10 is silent." Id. (emphasis added). Kaiser cannot, after executing the March 24, 2011, agreement, try and

11 enforce terms that are contained in the previous agreements ("the Storage/Scanning Contracts") because

12 it supersedes them and is fully integrated. This court has already ruled on this matter and held the

13 settlement agreement resolved *"all outstanding disputes between the parties"* and *"all outstanding*

14 *issues between the parties"*. See Dean Declaration, Exhibit 5. The same as the Dameron plaintiff could

15 not add terms based on past cooperation.

16  19. The settlement agreement contains no provisions explicitly related to the use of the KFHP

17 marks because Kaiser decided to not include them as consideration to the Deans to settle the dispute, the

18 evidence proves this material fact. Kaiser willfully released all Lanham act claims. Courts are not at

19 liberty to read into a contract language that is demonstrably not there. See, e.g., Moss Dev. Co. v. Geary,

20 41 Cal. App. 3d 1, 9 (1974) ("Courts will not add a term to a contract about which the agreement is

21 silent."); Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59 (2000) ("We do not have the

22 power to create for the parties a contract that they did not make and cannot insert language that one

23 party now wishes were there.").

24  20.  The evidence proves the Deans case. The Deans burden is to prove KP trademarks were

25 part of the dispute, and they have done this. Once executed, by law the agreement shields the Deans

26 from future liability regarding the use of Kaisers Name or Trademark. Kaiser cannot add a term into the

27 settlement agreement (PUBLICITY RESTRICTIONS) that they now wish were there and bargained

28 away. A term that requires Dean have a (Trademark license) to use the Kaiser name and Trademark.

1  Request for Judicial Notice Dean Declaration (Exhibit 2) March 24, 2011, Settlement and Release
2  Agreement.

3  ### The Kaiser Lawsuit Results in Judgment for Dean

4      21.    In 2012, KAISER and DEAN had disagreements regarding DEAN's rights under the
5  Settlement Agreement and other matters. The parties attempted to settle their differences but could not
6  agree on the consideration the Deans would accept to release their surviving rights against Kaiser. On
7  October 12, 2012, KAISER filed a civil action in the Riverside Superior Court entitled Kaiser
8  Foundation Health Plan, Inc. and Kaiser Foundation Hospitals, plaintiffs v. Stephan Christopher Dean,
9  Liza Dean, dba SureFile Filing Systems and Does 1-10 inclusive, RSC No. INC 1207224. Request for
10  judicial notice Dean Declaration (Exhibit 3) ("the Kaiser Lawsuit"). The parties agreed to allow this
11  court to have jurisdiction over the federal claims. Kaiser contended that the Deans had breached the
12  parties canceled written agreements but conceded in the complaint that the parties had resolved all
13  outstanding issues between them in the March 24, 2011, settlement and release agreement.

14

15  22.    The March 24, 2011, settlement and release supersedes all previous canceled agreements,
16  important is what the settlement agreement includes and does not include. What is irrelevant in the
17  Kaiser lawsuit of 2012 was the subject matter, whether it was about the BAA or the terminated
18  Storage/Scanning contracts being breached. This lawsuit could have been about trademarks and the
19  Deans allegedly breaching the terminated Storage/Scanning contracts by creating a website using the
20  Kaiser name without their written authorization or alternatively Dean retaining patient information
21  allegedly breaching the BAA as Kaiser was claiming, notwithstanding the outcome would be the same.
22  It is unknown whether Kaiser will now contend that this lawsuit in 2012 pertained to patient information
23  and had nothing to do with Trademarks and therefore this courts preliminary interpretation and ruling on
24  the settlement agreement is not relevant. That argument is futile and should be rejected as it would
25  create a litigation nightmare by having the plaintiffs in constant litigation because of the ambiguous term
26  "other claims" and "future claims".

27

28

10

23.    What is relevant was the Deans motion for summary judgement and the basis for it, and Kaisers response or lack of one. The issue the Deans raised was in all relevant aspects the same as what is in front of this court the interpretation of the settlement agreement. Most important was this court's preliminary interpretation of the settlement agreement, and the question this court raised. Please see Dean Declaration, Exhibit 4, pg 16, starting at line 18.  Request for judicial notice transcript of July 31, 2013, hearing. "The question becomes: Did Kaiser give up all of those rights that they otherwise may have had to assert a breach of the BAA." (or in the case at bar a breach of the canceled Storage/Scanning contracts) by entering into a settlement agreement which purports to give up all claims, past, present, and future, with the exception of what is carved out under paragraph 13 of the settlement agreement?" In the case at bar paragraph 13 is very relevant because it does not mention anything about Kaiser trademarks being carved out of the canceled Storage/Scanning contracts and surviving. The very paragraph Ms. Burke wanted to have the trademark licensing language inserted from the previous agreements.

24.    The Deans' motion asserted that in the Settlement Agreement, the plaintiffs had released any claim against each other including future claims and that Kaiser had conceded in the complaint it resolved all outstanding issues between the parties. See Dean Declaration, Exhibit 4, page 3, starting at line 15-20. Kaiser, through its attorney Tom Freeman, argued that the Settlement Agreement applied only to the money debts that KAISER had to DEAN under the Storage/Scanning Contracts.  See Dean Declaration, Exhibit 4, pg 9, starting at line 5 through page 11, line 12.

       "Mr. FREEMAN: Yes. Your Honor, what it comes down to is the fact that Ms. Burke negotiated this agreement understanding that the dispute that was being resolved was the compensation for the Deans' services. "

25.    The court rejected plaintiffs' argument and held that the Settlement Agreement applied to any claim of any kind against DEAN including future claims.

       'THE COURT: Did it define the dispute? MR. FREEMAN: It does.

11

1    THE COURT: And would you read that to the court, and for the record, as to how it defines the
2    dispute.
3    MR. FREEMAN: So in the recitals, it says: "Whereas, Surefile asserts that it has yet to be fully
4    compensated for services performed and costs incurred in providing services to KP, and has alleged
5    other claims against KP -- "
6    THE COURT: Stop right there. "Other claims against KP." Do they identify what those other
7    claims are?
8    MR. FREEMAN: They do not define them in the settlement agreement.
9    THE COURT: And in addition to the dispute that you identified in that language, the settlement
10   agreement goes on to purport to settle any and all claims that one has against the other, both past,
11   present, and future. In fact, known and unknown claims.
12   MR. FREEMAN: It does. And -- and I'll concede that perhaps some of that language is not as
13   precise, which we would now hope it would have been.
14
15   26.    On August 20, 2013, this court entered its order granting the summary judgment Motion. The
16   uncontested ruling states the March 2011 settlement and release resolved not only disputes arising out of
17   the subject agreements, but all "outstanding issues" between the parties not just money claims as Kaiser
18   was arguing. Request for judicial notice Dean Declaration (Exhibit 5) summary judgement order. This
19   ruling is a final undisputed order and cannot over a decade later be appealed or relitigated as a claim by
20   Kaiser. Based on the new admissible extrinsic evidence attached and incorporated by reference in this
21   complaint, claim and issue preclusion do apply, and the agreement resolved trademark issues (ALL
22   OUTSTANDING ISSUES). Trademarks were an outstanding issue in 2011 prior to signing the
23   agreement and the evidence attached and incorporated by reference in this complaint proves this
24   material fact. Kaiser by not amending and expanding the issues in their complaint and providing parole
25   evidence explaining the subject matter (other claims) and the parties intent or appealing the ruling is a
26   concession of this fact.
27
28

27.    This court allowed Kaiser to file an amended complaint in 2013 permitting them to present parole evidence as to the parties intent in drafting the settlement agreement and expanding the issues. The plaintiff declined to do so, and on September 13, 2013, the Kaiser Lawsuit was dismissed with prejudice by Kaiser, leaving the summary judgment intact. A final judgement on the interpretation of the settlement agreement. Claim and issue preclusion due apply in this case. See Dean Declaration, Exhibit 4, page 26, line 7 through page 28, line 12.

"THE COURT: Okay. But then we -- then you are triggered by a fully integrated document. Are you going to introduce parol evidence to try and defeat paragraph 18, which fully integrates into this settlement agreement all prior agreements, negotiations, or understandings?

MR. FREEMAN: Yes. Your Honor, what comes down to is the fact that Ms. Burke negotiated this agreement understanding that the dispute that was being resolved was the compensation for the Deans' services.

THE COURT: Despite language to the contrary. So, she's going to submit a declaration to the court saying that "I drafted this release agreement, I chose the words within this release agreement, I made it all-encompassing, but, oh, by the way, I did not intend it to be a fully and completely integrated release agreement, releasing all known and unknown claims" and then specifically making reference to 1534? She's going to say that? I mean, she essentially already has.

MR. FREEMAN: She has said that Your Honor.

28.    Kaisers lawyer, Tom Freeman, throughout the hearing stated that Kaisers was going to amend the complaint, expanding the issues, even stating, "there be no ambiguity about the fact." When the court asked if they were going to plead Breach of the settlement agreement Mr. Freeman stated. See Dean Declaration, Exhibit 4, page 3, line 21 through page 4, line 20.

"THE COURT: But not leave to amend on an allegation of

a breach of the settlement agreement?

MR. FREEMAN: Well, it may be with respect to the

settlement agreement, Your Honor.

THE COURT: Okay."

13

29.    The Deans were ready to go to trial and allow Kaiser to present extrinsic evidence as to the party's intent in drafting the settlement agreement, and explain the ambiguous term "other claims" in the settlement agreement. Notwithstanding, Kaiser did the prudent thing, a cut and run, dismissing the complaint with prejudice. By not amending the complaint and dismissing with prejudice, Kaiser conceded they could not legally plead a cause of action that would not be defeated by the Settlement Agreement release in paragraph three. Plaintiff knew it would be a lesson in futility. See Dean Declaration, Exhibit 4, page 27, lines 1-12.

"How is it that any purported amended complaint that you could allege would wind up not being covered by this language that Ms. Burke drafted in the settlement agreement? And the reason I ask you that is the court is not obligated to grant your motion to amend the pleadings if you cannot legally plead a cause of action that otherwise is not defeated by this settlement agreement under paragraph 3, although I understand the court's obligation to liberally allow pleadings or amendment to the pleadings. But I just want to ask you. I don't want you to go through an exercise in futility. How do you plead around that?

MR: FREEMAN: Based on fraud."

30.    The reasoning behind the plaintiffs' decision is obvious, the admissible extrinsic evidence (Declaration of Thomas Stefanelli attached and incorporated by reference into this complaint) would prove the Deans contention they make in this complaint over a decade later. The ambiguous term "other claims "related to the Deans future use "Future Claims" of Kaisers name and Trademark (Lanham Act Claims). Plaintiff knew they could not legally prove fraud.

31.    Kaiser, on March 24, 2011, could no longer legally stop the Deans from using their name or trademark by requiring the Deans to have their affirmative granting in writing to do so. The Settlement agreement shields the Deans from future liability for their actions postdating its execution regarding the use of the Kaiser name or Trademark. By law the plaintiff cannot now add a licensing term to this fully integrated bi lateral settlement and release agreement which they as consideration bargained away.

32.     Kaiser in 2011 wanted to be able to continue to enforce its protected mark in the future, but instead released the right to preclude the Deans from using it in the future for commercial purposes as consideration. Plaintiff can no longer try and enforce language from the previous agreements. This courts uncontested ruling states the March 2011 settlement and release resolved not only" disputes arising out of the subject agreements" but "all outstanding issues" between the parties not just money claims as Kaiser was arguing. Dean Declaration, Exhibit 5, "Order Granting Defendants Motion for Summary Judgement".

"WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein. The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date."

33.     The admissible extrinsic evidence provides that the Kaiser name and trademark was the outstanding issue in 2011 and was the underlying dispute not money owed to the Deans. Plaintiffs are legally no longer entitled to enforce their protected mark and have this court in 2025 add a term that in 2011 they willfully decided to release and not to include in the settlement agreement. There is no publicity clause in the settlement agreement.

"Please note that the no publicity clause applies across the board to all of our vendors. I believe it is enforceable as Kaiser Permanente is a protected mark. I believe KP is firmly entitled to prevent a party from using this mark and logo for commercial purposes."

34.     The language above is simply not there for a reason; Kaiser conceded trademark rights to the Deans in March of 2011. This court's interpretation in 2013 below is clear and unambiguous. Whether the future claim was" known or unknown." The settlement agreement has this catch all provision.

1    "THE COURT: And in addition to the dispute that you identified in that language, the settlement

2    agreement goes on to purport to settle any and all claims that one has against the other, both past,

3    present, and future. In fact, known and unknown claims."

4        MR. FREEMAN: It does. And -- and I'll concede that perhaps some of that language is not as

5    precise, which we would now hope it would have been."

6

7    35.    Courts are not at liberty to read into a contract language that is demonstrably not there. See, e.g.,

8    Moss Dev. Co. v. Geary, 41 Cal. App. 3d 1, 9 (1974) ("Courts will not add a term to a contract about

9    which the agreement is silent."); Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59 (2000)

10    ("We do not have the power to create for the parties a contract that they did not make and cannot insert

11    language that one party now wishes were there.").

12

13    36.    Kaiser has no affirmative Lanham Act claims in 2025 because they willfully released them on

14    March 24, 2011 as consideration to the Deans. The admissible extrinsic evidence attached and

15    incorporated by reference into this complaint proves this material fact. The Kaiser name and Trademark

16    claims were known by the plaintiff Kaiser prior to executing the settlement agreement in 2011 and that

17    is an uncontested material fact. Kaiser, the defendant in this case made trademarks the issue in 2011 not

18    the Deans.

19        "The Settlement Funds shall be in full and final settlement and compromise of any claims they

20        might possess against the other, including without limitation the dispute and any counterclaims

21        and allegations related to or in connection with the Dispute for all times prior to and after the

22        Effective Date."

23

24    37.    It is a material fact that the defendants name and Trademark is connected to the dispute of 2011.

25    This court cannot now add or change the language to make the contract more precise at Kaisers' behest.

26    ("We do not have the power to create for the parties a contract that they did not make and cannot insert

27    language that one party now wishes were there.").

28

38.    Just because the Deans decided to wait until 2021 to use the Kaiser name and Trademark is not relevant. The parties in this case bargained in good faith for their use in 2011 prior to executing the release agreement. Plaintiff released all Lanham act claims in 2011. Kaiser cannot use this court to get them out of a deal they made just because they do not like it, or change this courts' final uncontested order, the agreement resolved all outstanding trademark issues. See Dean Declaration, Exhibit 5. The legally presented extrinsic evidence attached and incorporated by reference in this complaint along with the judicially noticed 2012 litigation proves this material fact.

## Breach of Contract

39.    DEAN incorporates by reference the allegations of paragraphs 1-38 above. The actions of KAISER in bringing and pursuing the ICANN Dispute, in taking the domain name created and used by DEAN, and in continuing to assert that DEAN has no legal right to use the KAISER name or logo are all breaches of the Settlement Agreement in which KAISER released all such claims. Such breaches of the Settlement Agreement are substantial causes of damage to DEAN in that he is unable to pursue his business using Kaisers trademark, which he is legally and contractually entitled to do, and which KAISER cannot legally prevent. The amount of damage caused to DEAN by the breaches of KAISER is uncertain but exceeds $100,000. DEAN will establish the true amount at trial.

1

2                          **DECLARATORY RELIEF**

3

4   40.     Dean incorporates by reference allegations of paragraphs 1-39 above.  The Deans respectfully

5   request that this court grant declaratory relief stating that the settlement and release agreement resolved

6   all outstanding issues between the parties including federal Lanham Act claims Under 15 USC 1051 TO

7   1127.  That Dean does not need to have written consent to use the Kaiser name and trademark for

8   marketing purposes.  That this courts' ruling from 2013 resolved all future name and trademark

9   litigation based on the evidence presented.

10

11  WHEREFORE, DEAN prays for judgement against all defendants, jointly and severally, as follows:

12  Damages to be proven at trial and a judicial Declaration that the parties March 24, 2011 Settlement and

13  Release agreement has resolved all outstanding Lanham Act claims.  That Dean does not need to have

14  written consent to use the Kaiser name and trademark for marketing purposes. That this courts' ruling in

15  2013 resolved all future name and trademark litigation based on the evidence presented.

16

17

18  /s/Stephan C. Dean, 08/14/2025

19  /s/Liza D. Dean, 08/14/2025

20

21

22

23

24

25

26

27

28

19

Stephan Dean
Liza Dean
37187 Bankside Drive, #2
Cathedral City, CA 92234
Telephone: (323) 314-9692

Plaintiffs in Pro Per

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

STEPHAN DEAN AND LIZA DEAN
INDIVIDUALLY AND DBA SUREFILE
FILING SYSTEM;

                Plaintiffs,

      vs.

KAISER FOUNDATION HEALTH PLAN,
INC.; KAISER FOUNDATION HOSPITALS;
DOES 1-50 INCLUSIVE

           Defendants

Case No:

**DECLARATION OF THOMAS STEFANELLI, ESQ.**

I, Thomas Stefanelli, Esq., declare and state as follows:

1.      I am an attorney licensed to practice before all of the Courts of the State of California. I have personal knowledge of the matters and facts contained within this declaration and if called upon as a witness I could and would competently testify to said matters and facts.

2.      I am the attorney who was assisting Stephan Dean, Liza Dean and Surefile Filing System in a dispute against Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals back in or about 2010/2011. Specifically, Stephan Dean, Liza Dean and Surefile Filing System were threatening Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals with litigation

-1-

**DECLARATION OF THOMAS STEFANELLI**

1    related to Kaiser's failure to pay for services rendered by the Deans.  On or about November 29,

2    2010, I, on behalf of the Stephan Dean, Liza Dean and Surefile Filing System, sent a letter to

3    Holly Burke, Senior Counsel for Kaiser, offering on behalf of my clients to sign a release of all

4    claims against Kaiser in return for a payment from Kaiser in the amount of $110,160.

5    3.        On or about December 14, 2010 I received from Holly Burke a Settlement Agreement

6    and Release prepared by Kaiser and noted to be "for discussion purposes only".  This proposed

7    Agreement and Release was to be signed by my clients and on behalf of Kaiser Foundation

8    Health Plan Inc. and Kaiser Foundation Hospitals.  It called for the payment of $100,000 from

9    Kaiser to my clients.  It also specified as follows:

10

11        WHEREAS, the parties to this Agreement now desire to settle and
12        compromise any claims they might possess against the other, settle
          the Dispute and otherwise resolve any outstanding issues as more
13        fully set forth herein.

14        The Settlement Funds shall be in full and final settlement and
15        compromise of any claims they might possess against the other,
          including without limitation the Dispute and any counterclaims and
16        allegations related to or in connection with the Dispute for all times
          prior to and after the Effective Date.
17

18        Non-Disclosure.  The nature and terms of this Agreement shall not
          be disclosed by any party hereto or its agents, attorneys, or any
19        other party; without the prior written consent of all of the
          other parties; provided, however, that any party may disclose the
20        existence of this Agreement, and the nature and terms thereof, (i)
          to the attorneys, accountants, and financial and tax advisors of that
21        party, (ii) as required or compelled by law, or (iii) to enforce the
          provisions of this Agreement.
22

23

24    4.        Throughout the rest of December 2010, I, on behalf of the Deans and Surefile and

25    Holly Burke on behalf of Kaiser continued to attempt to negotiate a settlement.  On behalf of the

26    Deans, I was demanding $110,000 (not the $100,000 mentioned in the original Settlement

27    Agreement and Release prepared by Kaiser).  I was also demanding a hold harmless clause

28

-2-

DECLARATION OF THOMAS STEFANELLI

requiring Kaiser to indemnify and hold harmless my clients from any third party claims (due to potential HIPAA violations associated with my client having access to medical record information). I was also demanding that Kaiser eliminate a 25% holding on the settlement funds for tax purposes. Holly Burke, in turn, was demanding that the non-disclosure clause be extended to preclude disclosure of not only the nature and terms of the agreement, but also of "services provided". An amended Settlement Agreement and Release was prepared by Kaiser noted again to be for "discussion purposes only" with the offer from Kaiser noted to expire on December 29, 2010.

5.    On or about December 27, 2010 I received an amended Settlement Agreement and Release from Holly Burke from Kaiser, which was again noted to be "for discussion purposes only". The agreement called for a payment from Kaiser to my clients in the amount of $110,000, included the hold harmless clause and removed any 25% withholding for tax purposes. The new proposed agreement continued, however, to require non-disclosure by my clients not only of the nature and terms of the agreement but also of "services provided". This offer from Kaiser was again noted to expire on December 29, 2010. My clients were agreeable to the settlement at that point as written, including the fact that it was a full and complete settlement of all claims that the parties might possess against each other. The only clause that my clients did not agree to at that time was the addition made by Kaiser to the non-disclosure clause precluding my clients from disclosing "services rendered".

6.    The deadline to accept Kaiser's offer (December 29, 2010) came and went. On or about January 7, 2011 I reached out to Holly Burke advising of my clients' desire to continue settlement negotiations but specifically advised that if Kaiser wanted the additional term of the non-disclosure agreement, then additional compensation beyond the $110,000 was required.

-3-
DECLARATION OF THOMAS STEFANELLI

7.    On or about January 8, 2011 Holly Burke got back to me.  Her email included the following:

> As you can imagine, I'm a bit disappointed we couldn't close this off last year. I fear that Mr. Dean is backing himself into a corner with little upside.
>
> As you are aware, my client's offer to do a complete settlement in consideration for a payment of $110,000 has expired. Sounds to me like your client never really intended to do a complete release. I had tried to be very clear that the only basis for resuming discussions with Mr. Dean last year was based on Mr. Dean's agreement to release all claims. I was quite surprised that Mr. Dean felt he had some surviving claims.

8.    My clients and I were rather confused by this email.  As indicated above, my clients were agreeable to the proposed settlement agreement whereby the parties would release any and all claims against each other in return for a payment by Kaiser to my clients of $110,000.  It was only Kaiser's insistence that the non-disclosure clause be extended beyond non-disclosure of the nature and terms of the agreement to include non-disclosure of "services provided" that was holding up the settlement.

9.    On or about January 10, 2011 I responded to Holly Burke as follows:

> My client remains interested in settling his claims, in total, for $110,000. His objection to going through with the settlement was in relation to confidentiality language you added to the release. One might argue that a confidentiality clause is becoming a clause routinely included in Settlement Agreements. The usual confidentiality clause relates, however, only to the terms of the settlement. I have never heard of a confidentiality clause being extended to include all dealings between the parties.
>
> My client has made his living for many years working for Kaiser. He is not prepared to agree to a confidentiality clause that precludes him from referring to that work history, without substantial compensation. In these economic times, it will be difficult for him to find new work. It will be almost impossible if he is precluded from giving a work history because of a

-4-

**DECLARATION OF THOMAS STEFANELLI**

1    confidentiality clause that extends beyond the terms of the
     settlement.

2

3    10.    On or about January 10, 2011 Holly Burke responded to my email noted above. Now

4    produced and shown to me and marked as Exhibit "A" to this my declaration is a true copy of the

5    email that I received. As can be seen, Holly Burke indicated that my clients had, in previous

6    contracts with Kaiser Permanente, agreed not to publicize his work for KP. As can be seen, she

7    quoted language from those/that previous agreement(s). She specifically quoted as follows:

8

9            Publicity. Supplier will not, without the prior written consent of
10           Kaiser Permanente, use in advertising, publicity, on the internet or
             otherwise the names, trade names, service marks, trade dress or
11           logo of Kaiser Permanente, the Kaiser Permanente Medical Care
             Program or any affiliates of these entities or refer to the existence
12           of this Agreement in any press releases, advertising, web sites or
             material distributed or made available to prospective customers or
13           other third parties.

14

15   11.    The proposed Settlement Agreement and Release prepared by Kaiser related to this

16   ongoing dispute included the following: "Entire Agreement. This Agreement states the entire

17   agreement among the parties who have executed this Agreement and supersedes their prior

18   agreements, negotiations or understandings." In light of the fact that by the very terms of this

19   new proposed Settlement Agreement and Release, prior Agreements with Kaiser would be

20   superseded, it was my and my clients understanding that Kaiser was adding new language to the

21

22   proposed non-disclosure clause to prevent my clients from: "use in advertising, publicity, on the

23   internet or otherwise the names, trade names, service marks, trade dress or logo of Kaiser

24   Permanente, the Kaiser Permanente Medical Care Program or any affiliates of these entities or

25   refer to the existence of this Agreement in any press releases, advertising, web sites or material

26   distributed or made available to prospective customers or other third parties".

27

28

-5-
DECLARATION OF THOMAS STEFANELLI

12.    On or about January 11, 2011 I received another email from Holly Burke which confirmed in my mind and the minds of my clients our understanding of the reason why Kaiser was insisting on the extension of the non-disclosure clause to include "services provided". The new email from Holly Burke reads in pertinent part as follows:

> As I mentioned in my email last night, I believe the Publicity clause in the executed contract with Surefile restricts Surefile from using the KP name or logo without KP consent (see email below). KP does not intend to modify this requirement. If Surefile wants to use KP's name, Mr. Dean should contact Jules Parent in KP's Procurement & Supply organization, to obtain prior written consent. Mr. Dean has Jules' contact info.

Now produced and shown to me and marked as Exhibit "B" to this my declaration is a true copy of the January 11, 2011 email I received from Holly Burke.

13.    On January 12, 2011 I received another email from Holly Burke of Kaiser.  It reads in pertinent part as follows:

> Please note that the no publicity clause applies across the board to all of our vendors. I believe it is enforceable as Kaiser Permanente is a protected mark. I believe KP is firmly entitled to prevent a party from using this mark and logo for commercial purposes.

Now produced and shown to me and marked as Exhibit "C" to this my declaration is a true copy of the January 12, 2011 email.

14.    On January 14, 2011 I received another email from Holly Burke at Kaiser.  Now produced and shown to me and marked as Exhibit "D" to this my declaration is a true copy of said email.  As can be seen, it became very apparent through her emails that Kaiser was very concerned about the ability of my client to use the Kaiser name in any fashion. The email reads in pertinent part as follows:

-6-

DECLARATION OF THOMAS STEFANELLI

I had some ideas this morning while at the gym. Just a thought - what if we modified the confidentiality clause with respect to "services" so that Dean would be precluded from disclosing confidential or proprietary info about the services, including the name of Kaiser Permanente. In effect, this would give Dean the right to talk to future prospective customers about its background providing the storage services without disclosing confidential aspects of this service or KP's name?

15.     On January 14, 2011 I received yet another email from Holly Burke from Kaiser. Again she explained that her purpose in amending the disclosure clause was to preclude my clients from using the Kaiser name. Now produced and shown to me and marked as Exhibit "E" to this my declaration is a true copy of said email.

16.     On January 14, 2011 I notified Holly Burke by email that a settlement offer of $110,000 was inadequate if Kaiser insisted on the additional term added to the non-disclosure clause. I notified that my clients were willing to accept that additional term but wanted additional compensation from Kaiser.

17.     On March 8, 2011 I sent an email to Holly Burke indicating that my clients would, in return for a payment of $110,000, sign a Settlement Agreement and Release waiving all claims and a non-disclosure clause precluding them from discussing the terms and conditions of the Agreement. If Kaiser continued to insist upon the non-disclosure clause going further, my clients would agree to sign a Settlement Agreement and Release in return for a payment of $200,000.

18.     Holly Burke from Kaiser got back to me on March 8, 2011 asking for confirmation of our two offers. Now produced and shown to me and marked as Exhibit "F" to this my declaration is a true copy of her email.

19.     On or about March 24, 2011 Kaiser elected to go with the payment of $110,000 with the Settlement Agreement only precluding disclosure of the nature and terms of the Agreement. The

-7-
DECLARATION OF THOMAS STEFANELLI

Settlement Agreement was signed by the parties and it is the Settlement Agreement and Release that has been considered by this court in prior hearings in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 22nd day of April, 2024 in Palm Springs, California.

Thomas Stefanelli, Esq.

DECLARATION OF THOMAS STEFANELLI

EXHIBIT "A"



Find messages, documents, photos or peo    Advanced ∨

Subject Re: Kaiser Care of SecureLink

Inbox    6.8K
Unread
Starred
Drafts
Sent
Archive
Spam
Trash
⌃ Less

Views    Hide
📷 Photos
📄 Documents
📧 Emails to myself
🔔 Subscriptions
🛒 Shopping
🧾 Receipts
✈️ Travel

Folders    Show

HI Team,

I will discuss your proposal with my clients.

As an aside, I think the possibility for Scretto and Mr. Dann to find new work at KP to be relatively slim at this point. I believe his actions to withhold delivery of the patient records lacked a customer service approach. ... I also think that your client might want to check his existing contract with KP to determine if he has any right to publicize his work for KP. I have copied and pasted the relevant language below. I would think your client may be holding on for something that can't be achieved and passing up something of value.I will get back to you.

Cheers,
Holly

6. 4 - Agreement # PG-50438

6.10 Publicity. Supplier will not, without the prior written consent of Kaiser Permanente, use in advertising, publicity, on the internet or otherwise the names, trade names, service marks, trade dress or logo, of Kaiser Permanente, the Kaiser Permanente Medical Care Program or any affiliates of those entities or refer to the existence of this Agreement in any press releases, advertising, web sites or materials distributed or made available to prospective customers or other third parties.

Nepkro Pros Source Agent Modification Master Agreement 5-14-14
Version - 8.26.13

EXHIBIT "B"



EXHIBIT "C"



EXHIBIT "C"

3/20/23, 5:22 PM                    (5,755 unread) - lawstef7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or peo    Advanced ✓

← Back  ↩  ↩↩  →    ▤ Archive    ▦ Move    🗑 Delete    ⊘ Spam    •••   ∧ ▾ ✕

**Inbox**                    **Re: Re: Action: Claim of Surefile EXHIBIT 8**                    Yahoo/Inbox ☆

Unread

Starred                     My Info/Stephan Dean <surefile@msn.com>              Fri, Mar 17 at 2:07 AM ☆
                            To: Thomas Stefanelli
Drafts

Sent

Archive                     From: Thomas Stefanelli <lawstef7771@yahoo.com>
                            Sent: Friday, January 14, 2011 8:44 AM
Spam                        To: steven dean <surefile@msn.com>
                            Subject: Fw: Re: Action: Claim of Surefile
Trash

∧ Less
                            ——— On Thu, 1/13/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:
Views

▤ Photos                    From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
                            Subject: Re: Action: Claim of Surefile
▢ Documents                 To: lawstef7771@yahoo.com
                            Date: Thursday, January 13, 2011, 2:47 PM
▢ Emails to myself
                            Tom,
▢ Subscriptions             Sounds good, I was up to my armpits yesterday with work and sent the quick
                            availability times, I will call by and call later this afternoon.
▢ Shopping                  I had some ideas this morning while at the gym. Just a thought - what if we modified
                            the confidentiality clause with respect to "services" so that Dean would be precluded
▢ Receipts                  from disclosing confidential or proprietary info about the services, including the name
                            of Kaiser Permanente. In effect, this would give Dean the right to talk to future
▢ Travel                    prospective customers about its background providing the storage services without
                            disclosing confidential aspects of the service or KP's name?
Folders

                            Just a thought.

                            What about third party definition? Did that work?

                            Talk later?

                            Cheers,
                            Holly

WINTER CHECKLIST
Wiper Blades
Winter Tires

AMERICA'S TIRE
SHOP NOW

EXHIBIT "D"



3/20/23, 5:13 PM

(5,755 unread) - braxie77771@yahoo.com - Yahoo Mail

Find messages, documents, photos or geo    Advanced ✓

← Back    📁 Archive    Move    🗑 Delete    Spam    •••    ▲ ▼ ✕

**From:** Holly.B.Burke@kp.org <Holly.D.Burke@kp.org>
**Subject** Re: Action: Claim of Surotic
**To:** lawxie77771@yahoo.com
**Date:** Wednesday, January 12, 2011, 6:09 PM

Tom,

I would suggest a phone call. I'm available to chat tomorrow from 8:30 am - 9 am or from 10 - 11 am.

Please note that the no publicity clause applies across the board to all of our vendors. I believe it is enforceable as Kaiser Permanente is a protected mark. I believe KP is truly entitled to prevent a party from using this mark and logo for commercial purposes.

Cheers,
Holly

KAISER PERMANENTE.

HOLLY BURKE
Senior Counsel
Legal Department

1800 Harrison St.
19TH Floor
Oakland, CA 94612

Office – (510) 625 – 5678 Tie: 8-428-5670
Fax – (510) 625-2502
Email – Holly.B.Burke@kp.org

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are notified from altering, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachment without reading, forwarding or saving them. Thank you.

Thomas StoDos/N                    To Holly B Burke/POR/KP/KP/KAPERM

EXHIBIT "E"



# EXHIBIT "F"

3/20/23, 5:37 PM                                    (5,760 unread) - lawaiai7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or peo  Advanced ⌄

← Back    ↩    ↪    ↩    📁 Archive    📁 Move    🗑 Delete    🚫 Spam    •••    ▲    ▼    ✕

Tom

— On Tue, 3/8/13, Holly.R.Burke@kp.org <Holly.R.Burke@kp.org> wrote:

From: Holly.R.Burke@kp.org <Holly.R.Burke@kp.org>
Subject: Action: Claim of Benefits - Need Confirmation of Existing Situation
To: lawaiai7771@yahoo.com
Date: Tuesday, March 8, 2013, 6:05 PM

Hi Tom,

I'm really sorry to hear about your Dad.

Thanks for getting back to me. I wanted to get confirmation on the current Dean offer.
I want to minimize any confusion at this important point.

I wondered if you could confirm my understanding. As I understand the new offer, we
have two options.

1. Option 1: $110K to settle with the previous language re: confidentiality. Please see
Option 1 document, which is Version 6 (without additional confidentiality and publicity
restrictions). I want to confirm if the document as marked was the acceptable version
to go with Option 1. We would need to update the dates in that version.

2. Option 2: $200k with updated language re: confidentiality, publicity and
disparagement. Please see Option 2 document, which is Version 9 that I sent to you
in mid-Jan. We would need to update the $ amounts and dates in this version.

Option 1 Document:

Option 2 Document:

Can you let me know if this is correct?

Thanks much,
Holly

1   Stephan C. Dean and Liza Dean
    37187 Bankside Drive #2
2   Cathedral City, CA 92234
    323-314-9692
3   Surefile@msn.com

4   In Pro Per

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

### COUNTY OF RIVERSIDE

10   STEPHAN DEAN and LIZA DEAN, Individually )   Case No.:
     and DBA SUREFILE FILING SYSTEMS,         )
11                                            )   **DECLARATION OF STEPHAN C DEAN AND**
               Plaintiffs,                    )   **LIZA D DEAN, DBA SUREFILE FILING**
12                                            )   **SYSTEMS REQUEST FOR JUDICIAL**
     v.                                       )   **NOTICE Declaration of Stephan C Dean and**
13                                            )   **Liza D Dean DBA SurefileFiling Systems July**
     KAISER FOUNDATION HEALTH PLAN, INC.,     )   **2010 Transfer Agreement March 24 2011**
14   KAISER FOUNDATION HOSPITALS, and Does )      **Settlement and Release Agreement October 12**
     1-50 Inclusive,                          )   **2012 Kaiser lawsuit July 31 2013 Summary**
15                                            )   **Judgement Transcript August 20 2013 Order on**
               Defendants.                    )   **Summary Judgement**
16

21   ## DECLARATION OF STEPHAN C DEAN AND LIZA D DEAN, DBA SUREFILE FILING

22   ## SYSTEMS

24   We, Stephan C Dean and Liza D Dean, DBA Surefile Filing Systems, declare as follows:

26   1.  We are the plaintiffs in this case and have firsthand knowledge of the following facts, and if

27       called as a witness, could and would testify competently thereto.

1

2.  On July 10, 2010, Kaiser Foundation Health Plan and Kaiser Foundation Hospital and Stephan C Dean and Liza D Dean DBA Surefile Filing Systems entered into a Transfer Agreement to facilitate the transfer of all of Kaiser patients and members paper records attached hereto Exhibit 1 is a true and correct copy request for judicial notice.

3.  On March 24 2011 the parties executed a settlement and release agreement to resolve all outstanding issues between the parties. Attached hereto is a true and correct copy of that agreement Exhibit 2 request for judicial notice.

4.  On October 12 2012, Kaiser Foundation Hospital and Kaiser Foundation Health plan filed a civil complaint in Riverside County Superior court. Hereto is a true and correct copy of the complaint Exhibit 3 request for judicial notice.

5.  On July 31 2013 a hearing on Deans summary judgement was held. Here is a transcript of that hearing request for judicial notice Exhibit 4.

6.  On August 20 2013 the court issued its final order on Deans summary judgement motion. Here is a true and correct copy of that order request for judicial notice Exhibit 5.

We declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on November 13, 2024

*/S/Stephan C Dean and Liza D Dean*

Stephan C Dean and Liza D Dean

# Exhibit 1

07/22/2010  05:54   7503237501              TM STEFANELLI ESQ                    PAGE  02/04

## SURE FILE TRANSFER AGREEMENT

Kaiser Foundation Hospitals ("Kaiser") and Stephan C. Dean and Liza Dean, doing business as Sure File Systems ("Dean" or "Sure File"), agree as follows:

1.    Kaiser and Dean have entered into contracts under which Dean has stored medical records of patients of Kaiser's medical centers in Los Angeles and Riverside Counties at Sure File's storage facility located at 83750 Citrus, in the City of Indio, Riverside County, California.

2.    Starting Monday, July 26, 2010, at 10:00 a.m., Dean will meet with Kaiser personnel and will begin to place Kaiser medical charts on pallets, have them shrink wrapped, and load them by forklift onto Kaiser trucks. Kaiser will provide the shrink-wrap. Dean will keep the files organized and in order. Kaiser will provide the semi truck trailer and its driver. Kaiser personnel will be allowed to remain on the premises during the transfer to assist as necessary and track the charts. The transfer is expected to be completed in one to two weeks from July 26.

3.    Kaiser will pay Dean $3,000 at the July 26 morning meeting. This payment represents the cost of renting a forklift and paying for services of personnel that Dean / Sure File will hire to assist in the transfer.

4.    Kaiser will also pay Dean for any West Los Angeles files that he has stored in excess of the total number of files (approximately 345,000) for which he has already been paid, at the per-thousand rate charge of $735.71. As an advance, at the July 26 meeting, Kaiser will pay Dean $10,000 toward whatever overage it should later determine to be due. Dean will be entitled to keep that entire amount even if the total overage is less than $10,000. After Kaiser has counted the charts to obtain an accurate number, Kaiser will pay any additional amounts owing based upon the $735.71 per-thousand chart charge. Dean reserves the right to pursue Kaiser for the cost of storage, maintenance and delivery of the Moreno Valley/Riverside County records.

5.    On July 26, Kaiser will deliver a check to Dean in the amount of $13,000.

6.    In transferring the medical records, Kaiser and Dean will take appropriate steps to preserve all confidential information maintained in those records as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' Business Associate Agreement of June 24, 2009.

7.    Dean warrants that all of the Kaiser medical records in his or Sure File's possession are stored in the Indio storage facility.

8.    Effective upon completion of the transfer of the medical records, Kaiser will indemnify, defend and hold harmless Dean, Sure File, and their agents and employees, from claims, demands, or causes of action for damages or loss resulting from alleged harm to or loss of the medical records previously maintained by Sure File, or resulting from Dean, Sure File, and their agents and employees obtaining information regarding Kaiser patients.

9.    Dean will maintain the insurance policies and amounts required by his contracts with Kaiser and its affiliates until the files are transferred back to Kaiser. Kaiser reserves all rights it has to assert insurance claims as an additional insured and to recover insurance proceeds under those insurance policies as a result of loss or damage to the medical records.

10.    If, after completion of the transfer, Kaiser discovers that it cannot locate a medical record that it reasonably believes, based on its records, it had transferred to Sure File, Dean will cooperate with Kaiser to attempt to locate the missing record.

11.    Other than as specifically defined and addressed in this agreement, Dean and Sure File do not waive any right, claim, cause of action, tort, or otherwise that they may have against Kaiser

2

07/22/2010  05:54    7603237501              TM STEFANELLI ESO.                    PAGE  04/04

and its affiliates.

12.    Neither party can modify the terms of this agreement except in a written modification signed by both parties.

13.    A facsimile signature to this agreement shall be deemed an original and this agreement may be signed in counterparts with each counterpart incorporated in to this agreement.

IT IS SO AGREED.

Dated: July __, 2010

KAISER FOUNDATION HOSPITALS

By: _____

Laurel L. Junk

It's Vice-President, Supply Chain

Dated: July __, 2010

Stephan C. Dean, dba Sure File Systems

# Exhibit 2

## SETTLEMENT AGREEMENT AND RELEASE

Stephan C. Dean and Liza Dean, doing business as Sure File Systems ("Dean" or "Sure File"), with its principal place of business at 43-915 Camp Place, Indio, California 92203, on the one hand, and Kaiser Foundation Health Plan, Inc., a California nonprofit public benefit corporation ("KFHP") and Kaiser Foundation Hospitals, a California nonprofit public benefit corporation ("KFH"), each with its principal place of business at One Kaiser Plaza, Oakland, California 94612 (collectively referred to herein as "KP"), on the other hand, hereby enter into this Settlement Agreement And Release (the "Agreement"), effective as of March 24, 2011 ("Effective Date").

### RECITALS

WHEREAS, Stephan C. Dean and Liza Dean doing business as "Sure File Systems" have rendered services to KP and its affiliates, including without limitation, the preparation, sorting, scanning, indexing, quality control, transportation and storage of patient medical records (collectively, the "Services");

WHEREAS, Sure File and KP failed to fully memorialize their business relationship relating to the Services in a written agreement;

WHEREAS, Sure File asserts that it has yet to be fully compensated for Services performed and costs incurred in providing Services to KP and has alleged other claims against KP which KP has disputed (collectively, the "Dispute"); and

WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein;

WHEREAS, it is expressly understood by all parties that this Agreement is being entered into to avoid the costs and burdens of protracted disagreement and/or litigation and that the parties by entering into or performing this Agreement make no statement, admission, or concession concerning the viability of any claims they have asserted or may have asserted against each other.

### AGREEMENT

In consideration for the promises and performances hereafter described, the parties agree as follows:

1.    Consideration and Performance.

A.    KP has agreed to pay Stephan C. Dean dba Sure File Systems the amount of $110,000 (the "Settlement Funds"). KP will make payment of the Settlement Funds via a check in immediately available funds made payable to Stephan C. Dean dba Sure File Systems, which will be available for pickup at KP's Walnut Center, CA facility two (2) business days following execution of this Agreement by the parties. At the request of Stephan Dean, KP shall send the check to Mr. Dean via FedEx or UPS overnight mail to the address specified in writing by Mr. Dean.

Case 5:24-cv-0177     Document 1-1     Filed 06-24-21     Page 50 of 61     Page ID #:49

B.      The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date.

C.      Except as otherwise provided herein, KP and Sure File agree that no additional money shall be due from any party, for any reason whatsoever, for any obligation incurred by any party to any other party in connection with the Dispute.

2.      Indemnification. KP will indemnify, defend and hold harmless Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees, from third party claims, demands, or causes of action for damages or loss resulting from alleged harm to or loss of the medical records previously maintained by Sure File, or resulting from Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees obtaining information regarding Kaiser patients. As used herein, the "third party" means any person or entity other than a party to this Agreement and such party's affiliates, as defined in paragraph 3 below.

3.      Settlement and Releases. Further, effective upon signature of this Agreement and delivery of the Settlement Funds, KP, on the one hand, and Sure File, Stephan C. Dean, and Liza Dean, on the other hand, shall mutually remise, release, and forever discharge each other, including any and all persons, firms, partnerships, corporations, heirs, executors, contractors, subcontractors, suppliers, administrators, and their respective predecessors, successors, assigns and shareholders, and all of their past, present and future officers, directors, partners, agents, attorneys, parent companies, subsidiaries, related entities, affiliated companies, accountants, and employees and their respective successors, heirs, assigns, executors, and administrators thereof, and/or each of the aforesaid (collectively referred to herein as "affiliates"), from all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and/or arising from any of the foregoing, regardless of whether such claims, actions or causes of action have arisen prior to the Effective Date or arise after the Effective Date. Without limiting the scope of the foregoing, this release extends to unknown claims, meaning claims the parties may not have any basis to know or suspect at this time or at any time in the past, with respect to the Dispute, and all parties certify their intent to release such claims and obligations that relate to the Dispute notwithstanding their present lack of knowledge. Furthermore, each party confirms that it intends this Agreement to constitute a general release of all claims relating to the Dispute and each party hereby desires to and hereby does waive any rights or claims it would otherwise have under California Civil Code Section 1542, which reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4.      Advice of Counsel. The parties understand and acknowledge the significance and consequences of signing this Agreement and have had a full opportunity to discuss, and/or have discussed, this Agreement with their attorneys.

Case 5:25-cv-01527   Document 1-1   Filed 10/22/25   Page 39 of 84   Page ID #:50

5.    **Warranty of Voluntary Agreement.** Each party warrants and represents that this Agreement is freely and voluntarily executed by such party, after having been apprised of all of the relevant information and data by its attorneys. Each party executing this Agreement warrants and represents that it has not relied on any inducements, promises or representations made by any party or its representative, or any other person, except for those expressly set forth herein.

6.    **Warranty of Mutual Understanding.** The parties hereto warrant and represent that they have read this Agreement and that they have had a full opportunity to have, and/or have had, the terms used herein and the consequences hereof explained to them by their respective attorneys; that each is legally competent to execute this Agreement and accept full responsibility therefor; and has the authority to do so. It is expressly understood by the parties, and each of them, by reason of the consideration hereinabove mentioned, that the parties admit no liability of any sort and have made no representations, as to any liabilities or obligations and have made no agreements or promises to do or admit to do any act or thing not set forth herein.

7.    **Warranty of Performance.** Each party hereto agrees to promptly carry out and execute its responsibilities under the terms of this Agreement and to execute any and all documents which may be necessary from time to time in the future to implement the terms of this Agreement.

8.    **Warranty of Right and Authority.** The parties each warrant no other person or entity has or had or claims to have had any interest in the claims, demands, causes of action, obligations, damages or liabilities described herein; that he, she or it has not pledged, sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, cause of action, obligation, damage or liability covered herein. The parties further warrant that the person(s) signing on their behalf is (are) duly authorized by appropriate corporate or other action to sign the agreement and bind their respective entities to it. Any breach of these warranties, or any of them, shall render the breaching party (ies) liable for any damages caused by the breach, including reasonable attorneys' fees expended as a result of the breach.

9.    **Binding Effect.** This Agreement shall bind and inure to the benefit of all successors, assigns, spouses, children, and heirs of the parties. Should any party cease to exist during the period of performance of this Agreement, the rights, duties, and obligations of the deceased party shall inure and bind its successors, assigns, and heirs.

10.    **Incorporation of Recitals.** The Recitals set forth at the beginning of this Agreement are affirmed by the parties hereto, and are acknowledged by the parties to be true and correct and are hereby incorporated into the body of this Agreement as if fully set forth herein.

11.    **Modification Must Be In Writing.** This Agreement may not be altered, amended, or modified, except in a writing that is executed by duly authorized representatives of all of the parties hereto.

12.    **Construction.** Should any paragraph, clause or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid or unenforceable, such construction and decision shall affect only those

Case 5:25-cv-02938-JGB-DTB   Document 1-1   Filed 10/22/25   Page 51 of 114   Page ID #:51

13.     Non-Disclosure. The nature and terms of this Agreement shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties; provided, however, that any party may disclose the existence of this Agreement, and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement. KP and Dean will continue take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' Business Associate Agreement of June 24, 2009.

14.     Governing Law. This Agreement shall be construed and governed by the laws of the State of California.

15.     Notices. Notices under this Agreement shall all be in writing, effective upon receipt and shall be sent by any of the following methods (a) facsimile with return facsimile acknowledging receipt; (b) United States Postal Service certified or registered mail with return receipt showing receipt; or (c) courier delivery service with proof of delivery; or (d) personal delivery. Either party hereunder may change the names and addresses for receipt of notices by notice given as provided for herein.

Notices to Sure File shall be sent as follows:

Stephan C. Dean,
dba Sure File Systems
43-915 Camp Place
Indio, California 92203
With a copy to:

Notices to KFHP or XFH shall be sent as follows:

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals
393 E. Walnut Street, 5th floor, (53R03)
Pasadena, CA 91188
Attn: Laurel Junk, VP Supply Chain

With a copy to:
Kaiser Foundation Health Plan, Inc.
1800 Harrison St, 8th Floor
Oakland, CA 94612
Attn: Holly Burke, Senior Counsel

16.    Subject Headings.  Subject headings used in this Agreement are for convenience only. The singular shall include the plural and the masculine shall include the feminine and neuter genders.

17.    Counterparts.  This Agreement may be executed in any number of counterparts and each counterpart signature shall, when taken with all other signatures, be treated as if executed upon one original of this Agreement.  A facsimile signature of any party shall be binding upon that party as if it were an original.

18.    Entire Agreement.  This Agreement states the entire agreement among the parties who have executed this Agreement and supersedes their prior agreements, negotiations or understandings. Each of these parties acknowledges and agrees that no other party, nor agent, nor attorney of any of the parties made any promise, representation or warranty, express or implied, not set forth in this Agreement.  Each party signing this Agreement acknowledges that such party has not executed this Agreement in reliance on any promise, representation, conduct or warranty of any other party not expressly set forth in this Agreement.

        IT IS SO AGREED.


Dated: March ___, 2011                Stephan C. Dean, dba Sure File Systems

                                      By: _____
                                      PRINT NAME: _____

                                      LIZA DEAN

Dated: March ___, 2011                By: _____
                                      PRINT NAME: _____


Dated: March 24, 2011                 KAISER FOUNDATION HEALTH PLAN, INC.
                                      KAISER FOUNDATION HOSPITALS

                                      By: _____
                                      PRINT NAME: Laurel L. Junk
                                      TITLE: Vice President, Supply Chain


Surefile Release #543885v.10                5                        Confidential

# Exhibit 3

THOMAS M. FREEMAN, Cal. Bar No. 109309
SARAH EDWARDS, Cal. Bar No. 268679
MARION'S INN LLP
1611 Telegraph Ave., Suite 707
Oakland, CA 94612
Telephone: (510) 451-6770
Facsimile: (510) 451-1711
Email: tmf@marionsinn.com
Email: se@marionsinn.com

Attorneys for Plaintiffs
KAISER FOUNDATION HEALTH PLAN, INC. and
KAISER FOUNDATION HOSPITALS

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 12 2012

B. Shelton

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE - INDIO BRANCH

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC. and KAISER FOUNDATION HOSPITALS | No. **INC 1207224** |
| Plaintiffs, | COMPLAINT FOR INJUNCTION AND DAMAGES |
| v. | 1. BREACH OF CONTRACT |
| STEPHAN CHRISTOPHER DEAN, LIZA DEAN, DBA SUREFILE FILING SYSTEMS, and DOES 1-10, inclusive | 2. CLAIM AND DELIVERY |
| Defendants. | 3. CONVERSION/TRESPASS TO CHATTEL |
| | 4. UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code § 17200 et seq.) |

BY FAX

COMPLAINT

Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively "KAISER" or "plaintiffs") complain against defendants Stephan Christopher Dean, Liza Dean, and Surefile Filing Systems (collectively "DEAN" or "defendants") as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff Kaiser Foundation Health Plan, Inc. ("KFHP") is a non-profit California corporation and health maintenance organization ("HMO") regulated as a health care service plan under the Knox-Keene Health Care Service Plan Act, Health & Safety Code § 1340 et seq. Its principal place of business is in Oakland, Alameda County, California. KFHP contracts with employer groups, individuals, and others to arrange for health care to its members through the Kaiser Permanente network of health care providers, including Kaiser Foundation Hospitals ("KFH") for facilities and Southern California Permanente Medical Group ("SCPMG") for professional services in Southern California.

2.    Plaintiff Kaiser Foundation Hospitals ("KFH") is a California non-profit corporation that is licensed to own and operate hospitals and other medical centers in California. Its principal place of business is in Oakland, Alameda County, California. Plaintiffs KFH and KFHP will be referred to here collectively as "KAISER" or "Plaintiffs".

3.    KAISER is informed and believes, and on that basis alleges, that defendants Stephan Christopher Dean and Liza Dean ("the Deans") are residents of Indio, Riverside County; and that the Deans have in the past and continue to do business as Surefile Filing Systems ("Surefile"), a sole proprietorship. The Deans and Surefile are referred to here collectively as "DEAN" or "defendants."

4.    KAISER is not presently aware of the true names and capacities of the defendants named in this complaint by the fictitious names of Does 1-10. KAISER will seek leave to amend this complaint upon ascertaining the true names and capacities of those defendants.

5.    Plaintiffs allege on information and belief that each defendant is jointly liable for each of the wrongful acts and omissions alleged herein because each defendant acted as the principal, agent, joint venturer, co-conspirator, or alter ego of each of the other defendants.

6.    Defendants and KFH entered into an agreement in 2008 under which Defendants agreed, among other things, to remove, prepare, organize, index, deactivate, transport, store, and

1  retrieve upon request medical records for the Kaiser Permanente Moreno Valley medical center.  In

2  order to perform services for KAISER, defendants agreed to comply with the terms of the Business

3  Associate Agreement ("BAA") used by KAISER with all vendors.

4        7.    Patient medical records, and communications about such records that include

5  confidential "protected health information" ("Protected Information"), as that term is defined under

6  the Standards for Privacy of Individually Identifiable Health Information, codified at 45 Code of

7  Federal Regulations ("CFR") parts 160 and 164, Subparts A and E, are afforded substantial

8  protections under the Health Insurance Portability and Accountability Act of 1996, P.L. 104-191

9  ("HIPAA") and state law, including the Confidentiality of Medical Records Act, Cal. Civ. Code § 56

10  et seq.  KAISER seeks to respect and maintain these protections for its members and patients through

11  its contracts and BAA with vendors, including defendants.

12        8.    Effective as of June 15, 2009, DEAN and KFHP entered into a written Business

13  Associate Agreement ("BAA"); in which defendants agreed to allow KFHP access to any of

14  plaintiffs' records they maintained for KAISER and to otherwise comply with the obligations of

15  HIPAA.  Under the terms of the BAA defendants specifically agreed that "[u]pon termination of the

16  business relationship between the parties and/or BAA for any reason, [defendants] shall, at [KFHP's]

17  direction, return or destroy all Protected Information that [defendants] or its agents or subcontractors

18  still maintain in any form , and shall retain no copies of such Protected Information.  Upon [KFHP's]

19  request, [defendants] shall certify in writing that such return or destruction has occurred."

20        9.    Defendants and KFH entered into a written confidential Scanning Service Agreement

21  effective as of November 17, 2009 ("Moreno Valley Agreement").  Defendants agreed, among other

22  things, to remove, prepare, deactivate, transport, store, and retrieve upon request medical records for

23  the Kaiser Permanente Moreno Valley medical center.  Defendants further agreed to comply with the

24  existing BAA with KFHP.

25        10.    Defendants and KFH entered into a confidential Service Agreement - Medical Record

26  Storage and Deactivation effective as of March 12, 2010 ("West Los Angeles Agreement").

27  Defendants agreed, among other things, to remove, prepare, deactivate, transport, store, and retrieve

28  upon request medical charts for the Kaiser Permanente West Los Angeles medical center.

2

COMPLAINT

1  Defendants further agreed to comply with the existing BAA with KFHP.

2      11.    KAISER patients and members have medical needs to access their medical records,

3  and KAISER needs the medical records from time to time for purposes of litigation or

4  administrative proceedings. Patients have a legal right under HIPAA to access their protected

5  health information. (45 C.F.R. § 164.524.) KAISER also needs to assure that the medical records

6  with Protected Information and confidential communications with Protected Information, including

7  email exchanged between defendants and plaintiffs, are properly maintained, including by requiring

8  defendants by contract to safeguard the records from unauthorized disclosure pursuant to the terms

9  of a BAA and other agreements, verify their financial ability to protect the records and to maintain

10  insurance, and return or destroy all Protected Information at the request of KAISER.

11      12.    All medical records provided to defendants and confidential communications with

12  Protected Information exchanged between representatives of KAISER and defendants, including

13  email about the records, are the sole property of KAISER and held for the benefit of KAISER

14  members and patients under the terms of the Moreno Valley Agreement, the West Los Angeles

15  Agreement and the BAA signed by defendants. Defendants have no interest in those medical

16  records or the confidential communications with KAISER about the records, and under the terms of

17  the BAA signed by defendants, defendants have no right to refuse access to those records and any

18  confidential communications with Protected Information or to refuse requests from KAISER to

19  return or destroy those records and confidential communications with Protected Information,

20  including email, or to refuse to certify to KAISER that all Protected Information has been returned

21  or destroyed.

22      13.    In or around 2010, a dispute arose between KAISER and DEAN regarding DEAN'S

23  performance of the Moreno Valley Agreement and West Los Angeles Agreement. Beginning in the

24  spring of 2010, defendants interfered with plaintiffs' access to its patients' medical records and

25  failed to verify that they had insurance or the financial ability to protect the records. Defendants

26  refused to allow plaintiffs access to its medical records, interfered with or refused to comply with

27  patients' medical records requests, interfered with or refused to comply with subpoenas for medical

28  records, refused to verify insurance coverage, and refused to verify its financial ability to perform

1  its contractual obligations. Defendants also refused to turn over the medical records to KAISER
2  upon its requests.

3       14.    As a result of defendants' wrongful conduct, on or about July 6, 2010, plaintiffs
4  notified defendants that defendants were in breach of their agreements; that defendants should (i)
5  comply with patient requests for medical records, (ii) permit KAISER access to their warehouse to
6  inspect the records, (iii) verify their insurance and financial ability to perform, and (iv) arrange for
7  transfer of the records, premises; and (v) that plaintiffs elected to terminate the West Los Angeles
8  Agreement for convenience.

9       15.    As a result of the foregoing dispute, KFH and defendants negotiated a transfer
10 agreement ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to
11 KFH of all of the medical records and confidential Protected Information of KAISER patients and
12 members. The Sure File Transfer Agreement was signed by Stephan Dean on or about July 23,
13 2010, and terminated the on-going business relationship between defendants and KAISER.
14 Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take
15 appropriate steps to preserve all confidential information maintained in those records as required by
16 the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health
17 Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

18      16.    Following the execution of the Sure File Transfer Agreement, in March 2011 the
19 defendants and plaintiffs negotiated a confidential settlement agreement to resolve all the
20 outstanding issues between them. Plaintiffs will make the confidential settlement agreement
21 available to the Court, if necessary, under seal.

22      17.    Pursuant to the agreements between plaintiffs and defendants described above,
23 defendants were obligated to maintain the confidential Protected Information of KAISER members
24 and patients in confidence; defendants were obligated not to transmit or communicate to any other
25 party the confidential Protected Information of KAISER members and patients; defendants were
26 obligated to return to plaintiffs or destroy all the confidential Protected Information of KAISER
27 members and patients; and defendants were obligated upon request to certify to plaintiffs the return
28 or destroy all confidential Protected Information in any form of KAISER members and patients.

1        18.    Since the execution of the confidential settlement agreement in March 2011,

2   defendants have notified KAISER that they are in possession of email or other records of KAISER

3   that they allege contain Protected Information. Defendants have also publicized through the press

4   the fact that they retain possession of Protected Information of KAISER patients and members.

5   Defendants have done so for the sole purpose of trying to extract additional payments from

6   KAISER. Despite requests from KFHP that defendants return or destroy the Protected Information

7   and certify the return and destruction of the Protected Information, or provide access to the

8   Protected Information so that plaintiffs may recover or destroy the Protected Information,

9   defendants have refused to return or destroy the Protected Information; defendants have refused to

10   certify to KAISER the return or destruction of the Protected Information. Defendants have refused

11   to provide access to the Protected Information so that plaintiffs may recover or destroy the Protected

12   Information. Defendants have also refused to follow instructions from KAISER to remove and

13   destroy any Protected Information in an electronic format.

14        19.    In breach of their agreements with KAISER, defendants also have engaged in

15   conduct that demonstrates their intention or willingness to risk a security breach and the

16   unauthorized disclosure of the confidential Protected Information if plaintiffs refuse to accede to

17   their unwarranted demands for payment of additional compensation to obtain the return of,

18   destruction of or access to the confidential Protected Information improperly retained by

19   defendants. For example, after representing to plaintiffs that email with confidential Protected

20   Information was stored on the hard drives of computers in the garage of their home Stephan Dean

21   and Liza Dean risked the theft or removal of the computers and the unauthorized disclosure of the

22   confidential Protected Information by leaving the door to their garage open.

23        20.    The unauthorized disclosure by defendants of confidential Protected Information of

24   KAISER patients and members remaining in the possession of defendants would result in financial

25   harm to plaintiffs and irreparable harm to their reputation and also result in potential harm to the

26   members and patients of KAISER.

27

28

5
COMPLAINT

## FIRST CAUSE OF ACTION
## BREACH OF WRITTEN CONTRACT
### (Against Each Defendant)

21.  Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 20 above.

22.  The BAA specifies that defendants may only use or disclose confidential Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Because the contractual relationship between defendants and plaintiffs have been concluded and terminated, defendants have no further authorized use of the Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Furthermore, the BAA specifies that by maintaining or using Protected Information for their own purposes, defendants violated the BAA.

23.  Defendants have breached their contractual obligations under the BAA by, among other things, (i) retaining confidential Protected Information of KAISER patients or members on their computers, hard drives, servers, or in their email accounts, or otherwise; (ii) refusing to return, or destroy or allow plaintiffs access to their computers, hard drives, servers, or email accounts, to remove or destroy all the confidential Protected Information of KAISER patients or members, including but not limited to confidential unencrypted email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members and patients, or to confirm the removal of all Protected Information of KAISER patients or members, from defendants' computers, hard drives, servers or email accounts; (iii) refusing to certify to KFHP the return or destruction of all the confidential Protected Information of KAISER patients or members; (iv) to risk the unauthorized disclosure of confidential Protected Information of KAISER members and patients in defendants' possession, custody or control by their failure to maintain the confidential Protected Information in a secure place and manner; and (v) threatening to use and transmit confidential Protected Information in the medical records and/or confidential email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members, to contact KAISER members or patients.

24.  Defendants have also breached the Moreno Valley Agreement and the West Los Angeles Agreement by recording and retaining confidential Protected Information in violation of

6
COMPLAINT

1    the terms of the BAA which are incorporated into and made a part of the Moreno Valley Agreement

2    and the West Los Angeles Agreement.

3        25.    Plaintiffs have performed all obligations due to defendants, except such obligations

4    as are excused or waived.

5        26.    As a proximate result of defendants' conduct, plaintiffs have sustained damage or

6    loss in an amount to be proved at trial. Furthermore, unless enjoined defendants' continued

7    possession of the Protected Information threatens further harm to KAISER, as well potentially the

8    privacy interests of KAISER'S members and patients. Plaintiffs lack an adequate remedy at law

9    and will suffer irreparable harm unless defendants are enjoined from their continued use and

10   possession of the Protected Information of KAISER'S members and patients and to engage in the

11   aforesaid trespasses and interference with plaintiffs' property. An action for damages is inadequate

12   because it is extremely difficult to place a monetary value on this continuing invasion of plaintiffs'

13   property rights and the continued possession of the Protected Information by defendants. Even if

14   the harm could be measured in monetary terms, plaintiffs would be required to incur the

15   inconvenience and expense of multiple legal actions to collect damages resulting from defendants'

16   actions as they continue to occur in the future. Plaintiffs are accordingly entitled to both

17   preliminary and permanent injunctions enjoining defendants from further possession and use of

18   plaintiffs' property.

19       27.    Therefore plaintiffs seek preliminary and permanent injunctions enjoining defendants

20   and their employees and anyone acting on their behalf (i) from retaining any "Document," as

21   defined by California Evidence Code Section 250, specifically including but not limited to,

22   KAISER medical records and charts and email, with confidential Protected Information relating to

23   any member or patient of KAISER; (ii) from using any confidential Protected Information in any

24   "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

25   KAISER, and (iii) from disclosing to any third-party any Protected Information from any

26   "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

27   KAISER

28       28.    Plaintiffs also seek preliminary and permanent injunctions requiring defendants and

1  their employees and anyone acting on their behalf (i) to refrain from using any confidential

2  Protected Information from any "Document," as defined by Californian Evidence Code Section 250,

3  provided to defendants and confidential Protected Information in any email exchanged between

4  defendants and plaintiffs to contact KAISER members or patients; (ii) to refrain from disclosing to

5  any third-party any Protected Information from any "Document," as defined by Californian

6  Evidence Code Section 250, provided to defendants and confidential email exchanged between

7  defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by

8  Californian Evidence Code Section 250, specifically including , but not limited to email with

9  confidential Protected Information of KAISER members and patients that defendants maintain or to

10  which they have access or care custody or control; (iv) to certify in writing under penalty of perjury

11  that defendants have returned, deleted or  or destroyed all of the records and email with confidential

12  Protected Information of KAISER members and patients that defendants maintain or to which they

13  have access or care, custody or control; (v) to provide access to all defendants' computers, servers,

14  hard drives and email accounts for inspection by a forensic consultant appointed by the Court at

15  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and

16  confidential email with Protected Information of KAISER members and patients; and (vi) to

17  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of

18  KAISER members and patients that defendants maintain or to which they have access or care,

19  custody or control; following completion of (i) - (v) above, and thereafter to comply with the

20  requirements of (i) - (v) above

21

22                             **SECOND CAUSE OF ACTION**

23                             **CLAIM AND DELIVERY**
                             **(Against Each Defendant)**

24       29.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 28

25  above.

26       30.    Despite receipt of a demand for return or destruction of the confidential Protected

27  Information concerning KAISER members and patients, defendants have refused, and continue to

28  refuse to return or destroy the Protected Information to plaintiffs and provide certification of the

8
COMPLAINT

1   return or destruction of the Protected Information to plaintiffs.

2       31.    Defendants have no right to refuse to return or destroy the confidential Protected

3   Information concerning KAISER members and patients and provide certification of the return or

4   destruction of the Protected Information to plaintiffs, the owners of the records with the Protected

5   Information.

6       32.    Plaintiffs are entitled to a writ of possession to recover their personal property.

7

8                        THIRD CAUSE OF ACTION
                    CONVERSION/TRESPASS TO CHATTEL
9                          (Against Each Defendant)

10      33.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 32

11  above.

12      34.    Despite receipt of a demand for the return or destruction of the confidential Protected

13  Information concerning KAISER members and patients, defendants have refused, and continue to

14  refuse, to return or destroy the records and any email with confidential Protected Information and

15  certify to plaintiffs the return or destruction of the confidential Protected Information concerning

16  KAISER members and patients.

17      35.    By so doing, defendants have converted and trespassed on plaintiffs' rights in the

18  records and any email with confidential Protected Information derived from the records of and email

19  of plaintiffs without legal right or justification.

20      36.    Plaintiffs are entitled to an injunction as prayed below and to damages in an amount

21  to be proved at trial.

22

23                       FOURTH CAUSE OF ACTION
                    VIOLATION OF UNFAIR COMPETITION LAW
24                         (Against Each Defendant)

25      37.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 36

26  above.

27      38.    California Business & Professions Code § 17200 et seq. (the "UCL") prohibit unfair

28  competition. In this context, "unfair competition shall mean and include any unlawful, unfair or

                                    9
                                 COMPLAINT

1  fraudulent business act or practice .... " Cal. Bus. & Prof. Code § 17200.

2     39.    The "unlawful" prong of the UCL permits a plaintiff to obtain relief from anything

3  that can properly be called a business practice and that at the same time is forbidden by law,

4  regardless of whether the underlying law provides for a private right of action.

5     40.    Defendants, by their conduct and practices alleged herein, have committed and

6  continue to commit violations of the Health Insurance Portability Act of 1996, P.L. 104-191

7  ("HIPAA") and the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq. Defendants

8  are therefore in violation of the "unlawful" prong of the UCL.

9     41.    The "unfair" prong of the UCL is intentionally broad, thus allowing courts

10 maximum discretion to prohibit new schemes to defraud. Outside of the competitor context, courts

11 have enunciated differing tests for unfairness under the UCL. One test is that the harm to the victim

12 outweighs the justification of the alleged wrongdoer. A different test is that the defendant's acts

13 offend a public policy that is tethered to some statutory provision. Still another test is that the

14 defendant's acts constitute sharp practices.

15    42.    Defendants, by their conduct and practices alleged herein, have engaged and

16 continue to engage in conduct and practices that cause considerable harm and injury in fact to

17 plaintiffs, and defendants have no justification whatsoever other than reducing defendants' attempt

18 to extort additional compensation from defendants, which is neither a reasonable nor legitimate

19 justification. Defendants' conduct and practices offend a public policy of providing confidentiality

20 and protection to the confidential personal health information of health plan members and medical

21 patients, which policy is tethered to the Health Insurance Portability Act of 1996; P.L. 104-191

22 ("HIPAA"), the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., and the

23 California Constitution. Defendants' modus operandi constitutes a sharp practice because defendants

24 understand that KAISER desires to protect the confidentiality of Protected Information of KAISER

25 members and medical patients and avoid the unauthorized disclosure of such Protected Information.

26 Defendants are therefore in violation of the "unfair" prong of the UCL.

27    43.    Plaintiffs have suffered injury in fact and have incurred unnecessary expenses,

28 including legal fees, as a result of defendants' violations of the UCL.

45.    Plaintiffs reasonably believe that defendants' wrongful practices alleged herein are ongoing and continue to be a threat to plaintiffs.

46.    Plaintiffs are therefore entitled to restitution and disgorgement in amounts to be proved at trial, as well as injunctive relief to obtain the return, or deletion or destruction of the confidential protected information of KAISER members or medical patients and other relief as pleaded in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE plaintiffs pray for judgment against defendants as follows:

a.    For damages in an amount according to proof;

b.    For prejudgment interest as allowed by law;

c.    For specific performance of defendants' obligations under the Business Associate Agreement effective June 15, 2009 to return or destroy all Protected Information, retain no copies of any Protected Information, and upon plaintiffs' request to certify in writing that such return or destruction has occurred;

d.    For preliminary and permanent injunctions enjoining defendants and their employees and anyone acting on their behalf (i) from retaining any "Document," as defined by Californian Evidence Code Section 250, specifically including but not limited to, KAISER medical records and charts and email, with confidential Protected Information relating to any member or patient of KAISER; (ii) from using any confidential Protected Information in any "Document," as defined by Californian Evidence Code Section 250, provided to defendants by KAISER, and (iii) from disclosing to any third-party any Protected Information from any "Document," as defined by Californian Evidence Code Section 250, provided to defendants by KAISER

e.    For preliminary and permanent injunctions requiring defendants and their employees and anyone acting on their behalf (i) to refrain from using any confidential Protected Information from any "Document," as defined by Californian Evidence Code Section 250, provided to defendants and confidential Protected Information in any email exchanged between defendants and plaintiffs to contact KAISER members or patients; (ii) to refrain from disclosing to any third-party any Protected Information from any "Document," as defined by Californian

1   Evidence Code Section 250, provided to defendants and confidential email exchanged between
2   defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by
3   Californian Evidence Code Section 250, specifically including , but not limited to email with
4   confidential Protected Information of KAISER members and patients that defendants maintain or to
5   which they have access or care custody or control; (iv) to certify in writing under penalty of perjury
6   that defendants have returned, deleted or or destroyed all of the records and email with confidential
7   Protected Information of KAISER members and patients that defendants maintain or to which they
8   have access or care, custody or control; (v) to provide access to all defendants' computers, servers,
9   hard drives and email accounts for inspection by a forensic consultant appointed by the Court at
10  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and
11  confidential email with Protected Information of KAISER members and patients; and (vi) to
12  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of
13  KAISER members and patients that defendants maintain or to which they have access or care,
14  custody or control, following completion of (i) - (v) above, and thereafter to comply with the
15  requirements of (i) - (v) above.
16              f.      For a writ of possession transferring all the Documents with
17  confidential Protected Information of any KAISER member or patient in the possession, custody or
18  control of defendants to plaintiffs;
19              g.      For KAISER's cost of suit; and
20              h.      For such other and further relief as the Court should find to be just
21  and proper.
22      Respectfully submitted,
23  Dated: October 11, 2012                 MARION'S INN LLP
                                            THOMAS M. FREEMAN
24                                          SARAH EDWARDS
25
26                                          By
                                                    Sarah Edwards
27
28                                          Attorneys for Plaintiffs Kaiser Foundation Hospitals,
                                            and Kaiser Foundation Health Plan, Inc.

                                    12
                                COMPLAINT



SUPERIOR COURT - STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

KAISER FOUNDATION HEALTH PLAN, INC.,
and KAISER FOUNDATION HOSPITALS,

               Plaintiffs,

       vs.

STEPHAN CHRISTOPHER DEAN, LIZA
DEAN, DBA SUREFILE FILING SYSTEMS,
and DOES 1-10, Inclusive,

               Defendants.

Case No. INC1207224

---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

HEARING RE MOTION FOR SUMMARY JUDGMENT

BEFORE THE HONORABLE DAVID M. CHAPMAN

July 31, 2013

APPEARANCES:

For the Plaintiffs:

    THOMAS M. FREEMAN
    MARION'S INN LLP
    1611 Telegraph Avenue, Suite 707
    Oakland, California  94612-2145

For the Defendants:

    STEPHAN CHRISTOPHER DEAN
    LIZA DEAN
    In Propria Persona
    44700 Ronald Street
    Indio, California  92201

Reported By:

    TERRI L. DICKNEIDER, CSR NO. 5031

**CERTIFIED COPY**

TERRI L. DICKNEIDER, CSR

1            PALM SPRINGS, CALIFORNIA; JULY 31, 2013

2           BEFORE THE HONORABLE DAVID M. CHAPMAN

3       THE COURT:  Next, calling the matter of Kaiser

4  Foundation versus Dean.  Thank you for your patience this

5  morning, Counsel.

6       MR. FREEMAN:  Thank you for hearing us, Your Honor.

7       THE COURT:  My pleasure.  Could we have your

8  appearances for the record?

9       MR. FREEMAN:  Thomas Freeman for plaintiff, Kaiser

10  Foundation Health Plan, and opposing party.

11      MR. DEAN:  Good morning, Your Honor.  Stephan Dean,

12  defendant.

13      MS. DEAN:  Good morning, Your Honor.  Liza Dean,

14  defendant.

15      THE COURT:  Won't you please make yourselves

16  comfortable.  Please have a seat.

17      This matter is here for a motion for summary judgment.

18  The court issued its tentative ruling yesterday.  That was

19  posted.  Mr. Freeman, on behalf of Kaiser, has requested oral

20  argument.

21      And, as you can see, I spent a good deal of time

22  wrestling with these issues, and I must tell you that this was

23  not an easy call.  And a large part of the court's tentative

24  ruling -- and I underscore that that is only a tentative

25  ruling -- was based upon the four corners of plaintiffs'

26  complaint, particularly in -- I believe it was paragraph 16 of

27  the complaint, in which there were allegations raised

28  specifically providing that following the execution of the

1  Surefile Transfer Agreement in March of 2011, the defendants and
2  plaintiffs negotiated a confidential settlement agreement to
3  resolve all of the outstanding issues between them.  And there
4  was an offer at that time for -- from the plaintiffs to make
5  that settlement agreement available to the court, although the
6  court has read and reviewed that settlement agreement in that it
7  was an exhibit to the moving papers.

8          So with that foundation, Mr. Freeman, you are free to
9  make any comments or arguments that you would like.

10         MR. FREEMAN:  Yes, Your Honor.  The -- I appreciate the
11 court taking the time to review the plaintiffs' motion and the
12 papers submitted in opposition, and it's clear from the
13 tentative that the court did spend a considerable amount of time
14 looking at the matter.  However, I want to raise three issues
15 regarding the tentative, Your Honor, to address some facts which
16 the court may have overlooked or perhaps misconstrued, because
17 the relationship between the parties and the -- that led up to
18 the settlement agreement, and certainly the intent of Kaiser in
19 executing that settlement agreement, need to be clearly
20 understood.

21         Second --

22         THE COURT:  Okay.  I want to make sure I get the
23 issues.  One is the intent.

24         MR. FREEMAN:  Correct.

25         THE COURT:  Okay.

26         MR. FREEMAN:  And I'm going to -- I'm going to return
27 to the facts leading up to the execution of that agreement and
28 why we believe it should not be construed in the manner urged by

1  defendants and reflected in the tentative.

2        The second issue that I want to at least raise, because

3  it is not specifically addressed in the tentative, is that there

4  are in the plaintiffs' complaint four causes of action.  The

5  first is for breach of contract.  There are three other causes

6  of action.

7        THE COURT:  May I stop you right there?

8        MR. FREEMAN:  Yes.

9        THE COURT:  Was it your intent in your breach of

10  contract action to allege and/or plead a cause of action

11  claiming that there was a breach of the settlement agreement as

12  opposed to a breach of the business associate agreement?

13        MR. FREEMAN:  No.

14        THE COURT:  Thank you.

15        MR. FREEMAN:  Amongst the other causes of action

16  alleged, there are two common counts which are not addressed

17  with any specificity by the plaintiffs' moving papers, other

18  than their argument that all causes of action are subsumed by

19  the settlement agreement.  I'll address that in more detail in a

20  moment.

21        The third cause -- the third issue that I want to

22  raise, which is one that is -- is in fact raised by the

23  tentative, is a request by plaintiff for leave to amend its

24  complaint to allege alternative theories of mistake of fact or

25  concealment of material facts which induced Kaiser to enter into

26  the settlement agreement.  If in fact -- and I'll address that.

27  I hope to turn you around --

28        THE COURT:  That's a fallback position.

1          MR. FREEMAN:  That is the fallback position.  But as

2   the court -- the court cited in its tentative the *Laabs*

3   decision, at 163 Cal.App.4th 1242.  And at page 1248 of that

4   decision, the court cites the *Kirby versus Albert D. Seeno*

5   *Construction Company* case, which makes the point and the holding

6   in -- in the *Kirby* case is that on a motion for summary

7   judgment, if the plaintiff wishes to expand the issues

8   presented, we may and must at this hearing request leave to

9   amend.

10         THE COURT:  Okay.

11         MR. FREEMAN:  So I don't want there to be any ambiguity

12  about the fact that we -- if the court stands by its

13  interpretation of the settlement agreement as subsuming the

14  allegations alleged, we seek leave to amend to allege either

15  mistake of fact or concealment of material facts, a fraud claim.

16         THE COURT:  But not leave to amend on an allegation of

17  a breach of the settlement agreement?

18         MR. FREEMAN:  Well, it may be with respect to the

19  settlement agreement, Your Honor.

20         THE COURT:  Okay.

21         MR. FREEMAN:  And I'll circle back to that in a moment,

22  because as -- if you look at the declaration of Ms. Burke, she

23  really recites both the facts as Kaiser understood them in

24  entering into the settlement agreement because she is the party

25  who negotiated it with -- with the Deans' counsel --

26         THE COURT:  Would you bear with me?

27         MR. FREEMAN:  Sure.

28         THE COURT:  Please forgive me.  I want to go get

1  another -- I thought I brought them out with me.  But I have got
2  another note regarding Ms. Burke's declaration.  If you will
3  bear with me, I'll be right back.
4          MR. FREEMAN:  Sure.
5                          (Pause.)
6          THE COURT:  Thank you.  You may proceed, sir.
7          MR. FREEMAN:  Okay.  The -- I think if -- if I turn to
8  Ms. Burke's declaration, I can provide the factual background
9  and predicate to what Kaiser believes is a reasonable
10 interpretation of the settlement agreement consistent with the
11 allegations in plaintiffs' complaint.  The Deans had a
12 relationship with Kaiser whereby they provided services for a
13 number of years, beginning directly in 19- -- in 2008.  Some of
14 the services provided by the Deans were documented by written
15 agreements.  Other -- including invoices for payment.  Some of
16 the services were documented by services agreements, more
17 complete agreements, which both parties executed.  Some of the
18 services were not reflected in written agreements.  The Deans
19 rendered the services.
20          What is important to understand is that the services
21 that the Deans rendered beginning in late 2008, continuing into
22 2009, first and foremost involved the transfer of physical
23 medical record folder files from the Moreno Valley Community
24 Hospital, which Kaiser had acquired.  Those records at the time
25 Kaiser acquired the hospital were stored in a trailer out in
26 back of the hospital, in a very insecure situation.  Kaiser
27 didn't have the ability or facilities to store those records.
28 They needed to catalog the records before they were taken

1  offline by Moreno Valley Hospital.  And so the Deans were
2  retained to catalog those records, and they initially did that
3  work on site, but then transported the records to their facility
4  in Indio, where basically they cataloged the records with the
5  name of the patient, the medical record number, date of birth,
6  date of service, sometimes the Social Security number, although
7  that was rare.  So -- and then it was contemplated those records
8  would be returned to Kaiser; however, there was delay in doing
9  that.

10      The Deans continued to provide other services to
11  Kaiser, including the West L.A. deactivation project in early --
12  late 2009, early 2010.  And those were records, again, which
13  were being cataloged so that the physical files could be put
14  into permanent storage.

15      During the course of providing those services, the
16  Deans delivered to Kaiser CDs with the cataloging of those
17  records.  Some of the records were taken off -- taken off site
18  from the Deans and returned to Kaiser and put into storage.
19  Others remained there in storage in their warehouse.

20      After the completion of the deactivation project for
21  West L.A. there was a dispute that arose between the Deans and
22  Kaiser over the compensation that the Deans were entitled to.
23  That dispute culminated in the summer of 2010 in Kaiser formally
24  terminating its agreements with the Deans, the West L.A.
25  agreement and a November 2009 agreement, and the preparation of
26  the transfer agreement.  The intent of the transfer agreement,
27  which Ms. Burke describes in her declaration and which she
28  helped shepherd through, was intended to facilitate the return

1   to Kaiser of these medical record folders which were in this
2   warehouse in Indio.

3        There was no understanding at that time on Kaiser's
4   part that the Deans, in addition to those records, had on their
5   computers records of e-mails exchanged between an employee at
6   Kaiser and the Deans regarding any of those medical records.  We
7   now know, we now have learned since the execution of the
8   settlement agreement, that during the time the Deans had these
9   medical records in their custody, they periodically received
10  requests from Kaiser for the return of the files.

11       Kaiser knew that was happening because Kaiser would
12  receive a subpoena from somebody saying, "Hey, we need the
13  medical records of John Smith."  Kaiser would look in its files,
14  it wouldn't have it, they would call up the Deans, "Hey, we need
15  the folder for John Smith in response to the subpoena," and the
16  file would be returned to Kaiser, or somebody from Kaiser would
17  pick it up; or a patient would come in for treatment, and the
18  medical record folder would have to be retrieved.

19       So those -- periodically there were these requests
20  transmitted to the Deans for the return of these medical record
21  folders.  However, what was unknown to Kaiser and only came to
22  light in August of 2011, when Mr. Dean provided me with copies
23  of three e-mails, was the fact that at least one employee -- I
24  don't know if there are more.  The Deans have since told us they
25  have destroyed all the PHIs, so they don't have any record, but
26  we know there were at least three e-mails that were sent to the
27  Deans by a Kaiser employee that listed confidential personal
28  health information, unencrypted.

1   That was done contrary to Kaiser's policies and
2   procedures, contrary to the training that Kaiser employees
3   received, and there would have been no reason for Kaiser to know
4   or believe that such a communication had in fact occurred, nor
5   that the Deans had retained those e-mails with the personal
6   health information, which included dates of birth, Social
7   Security numbers, medical record numbers, at the time either the
8   transfer agreement was entered into in June or July of 2011, nor
9   at the time of the settlement agreement.

10      So what I -- and that's -- there is no dispute about
11  that from the Deans in terms of their disclosure of it. Kaiser's
12  knowledge of it. It was never communicated. The transfer
13  agreement by its terms refers only to the return of the medical
14  records.

15      And -- and in addition to that, and this leads to the
16  settlement agreement, at the time that the transfer agreement
17  was undertaken, Kaiser agreed to make a down payment, so to
18  speak, to the Deans for the services that they have rendered.
19  But it was specifically acknowledged in the transfer agreement,
20  in paragraph 4, that Dean reserves the right to pursue Kaiser
21  for cost of storage, maintenance, and delivery of the Moreno
22  Valley, Riverside County, records.

23      So it was understood there would be a further
24  negotiation and reconciliation of that claim. That's what the
25  settlement agreement was intended to do.

26      THE COURT: But it's not what it says.

27      MR. FREEMAN: Well, it is, in that -- and this is where
28  I would, I guess, take issue with the court's interpretation --

TERRI L. DICKNEIDER, CSR

8

1    THE COURT: Did it define the dispute?

2    MR. FREEMAN: It does.

3    THE COURT: And would you read that to the court, and
4    for the record, as to how it defines the dispute.

5    MR. FREEMAN: So in the recitals, it says: "Whereas,
6    Surefile asserts that it has yet to be fully compensated for
7    services performed and costs incurred in providing services to
8    KP, and has alleged other claims against KP -- "

9    THE COURT: Stop right there. "Other claims against
10   KP." Do they identify what those other claims are?

11   MR. FREEMAN: They do not define them in the settlement
12   agreement.

13   THE COURT: And in addition to the dispute that you
14   identified in that language, the settlement agreement goes on to
15   purport to settle any and all claims that one has against the
16   other, both past, present, and future. In fact, known and
17   unknown claims.

18   MR. FREEMAN: It does. And -- and I'll concede that
19   perhaps some of that language is not as precise, which we would
20   now hope it would have been. But in references to the release,
21   well, in -- in -- in references to the dispute, in the agreement
22   portion of the settlement agreement, in paragraphs B and C, all
23   of the references are with respect to the dispute. And
24   paragraph B, for example, says: "The settlement funds shall be
25   in full and final settlement and compromise of any claims they
26   might possess against the other, including without limitation
27   the dispute and any counterclaims and allegations related to or
28   in connection with the dispute at all times prior to and after

1    the effective date."

2        Paragraph C also says: "Except as otherwise provided
3    herein, KP and Surefile agree that no additional money shall be
4    due from any party, for any reason whatsoever, for any
5    obligation incurred by any party to any other party in
6    connection with the dispute." "The dispute" being Deans' claims
7    for compensation as reflected in the transfer agreement.

8        THE COURT: And if the language within that release
9    only said "the dispute," then I think that gives you more solid
10   foundation for your argument. But the settlement agreement then
11   goes on much more than just settling the dispute. It purports
12   to not only settle the dispute, but "any and all claims," past,
13   present or future, known or unknown. And there is a waiver of
14   the Civil Code section. Is there not?

15       MR. FREEMAN: There -- there is a -- a waiver of 1542.
16   However, in the settlement paragraph, settlement and release
17   paragraph number 3, again, all of the references to the release
18   are keyed off of liabilities and obligations, liabilities and
19   obligations arising out of or relating to the dispute.

20       THE COURT: Then why do you --

21       MR. FREEMAN: That point is made four times in that
22   paragraph, where it says "with respect to the dispute," "that
23   relate to the dispute," "relating to the dispute."

24       THE COURT: Then why do you include language in your
25   release -- if you did not intend to release all other claims,
26   why is that language within the release? If you only intended
27   to settle, to use your words, "the dispute," why did you include
28   in your release a release of all other claims, known or unknown?

1  Why is that language there if it doesn't purport to do exactly

2  what it says?

3      MR. FREEMAN:  Because it was within the contemplation

4  of the parties at the time that the claims that were being

5  released all related to Deans' claims for compensation for

6  services rendered with respect to his handling of records for

7  Kaiser.

8      THE COURT:  But you concede, do you not, that your

9  release that you drafted does not purport to limit the release

10 in exchange for just "the dispute," as you have defined it,

11 relating to compensation.  That's not what the document says.

12     MR. FREEMAN:  It does include those other words.

13     THE COURT:  It does.  And so -- but there is a

14 paragraph in the release that has to do with the business

15 association agreement, and I believe you might want to check

16 around paragraph 7, where it talks about preserving the

17 confidentiality.  And it makes specific reference to the

18 business association agreement, does it not?

19     MR. FREEMAN:  It does.  In paragraph 13.

20     THE COURT:  Paragraph 13.  And what does it say about

21 the business association agreement in paragraph 13 of the

22 release agreement?  Because in your opposition to this motion,

23 you assert that the business association agreement survived this

24 settlement agreement of all other claims, known and unknown.

25 Correct?

26     MR. FREEMAN:  Correct.

27     THE COURT:  Now, in reading that paragraph, what does

28 it say about specifically the business association agreement?

1   Does it say all terms and conditions of the business association

2   agreement are preserved and survive this purported settlement,

3   or does it attempt to carve out only a portion of the business

4   association agreement as it related to the subject of

5   confidentiality?

6           MR. FREEMAN:  Well, I will tell you that Ms. Burke

7   understood that the settlement agreement did not and was not

8   intended to supersede the BAA.

9           THE COURT:  I read her declaration, but what does your

10  settlement agreement say --

11          MR. FREEMAN:  The --

12          THE COURT:  -- as it relates to the BAA?

13          MR. FREEMAN:  Paragraph 13.  I'll read the whole thing.

14          THE COURT:  Thank you.  Slowly for my -- for my court

15  reporter, please.

16          MR. FREEMAN:  Sure.  And if I read it too fast at any

17  point, she should stop me.

18          THE REPORTER:  Thank you.

19          MR. FREEMAN:  Paragraph 13, which is headed

20  "Non-disclosure," states:  "The nature and terms of this

21  agreement shall not be disclosed by any party hereto or its

22  agents, attorneys, or other representative, without the prior

23  written consent of the other parties, semicolon, provided,

24  however, that any party may disclose the existence of this

25  agreement, and the nature and terms thereof, subparagraph little

26  i, to the attorneys, accountants, and financial and tax advisors

27  of that party, sub double little i, as required or compelled by

28  law, or sub three little i, to enforce the provisions of this

1  agreement.  Period.  KP and Dean will continue to take
2  appropriate steps to preserve all confidential information in
3  the medical records handled by Dean during the course of
4  providing services as required by the Confidentiality of Medical
5  Records Act, Cal. Civil Code section 56, et seq., the federal
6  Health Insurance Portability and Accountability Act, paren,
7  HIPAA, H-I-P-A-A, close paren, and the parties' business
8  associate agreement of June 24, 2009."
9          THE COURT:  Okay.  So, now, my question to you:  In the
10 settlement agreement, contrary to Ms. Burke's understanding as
11 set forth in her declaration, is it your position that the
12 language that you have just quoted in fact allows full and
13 complete enforcement of the BAA, or does that portion of the
14 settlement agreement carve out only a portion of the obligations
15 under the BAA, to wit, protect the confidentiality of those
16 records?
17         And the reason that becomes important is, under the
18 BAA, specifically paragraph 2.8 of the business association
19 agreement, there is an obligation on behalf of the Deans to make
20 the protected information in the designated records available to
21 KP for inspection within ten days.  The question for the court,
22 then, is:  Does paragraph 2.8 of the BAA survive the global
23 settlement agreement?  And, if so, then the Deans have an
24 obligation upon ten days -- or they have the obligation to make
25 available for inspection within ten days the protected health
26 information.
27         So my question to you is:  Do you believe that
28 paragraph in the settlement agreement, in fact, exempts and

1  provides that the entire BAA survives, or is it only a portion
2  of the BAA that survives relating to the confidentiality of the
3  protected health information?
4      MR. FREEMAN:  Paragraph 13, I believe, Your Honor,
5  based on the terms that we are talking about here, I think
6  certainly reflects an intent for this specific provision of
7  access in the BAA to survive.  No question.
8      THE COURT:  The -- no question, the issue as -- at
9  least in this court's opinion, that paragraph of the settlement
10  agreement absolutely provides that the confidentiality aspects
11  of the business associate agreement survives the settlement
12  agreement.  And so my question for you -- and, more importantly,
13  it may not be you, but was it Ms. Burke who drafted the
14  settlement agreement? -- if it was her intent that the entire
15  business association agreement, all terms and conditions and
16  obligations thereunder, be exempt from the settlement agreement,
17  why didn't she say so?
18      It would have been very easy for her to say in that
19  settlement agreement not that just the confidentiality under the
20  BAA would survive, although she doesn't use the word "survive,"
21  but I -- I adopt your argument that it was her intent.  Why
22  wouldn't she have said not only the confidentiality sections of
23  the BAA survive, but all obligations contained within the BAA
24  and that entire agreement survives what purports to be the
25  global settlement in which she said, "I am giving up, the Deans
26  are giving up, and both sides are mutually agreeing that all
27  claims, past, present, future, known or unknown, except
28  paragraph 13, is being settled in exchange for that $100,000" or

1  whatever that figure was that was part of the settlement

2  agreement?

3      MR. FREEMAN:  The answer is because she was acting

4  under a mistake of fact.  She understood that at the time this

5  agreement was entered into, the settlement agreement, that the

6  Deans had in fact, pursuant to the transfer agreement, returned

7  to Kaiser all of the records that they had in their possession.

8  There was no inkling on anybody's part at Kaiser that the Deans

9  were still in possession of electronic medical records.

10      THE COURT:  And what -- what impact do you think

11 Mr. Dean's letter has on that position, when he said

12 essentially, "I agree that the settlement agreement only had to

13 do with compensation and nothing else"?

14      MR. FREEMAN:  I think it's an admission that -- that he

15 didn't -- that he had withheld that information, that the BAA

16 was still applicable and that he was obligated by it to provide

17 that information to Kaiser.  If Kaiser had been aware at the

18 time of the settlement agreement or after the transfer

19 agreement, if it had learned from Mr. Dean, as it did a year

20 later, "Hey, I have got medical -- I have got these e-mails, and

21 I want you to pay me more money for them before I give them

22 back," if that issue had been raised, there is no question that

23 Ms. Burke would not have released the Deans from the BAA.

24      Under the terms of the BAA, it's clearly -- it was

25 clearly intent -- clearly the intent of the parties that that --

26 that the obligations of the Deans under the BAA would survive,

27 even the termination of their business relationship.  In

28 paragraph 4.4 of the BAA, it says the obligations of the

1  business associate, that is the Deans, under this article 4,
2  shall survive the termination of the business relationship
3  between the parties and/or the BAA.
4       Under the BAA, in paragraph 4.3, "Effects of
5  Termination: Upon termination of the business relationship,
6  business associates shall, at Kaiser's direction, return or
7  destroy all protected information that the business association
8  or its agents still maintain in any form and shall retain no
9  copies of such business -- of such protected information."
10      THE COURT:  I agree.  If you were here, if this was
11 a -- if this was a lawsuit about whether they breached the BAA,
12 I think so far there is evidence that has been submitted, both
13 in support of and in opposition to the Deans' motion for summary
14 judgment, that suggests that they may have breached that
15 agreement by maintaining information that they did not have a
16 right to continue to possess.  But that's not what we are here
17 about today.
18      The question becomes:  Did Kaiser give up all of those
19 rights that they otherwise may have had to assert a breach of
20 the BAA by entering into a settlement agreement which purports
21 to give up all claims, past, present, and future, with the
22 exception of what is carved out under paragraph 13 of the
23 settlement agreement?
24      And the next question that is unanswered is:  Does
25 Kaiser have a right to assert, does Kaiser have a right to
26 assert, under paragraph 13 of the settlement agreement, a
27 violation of HIPAA on behalf of their clients?  Or former
28 patients.  Not clients, but patients.

1       MR. FREEMAN: Well, that certainly is what Kaiser is
2   trying to do here. That's the whole genesis of this dispute,
3   is --

4       THE COURT: But that wasn't an allegation within your
5   complaint. Was it?

6       MR. FREEMAN: It was not. But it can be easily
7   remedied if we are given leave to amend.

8       THE COURT: Okay, but I --

9       MR. FREEMAN: And we request that.

10      THE COURT: But I don't want to usurp the three issues
11  that you wanted to address, and one is intent.

12      MR. FREEMAN: Right. But let me just make one other
13  point on that. And it is to point out that I think there is --
14  that the Deans themselves have admitted that their obligations
15  under the BAA survived. In Mr. Dean's letter to me of
16  August 8th, 2011, which is exhibit L, he says, "This letter is
17  to confirm that your files, in compliance with the three
18  agreements mentioned in your letter" -- that is my letter to
19  him -- "the BAA dated June 24th, 2009, the transfer agreement of
20  July 2010, and the settlement agreement dated March 24, 2011."
21      So we --

22      THE COURT: I'm sorry. I apologize.

23      MR. FREEMAN: No, that's all right.

24      THE COURT: I'm trying to get this thing so I can read
25  it. Go right ahead.

26      MR. FREEMAN: My point is that Mr. Dean, we would
27  contend, understood that he was obligated under the -- that the
28  BAA survive. That it was not, as he now argues, terminated by

1    the settlement agreement.

2        MR. DEAN: Your Honor, I -- I have heard him. We have

3    something to say.

4        THE COURT: You will get a chance in a minute.

5        MR. DEAN: Oh, I'm sorry. Sure.

6        THE COURT: Please continue.

7        MR. FREEMAN: Let me just briefly finish, then, Your

8    Honor, because I think I have actually made my other two points.

9        The -- the common counts for claim and delivery and

10   conversion and trespass with respect to the records, we -- we

11   think arose after the agreement, after Kaiser learned that Dean

12   retained possession of the electronic medical records. The

13   e-mails that had the PHI, that -- there is no question those

14   records were Kaiser's property. Kaiser was entitled to the

15   return of them, separate and apart from the BAA, separate and

16   apart from any of the other agreements Kaiser had. The

17   essential point is that the Deans had no right to retain those

18   records. And when Kaiser asked that they be returned, the Deans

19   refused without payment of additional compensation for those

20   records.

21       And then the third point, Your Honor, is if the court,

22   as we have discussed, is going to adopt its tentative relative

23   to the interpretation of the settlement agreement and its

24   effect, then we would request leave to amend the complaint to

25   seek enforcement of the terms of the settlement agreement and

26   specifically the obligations under the BAA for the Deans to

27   provide access to those records and their breach of that

28   provision by their failure to do so, as well as alternative

1   theories based on mistake of fact and concealment of material
2   facts at the time the settlement agreement was entered into.
3         THE COURT: Thank you. Kaiser's -- Kaiser's request
4   for judicial notice and opposition to the defendant's motion for
5   summary judgment is granted. And we are going to take a morning
6   break. We will stand in recess of 15 minutes, and then the
7   Deans will have a chance to respond.
8         MR. FREEMAN: Thank you, Your Honor.
9                       (Recess.)
10        THE COURT: Back on the record in the matter of Kaiser
11  versus Dean.
12        Mr. Dean, you may proceed, sir.
13        MR. DEAN: Yes, Your Honor. Thank you for taking the
14  time to look into this. We really appreciate it.
15        We agree with your tentative ruling. Mr. Freeman has
16  brought out a point that allegedly Kaiser's counsel at that
17  time, Holly Burke, claims that she was unaware that we still
18  were retaining PHI in our custody or control. At the time that
19  this agreement was drafted, I was represented by counsel, Tom
20  Stefanelli. Mr. Stefanelli clearly told me that this agreement
21  released all claims and causes of action, not just related to
22  the dispute, but to any claims involving our business
23  relationship as defined in the recitals of the settlement
24  agreement.
25        THE COURT: Why did you send a written notification
26  after the date of the settlement in which you asserted that the
27  settlement only resolved issues regarding compensation?
28        MR. DEAN: Because there were other issues that were

1   involved.  One was the reporting of the HIPAA violations, and
2   the state violations of confidentiality.  And I contacted Holly
3   Burke in August of 2011, and that's what I called her about.  I
4   also at that time, a little over two years ago now, contacted
5   the California Department of Public Health and notified them of
6   the situation that we had this PHI and that we were keeping it
7   as evidence, and they were well aware of that and the reasons
8   why we had it.  There was no doubt that we had the stuff.
9        I -- I feel that this agreement that we have, this
10  settlement agreement, was very clear that it only pertained to
11  us not -- one, not disclosing it to unauthorized third parties;
12  and, two, to protect it.  But the protections in this agreement
13  are more than just the BAA.  If you look at paragraph 13, it
14  required us to also --
15        THE COURT:  Let me -- excuse me.  I apologize.  I want
16  to make sure -- I want to get to paragraph 13, if you can just
17  bear with me.
18        MR. DEAN:  Yes.
19        THE COURT:  Okay.  I'm there.
20        MR. DEAN:  Okay.  Here, I'm just going to read from the
21  part and -- part of this paragraph 13.  Under "Non-disclosure,"
22  it starts at the word "KP."  It says:  "KP and Dean will
23  continue" -- and they left the word "to" out of there, but I'm
24  sure that's what everybody meant -- "to take appropriate
25  steps" -- first of all, "to preserve," which my definition of
26  that is to maintain or retain.  And then it says, "all
27  confidential information in the medical records" -- now, that
28  was referring to patient health information -- "handled by Dean

1   in the course of providing services" -- now, the "services" is
2   described in the recitals, of all the things that we were doing
3   with the medical records and the patient information, and all
4   that was part of our business relationship as described in the
5   recitals.

6       Then it continues on to say "as required by." Now,
7   first, "Confidentiality of Medical Records Act, Civil Code 56,"
8   Civil Code 56 is -- really deals with who you can disclose
9   patient information to without a written authorization. It's
10  very, very concise. Then it goes on to say "the Federal Health
11  Insurance Portability and Accountability Act." That's HIPAA.
12  HIPAA also defines who you can disclose it to, but also the
13  protections that are required and how you are supposed to
14  preserve it.

15      Then, the third thing is "the parties' business
16  associate agreement." Now, counsel has said "business associate
17  agreement," "business associate agreement." They keep referring
18  to that. There is more to this than that. This clearly shows
19  that the -- the reason why this is in here is that we were to
20  continue to protect it and preserve it and keep it confidential.

21      Our feeling is this agreement, we are married. And
22  it's binding. And we both agree, per the March 2011 settlement
23  agreement, paragraph 18, it says: "This agreement states the
24  entire agreement among the parties who have executed this
25  agreement and supersedes their prior agreements, negotiations or
26  understandings." So our feeling was that this controls. The
27  BAA was incorporated into the agreement as well as the CMIA and
28  HIPAA, to require us to protect it and not disclose it unless it

1   was disclosed to an authorized third party or we had a patient's

2   written authorization.

3       The settlement agreement, the first page of it, under

4   "Recitals," this is very important, it says:  "Whereas, Surefile

5   and KP failed to fully memorialize their business relationship

6   relating to the services in a written agreement."  This

7   settlement and release agreement was what we were to follow.  It

8   is the agreement that we are bound by now, and we have followed

9   the instructions of the agreement.

10      We were represented by counsel, as well as Kaiser's own

11  in-house counsel, Holly Burke, drafted this agreement.  These

12  were two licensed attorneys that knew exactly what they were

13  doing.  I was told very clearly that this agreement is what

14  binds us together, and the literal words of the agreement

15  require us to preserve the information that we retain or got

16  during services.  We were to follow the status quo from when we

17  have signed the transfer agreement in 2010.  And that's exactly

18  what the words say.

19      I'm done, sir.

20      THE COURT:  Thanks.  I have a question for you.  You

21  filed a declaration indicating that you had destroyed all of the

22  personal information.  Correct?

23      MR. DEAN:  Yes, Your Honor.

24      THE COURT:  What is it that you are preserving, then?

25      MR. DEAN:  Now?

26      THE COURT:  Yes.

27      MR. DEAN:  Nothing.  That's -- I don't have anything.

28      THE COURT:  Okay.  Let's -- okay.

1          MR. DEAN:  I'm sorry.

2          THE COURT:  Mr. Freeman.  What is it that you want from
3    these folks?

4          MR. FREEMAN:  We want an entry of a permanent
5    injunction that would prevent them from maintaining or using any
6    personal health information.  If they have nothing, then the
7    permanent injunction would just assure that nothing was ever
8    used.

9          THE COURT:  Wasn't there an injunction that was issued
10   in this case by my predecessor, and is that still in effect?

11         MR. FREEMAN:  It is.

12         THE COURT:  And was it ever converted from a
13   preliminary injunction to a permanent injunction?

14         MR. FREEMAN:  It was not.

15         THE COURT:  But it still continues in force and effect
16   today?

17         MR. FREEMAN:  It does.  And just to be clear on that
18   point, Your Honor, because this has been a source of discussion
19   between the Deans and Kaiser since January of this year, when
20   the preliminary injunction was entered, just to back up, the
21   Deans told Kaiser they had the electronic records with personal
22   health information.  They refused to return them.  We negotiated
23   over -- to attempt to get access to those so that they could be
24   deleted from their computers, they could be deleted from their
25   e-mail accounts, et cetera.

26         THE COURT:  Since that discussion, did his declaration
27   follow that, saying that it had all been destroyed, or was his
28   declaration before?

1        MR. FREEMAN:  It did.

2        THE COURT:  Okay.  Let me just stop.

3        MR. FREEMAN:  And --

4        THE COURT:  Okay.  Let me just stop you, sir.

5        Sir, do you have any electronic information whatsoever

6   of any Kaiser patient?

7        MR. DEAN:  No.  Your Honor, no.  Your Honor, they want

8   to shake us and hang us upside down.  We don't have anything.

9        THE COURT:  Okay.  Mr. Dean, let me do it one at a

10  time.  Do you have any electronic data whatsoever that has any

11  reference to any Kaiser patient?

12       MR. DEAN:  No.

13       THE COURT:  Next, do you have any hard copies of any

14  written records which in any way relate or refer to any Kaiser

15  patient?

16       MR. DEAN:  No.

17       THE COURT:  Are you preserving any data whatsoever that

18  has anything to do with any Kaiser patient in any form

19  whatsoever, whether hard copy, electronic, or otherwise?

20       MR. DEAN:  No.

21       THE COURT:  Okay.  Ms. Dean, do you agree?  Would your

22  answers be the same?

23       MS. DEAN:  Yes, they would be absolutely the same.

24       THE COURT:  All right.  You may continue.  I

25  interrupted you.

26       MR. FREEMAN:  So -- so at the time this complaint was

27  filed in October of 2012, we knew the Deans had possession of

28  the PHI based on what they had provided to us.  They had refused

1   a request to return it.  They had refused to allow us to access
2   their devices or e-mail accounts to delete it.
3       We filed the complaint.  We got the TRO.  We -- between
4   the time the TRO was entered and the time of the hearing on the
5   preliminary injunction in January of 2010, the Deans submitted
6   declarations saying, "We have deleted everything.  We have
7   deleted all the PHI."  Notwithstanding that, the court entered
8   the preliminary injunction.
9       Subsequent to the entry of the preliminary injunction,
10  we received from the Deans in May of this year three medical
11  record folders and a CD that contained a list of hundreds, maybe
12  thousands, of medical records that they had cataloged.  They,
13  upon -- they notified me of that.  I asked them to return it.
14  They did return it.  And we got rid of it.
15      The reason -- the reason we seek the entry of a
16  permanent injunction is simply to assure that in the event that
17  the Deans discover PHI on their computers, on their phones, in
18  their e-mail accounts, if muddling around in their warehouse
19  they find additional records, they are under an obligation to
20  return that to us without us having to worry about whether those
21  records will be disclosed, used, or any other way --
22      THE COURT:  All right.  Let me stop you.
23      This is not -- you have an opportunity to be heard, and
24  so I'm not asking for a commitment if you have any objection
25  whatsoever, but I do have a question for you.  And the question
26  would be:  Do you have an objection to the preliminary
27  injunction that has previously been ordered simply becoming a
28  permanent order such that should you find any such documents you

1  inadvertently didn't find or see or return earlier, you have an

2  affirmative obligation to return them?  Do you have an objection

3  to the preliminary injunction becoming a permanent injunction?

4         MR. DEAN:  Yes, we do, Your Honor.

5         THE COURT:  Okay.  All right.

6         Anything further?

7         MR. FREEMAN:  Your Honor, just given the discussion

8  that we have had here today, if the court intends to adopt its

9  tentative, we would, as I have previously discussed, request

10 leave to amend based on the *Kirby versus -- Kirby* decision and

11 the case of *Mediterranean Construction Company versus State Farm*

12 *Fire & Casualty Company.*

13        THE COURT:  Okay.  Let's discuss that for a minute.  I

14 know that's your fallback position.  And my question to you is:

15 Why wouldn't paragraph 3 of the settlement agreement preclude

16 you from being successful on an amended complaint, specifically

17 as follows:  Under paragraph 3 of the settlement agreement, it

18 indicates about a third -- about a halfway down that paragraph,

19 it starts with -- let's just pick up from the word "thereof,"

20 comma, "and/or each of the aforesaid, collectively referred to

21 herein as 'affiliates,' from all claims, actions, causes of

22 action of any nature and for all liabilities and obligations of

23 every kind and character arising out of or relating to the

24 dispute and any and all claims that were or could have been

25 asserted relating to and/or arising from any of the foregoing,

26 regardless of whether such claims, actions or causes of action

27 have arisen prior to the effective date or arise after the

28 effective date."

1    How is it that any purported amended complaint that you
2 could allege would wind up not being covered by this language
3 that Ms. Burke drafted in the settlement agreement? And the
4 reason I ask you that is the court is not obligated to grant
5 your motion to amend the pleadings if you cannot legally plead a
6 cause of action that otherwise is not defeated by this
7 settlement agreement under paragraph 3, although I understand
8 the court's obligation to liberally allow pleadings or amendment
9 to the pleadings. But I just want to ask you. I don't want you
10 to go through an exercise in futility. How do you plead around
11 that?

12        MR. FREEMAN: Based on fraud.

13        THE COURT: How?

14        MR. FREEMAN: Your Honor, as I have tried to explain,
15 the parties, at least Kaiser, understood what it had negotiated
16 at the time it entered into the transfer agreement was the
17 return of all of the medical records that the Deans had in their
18 possession. They were unaware of the Deans' concealment of the
19 fact that they retained electronic records of Kaiser that had
20 personal health information.

21        THE COURT: Okay. But then we -- then you are
22 triggered by a fully integrated document. Are you going to
23 introduce parol evidence to try and defeat paragraph 18, which
24 fully integrates into this settlement agreement all prior
25 agreements, negotiations or understandings?

26        MR. FREEMAN: Yes, Your Honor, what it comes down to
27 is the fact that Ms. Burke negotiated this agreement
28 understanding that the dispute that was being resolved was the

1   compensation for the Deans' services.

2          THE COURT:  Despite language to the contrary.  So she's

3   going to submit a declaration to the court saying that "I

4   drafted this release agreement, I chose the words within this

5   release agreement, I made it all-encompassing, but, oh, by the

6   way, I did not intend it to be a fully and completely integrated

7   release agreement, releasing all known and unknown claims" and

8   then specifically making reference to 1534?  She's going to say

9   that?  I mean, she essentially already has.

10         MR. FREEMAN:  She has said that, Your Honor.  And the

11  fact of the matter is that the Deans obviously intentionally

12  withheld that information.  The ink literally on this agreement

13  wasn't dry before Mr. Dean turned around and said, "Hey, I have

14  got more records, and I want $60,000 to return them."

15         THE COURT:  You have not persuaded me that my tentative

16  ruling should be overturned.  I think the language within the

17  settlement agreement establishes as a matter of law that there

18  was a release of all of the claims that are alleged in the

19  plaintiffs' complaint.  And so the tentative order of the court

20  shall become the order as it relates to the motion for summary

21  judgment, and the plaintiff is required to give notice.

22         However, I will grant your oral motion to amend the

23  complaint.  Now, I am doing so only because I think that under

24  the cases that say that I am to liberally construe a party's

25  right to amend the complaint, that I am going to do so.  But I

26  must tell you that it is a close call because paragraph 3 of

27  this complaint may well, unless you can give me authority to the

28  contrary, defeat those other causes of action.

1    I am not ruling on this at this time because I have
2 candidly not done the research, nor have I seen the points and
3 authorities. But -- so what do you propose the order to be?
4 The motion for summary judgment on these causes of action are
5 granted, consistent with the tentative ruling. And you are
6 permitted leave to amend. The order is you file your amended
7 complaint within 30 days from today.
8        Anything on behalf of the Deans?
9    MR. DEAN: Yes, Your Honor. We -- you had said to do a
10 proposed order, basically what you said. But we have also asked
11 in the order that the motion for -- that the preliminary
12 injunction be vacated because we don't have anything.
13 Therefore, there is no -- I guess as a matter of law, how can
14 you tell me to protect something I don't have? We have had
15 depositions with Mr. Freeman; two of them. We have told him
16 we -- we had a declaration.
17        And, Your Honor, this situation where I found three
18 records and a disc, I thought he would pat me on the back, thank
19 you, because, Your Honor, the preliminary injunction tells me to
20 return, delete or destroy. I could have just destroyed it and
21 said nothing. There is no conspiracy here. They want my
22 property. They want my computers. I want my friend's '68
23 Camaro in his garage, but he won't take a thousand dollars for
24 it.
25        We have an agreement that we are bound together. If he
26 wants to keep this litigation -- we are not lawyers, but we are
27 getting a little tired of it because we haven't done anything
28 wrong. We have abided by the agreement. It's very evident.

1  They are just bullies, and they are using their money to force
2  us to take -- we have lost a half a million dollars. We have
3  lost our life savings over this fiasco because we said it was
4  wrong to maintain all those patient records without a written
5  agreement and insurance. They finally gave us one based on the
6  fact that my wife was Hispanic, and that's a fact, in the
7  documents.

8      THE COURT: You know, I always encourage the parties --
9  you know, sometimes competitive spirits can be aroused on both
10 sides, and I always encourage parties in a good-faith,
11 professional approach to see if they can't resolve their
12 differences. And so although I am compelled, Mr. Freeman, to, I
13 think, give you leave to amend, I would encourage you to look
14 closely at this settlement agreement and whether or not you can
15 legitimately bring a cause of action for fraud.

16     I mean, inadvertent discovery of records and then
17 giving those to you doesn't seem to suggest a fraudulent intent,
18 but again I'm not ruling on that or I'm not passing judgment on
19 that, and I'm not making any factual determination because I
20 don't know what happened.

21     MR. FREEMAN: That wasn't the basis for our lawsuit
22 either, Your Honor.

23     THE COURT: All right.

24     MR. FREEMAN: The basis for our lawsuit was the
25 withholding of the electronic records, which Mr. Dean in
26 correspondence threatened to disclose, threatened -- went to the
27 press, made disclosures of the fact -- "Hey, I have got this on
28 my computer sitting in my garage. I'm leaving my garage door

1  open.  Aren't you lucky that nobody stole my computers and got
2  this PHI."
3      THE COURT:  And since then, under penalty of perjury,
4  which is a felony in the state of California, he has represented
5  that all such records have in fact been destroyed and he doesn't
6  possess any.  Now, on the one hand, those comments to you
7  certainly have some inferences that I understand your position
8  and your interpretation.  Since then, having received a
9  declaration under penalty of perjury, both Mr. and Mrs. Dean are
10  running a substantial and significant risk regarding the signing
11  of such a declaration if it's untrue.
12      But be that as it may, unless there is something
13  further, I think I have given this serious and thorough
14  consideration.  And I very much appreciate both Kaiser's
15  position and the Deans' position, and I'm hopeful that you folks
16  can resolve it, otherwise I will for you.
17      MR. FREEMAN:  One final housekeeping matter, Your
18  Honor.  The trial date in this matter is set for September 9th,
19  and I assume that's vacated.
20      THE COURT:  That trial date is vacated.
21      MR. FREEMAN:  I would also ask the court to indulge me
22  in a brief off-the-record discussion once we have concluded the
23  hearing.
24      THE COURT:  Sure.  Is that okay with the Deans?
25      MR. DEAN:  He wants to ex parte, they call it, right?
26      THE COURT:  No.  No.  He wants an off-the-record
27  discussion.  And I don't know if that's to your benefit or not,
28  but I would not have such a discussion outside your presence.

1     MR. DEAN: Well, Your Honor, one thing before -- I'm

2   glad to accommodate that. I guess you are the one that does.

3   Would you please sign this? This is what you asked me as far as

4   your tentative ruling and also --

5     THE COURT: I will look at it, but let me tell you --

6   and I'm -- I want to commend you, sir. I think you have done a

7   fine job, not being a lawyer.

8     MR. DEAN: Thank you.

9     THE COURT: No, I can't sign this because I'm not

10  vacating the preliminary injunction as of today's date. Also, I

11  have asked counsel on behalf of Kaiser to prepare the formal

12  order. And because I want to make certain that it is absolutely

13  consistent with the tentative and it addresses his oral motion

14  to amend the pleadings, I'm going to ask him to prepare that.

15  He will send you a copy. If you have any objections to his

16  proposed order, simply file that objection with the court. I'm

17  sure it will be absolutely consistent with the tentative,

18  though. Okay?

19    MR. DEAN: Thank you, Your Honor.

20    MS. DEAN: Thank you.

21    THE COURT: Okay. We are now off the record.

22    MR. FREEMAN: Thank you, Your Honor.

23          (Discussion off the record.)

24    THE COURT: Let's go back on the record. We have had a

25  short discussion off the record concerning the possibility of

26  engaging in a mandatory settlement conference. Counsel on

27  behalf of Kaiser and Mr. and Mrs. Dean have indicated that they

28  would like this court to participate and will waive any issues

1   regarding my disqualification as the trial judge.

2        Counsel on behalf of Kaiser will prepare the

3   appropriate stipulation and waiver.  And I conduct settlement

4   conferences on a Friday.  I am gone the next two weeks.  Please

5   tell me when would be the earliest and most convenient date for

6   the parties.

7        MR. FREEMAN:  Your Honor, I am available after

8   August 26th.  So --

9        THE COURT:  How is August 30th?

10       MR. FREEMAN:  That's fine for me.

11       THE COURT:  How is August 30th for you folks?

12       MR. DEAN:  Just so -- I need to just have a few things

13  clarified, Your Honor.  First of all, the motion that we have

14  filed today, motion for summary judgment, has been granted.  But

15  you have ruled that you are allowing them to amend their

16  complaint.

17       THE COURT:  Yes.

18       MR. DEAN:  Okay.  So basically Mr. Freeman has asked

19  that we have a mandatory settlement conference, which I believe

20  is required by law.

21       THE COURT:  It's not.

22       MR. DEAN:  Oh.

23       THE COURT:  It's not required.

24       MR. DEAN:  Oh, okay.

25       THE COURT:  The word "mandatory" means that your

26  appearance is mandatory.

27       MR. DEAN:  Oh.

28       THE COURT:  I'm not required to set a settlement

TERRI L. DICKNEIDER, CSR

33

1  conference unless I believe that it would be of benefit to the
2  parties.

3       MR. DEAN: So my question is, let's say we go to that
4  and then, you know, we just get this offer from Kaiser, which is
5  basically nothing, and we say, "No, we want to go ahead, and
6  let's go to trial." And we understand you would be the judge,
7  which we are totally fine with. Is that what you are saying,
8  that we would still have the option, if we can't settle it, to
9  go to trial?

10      THE COURT: Well, you do except for the following:  I
11 don't think -- there wasn't a cross-complaint filed in this
12 case, is there? Okay. So --

13      MR. DEAN: Well, Your Honor, actually we were going to
14 file one.

15      THE COURT: But it's too late.

16      MR. DEAN: Yeah.

17      THE COURT: You didn't file one. If the case can't be
18 settled, then the next thing that will happen is they are going
19 to file an amended complaint. You are going to probably file
20 another motion, and then I'm going to make a determination
21 whether any other causes of action survive this settlement
22 agreement. Ultimately, if -- and I'm not prejudging it because
23 I haven't seen it yet -- but if I were to make a determination
24 that any new amended complaint does not survive the settlement
25 agreement, then the case is over and you win.

26      MR. DEAN: And is that, like, done with -- what do you
27 call it? -- without prejudice or --

28      THE COURT: With prejudice.

1   MR. DEAN: That means they can file again or no more?

2   THE COURT: No. No. It's over.

3   MR. DEAN: Okay.

4   THE COURT: I mean, they can appeal it. I mean -- and
5   so I can't tell you that it is absolutely over. As far as this
6   court would be concerned, it would be over. But then they would
7   have a right to appeal it to the court of appeal, arguing that I
8   made an erroneous ruling by granting this motion. Okay?

9   MR. DEAN: Yes.

10   THE COURT: So if you want to have a settlement
11   conference, I'll give you the time. Would you like to do this,
12   Mr. Dean?

13   MR. DEAN: Yes, Your Honor. And, like, in the
14   meantime, maybe -- maybe Kaiser may decide to, you know --

15   THE COURT: I'll let you discuss that with them.

16   So the matter will be set for a settlement conference
17   on August 30th, at --

18   THE CLERK: Ten.

19   THE COURT: -- at 10:00 a.m.

20   THE CLERK: Here.

21   THE COURT: You know, I apologize. Am I gone the 26th?
22   I am, right?

23   THE CLERK: That's for the CEO.

24   THE COURT: Okay. I think I leave the afternoon of the
25   30th, because I'm gone the following week. I'm thinking about
26   setting it the 29th.

27   THE CLERK: You can have them come in at 9:00 or 9:30
28   if you want.

TERRI L. DICKNEIDER, CSR

35

1      THE COURT:  Let's set it for nine o'clock on Friday the
2  30th.  And so I'm going to allocate -- I'm going to allocate
3  two, two and a half hours.  Will that be enough time, in your
4  view?

5      MS. DEAN:  Yes, sir.

6      MR. FREEMAN:  I think so, Your Honor.

7      THE COURT:  Okay.  And if it took longer than that, I
8  would want to set it on a different date.  I'm leaving -- I
9  think I leave that afternoon.  Okay?

10     MR. FREEMAN:  To be safe, can we pick a different date?

11     THE COURT:  Sure.  Let's pick September 13th at
12  10:00 a.m.  Okay?

13     Thanks, folks.

14     MR. DEAN:  Thank you, Your Honor.

15     MR. FREEMAN:  One other housekeeping matter.  Let me,
16  if I could, Your Honor, just check my calendar that date.

17     I have a case management conference I'm required to
18  attend that date, Your Honor.

19     THE COURT:  Where?

20     MR. FREEMAN:  L.A. Superior Court.

21     THE COURT:  Can you appear by CourtCall in L.A.?

22     MR. FREEMAN:  I guess I could, yeah.

23     THE COURT:  Okay.  Otherwise I have got to go to
24  September 20th, and now we are getting it so far --

25     MR. FREEMAN:  Yeah.  I appreciate that, Your Honor.  I
26  will attend by CourtCall.

27     THE COURT:  Okay.  The matter is set for the 13th of
28  September.  Thank you for coming in.  Have a good day.

TERRI L. DICKNEIDER, CSR                                    36

1    MR. FREEMAN:  One other point.

2    THE COURT:  Yeah.

3    MR. FREEMAN:  Since we are going to have this

4  conference, and our motion to amend is required to be filed

5  within 30 days, can we extend that until after our attempts to

6  resolve this?

7    THE COURT:  Your amended complaint will be due on or

8  before September 20th.  That's the week after the settlement

9  conference.

10    MR. FREEMAN:  That's fine, Your Honor.  Thank you.

11    THE COURT:  Okay?

12    Thank you, Mr. and Mrs. Dean.

13    MR. DEAN:  Thank you.

14    MS. DEAN:  Thank you.

15    THE COURT:  Thank you, Mr. Freeman.

16    Have a good day.

17    MR. FREEMAN:  Thank you.

18    THE COURT:  The court is in recess.

19                (Proceedings concluded.)

20

21

22

23

24

25

26

27

28

<u>REPORTER'S CERTIFICATE</u>

KAISER FOUNDATION HEALTH PLAN, INC.,
and KAISER FOUNDATION HOSPITALS,

                        Plaintiffs,

           vs.

STEPHAN CHRISTOPHER DEAN, LIZA
DEAN, DBA SUREFILE FILING SYSTEMS,
and DOES 1-10, Inclusive,

                      Defendants.

Case No. INC1207224

      I, Terri L. Dickneider, Certified Shorthand Reporter No. 5031, hereby certify:

      On July 31, 2013, in the county of Riverside, state of California, I took in stenotype a true and correct report of the testimony given and proceedings had in the above-entitled case, pages 1-37, and that the foregoing is a true and accurate transcription of my stenotype notes and is the whole thereof.

DATED:  Indio, California, August 4, 2013.

                                *Terri L. Dickneider*

                    TERRI L. DICKNEIDER, CSR No. 5031

# Exhibit 5

THOMAS M. FREEMAN, Cal. Bar No. 109309
SARAH EDWARDS, Cal. Bar No. 268679
MARION'S INN LLP
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone: (510) 451-6770
Facsimile: (510) 451-1711
Email: tmf@marionsinn.com
Email: se@marionsinn.com

Attorneys for Plaintiffs Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation Hospitals



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 20 2013

K. CHANK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE - PALM SPRINGS

KAISER FOUNDATION HEALTH PLAN, INC.
and KAISER FOUNDATION HOSPITALS,

    Plaintiffs,

    v.

STEPHAN CHRISTOPHER DEAN, LIZA
DEAN, DBA SUREFILE FILING SYSTEMS,
and DOES 1-10, inclusive,

    Defendants.

No. INC 1207224

Assigned to Hon. David M. Chapman

Dept. PS-2

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Complaint filed: October 12, 2012
Trial Date: TBA

    Defendants' Stephan Dean and Liza Dean dba SureFile filing Systems motion for
summary judgment came on for hearing on July 31, 2013. Defendants appeared *in propia
persona* and Thomas M. Freeman, Marion's Inn LLP, appeared on behalf of plaintiffs' and
responding parties Kaiser foundation Health Plan, Inc. and Kaiser Foundation Hospitals.

    After review and consideration of the papers submitted by the parties and argument of the
parties the Court finds and rules as follows:

    This complaint for (1) breach (1) contract, (2) claim and delivery, (3) conversion and (4)
unfair business practices is based upon allegations that plaintiffs, Kaiser Foundation Health Plan

THOMAS M. FREEMAN, Cal. Bar No. 109309
SARAH EDWARDS, Cal. Bar No. 268679
MARION'S INN LLP
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone: (510) 451-6770
Facsimile: (510) 451-1711
Email: tmf@marionsinn.com
Email: se@marionsinn.com

Attorneys for Plaintiffs Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation Hospitals

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 2 0 2013

K. CHANK

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE - PALM SPRINGS

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC. and KAISER FOUNDATION HOSPITALS, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN CHRISTOPHER DEAN, LIZA DEAN, DBA SUREFILE FILING SYSTEMS, and DOES 1-10, inclusive, <br><br> Defendants. | No. INC 1207224 <br><br> Assigned to Hon. David M. Chapman <br><br> Dept. PS-2 <br><br> ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Complaint filed: October 12, 2012 <br> Trial Date: TBA |

Defendants' Stephan Dean and Liza Dean dba SureFile Filing Systems motion for summary judgment came on for hearing on July 31, 2013. Defendants appeared *in propia persona* and Thomas M. Freeman, Marion's Inn LLP, appeared on behalf of plaintiffs' and responding parties Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals.

After review and consideration of the papers submitted by the parties and argument of the parties the Court finds and rules as follows:

This complaint for (1) breach of contract, (2) claim and delivery, (3) conversion and (4) unfair business practices is based upon allegations that: plaintiffs, Kaiser Foundation Health Plan

1  (KFHP) and Kaiser Foundation Hospital (Kaiser), and defendants entered into several associated

2  agreements (Business Associate Agreement ("BAA") Moreno Valley Agreement (MVA), West

3  Los Angeles Agreement (WLAA)) in which defendants agreed to scan, organize and store

4  medical records and protected patient information for Kaiser's patients and to allow KFHP

5  access to any records maintained for Kaiser; that in 2010 a dispute arose between Kaiser and

6  defendants regarding defendants' performance of the MVA and WLAA after defendants

7  allegedly interfered with plaintiffs' access to its records and failed to verify that they had

8  adequate insurance or the financial ability to pay to protect the records; that in on07/06/10

9  plaintiffs notified defendants that they were in breach, that as a result of this dispute, on

10  07.23.10, KFHP and defendants entered into a Sure File Transfer Agreement (SFTA) in which

11  the parties agreed to terminate their business relationship and to affect the transfer of possession

12  of the records and patient information to plaintiffs; that in 03.11 plaintiffs and defendants

13  negotiated a confidential settlement agreement to resolve all the outstanding issues between

14  them"; that since the execution of the settlement agreement defendants have notified Kaiser that

15  they are in possession of records of Kaiser which defendants claim contain protected patient

16  information; and that defendants breached the BAA, MVA, WLAA and SFTA by retaining

17  patient records, refusing to return or destroy or allow plaintiffs access to those records; refusing

18  to certify that the return or destruction of those records; risking the unauthorized disclosure of

19  those records and threatening to use those records.

20  GROUNDS FOR MOTION: The motion is based upon the grounds that there is no

21  triable issue of fact that this action is barred by the settlement agreement and release.

22  Plaintiffs allege that the parties "negotiated a confidential settlement agreement to resolve

23  all the outstanding issues between them." Comp. ¶ 16. That settlement agreement states "the

24  parties...now desire to settle and compromise any claims they might possess against the other,

25  settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein."

26  Comp ¶ 16.

27  There is no triable issue of fact that the parties settled all disputes arising out of the

28  subject agreements. The settlement agreement states "the parties...now desire to settle and

2

1    compromise any claims they might possess against the other, settle the dispute and otherwise

2    resolve any outstanding issues as more fully set forth herein." Comp. ¶ 16. Despite the broad

3    scope of the settlement, plaintiffs argue that the settlement agreement applies only to claims for

4    non-payment made by defendants. In support of this argument defendants' counsel testifies that

5    the BAA remained in effect after the settlement agreement was executed as is shown by

6    paragraph 13 of the settlement agreement, which states in pertinent part that the parties "will

7    continue to take appropriate steps to preserve all confidential information in the medical records

8    handled by Dean during the course of providing Services as required by...the parties

9    Business Associates Agreement. " See Freeman Decl. ¶ 7.

10        Alternatively, plaintiffs argue that they were mistaken in that they never contemplated

11   that defendants had retained any records and that because defendants did retain records, the

12   settlement agreement was procured by fraud. It is noted that plaintiffs have not brought an

13   action fraud or to enforce the settlement agreement.

14        On its face the settlement agreement is not confined to claims of non-payment made by

15   plaintiffs. Any argument that the BAA remained in effect is contradicted by the pleadings.

16        As a result of the foregoing dispute, KFH and defendants negotiated a transfer agreement

17   ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to KFH of

18   all of the medical records and confidential Protected Information of KAISER patients and

19   members. The Sure File Transfer Agreement was signed by Stephan Dean on or about July 23,

20   2010, and terminated the ongoing business relationship between defendants and KAISER.

21   Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take

22   appropriate steps to preserve all confidential information maintained in those records as required

23   by the Confidentiality of Medical Records Act, Cal. Civil Code section 56 et seq., the federal

24   Health Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

25        Following the execution of the Sure File Transfer Agreement, in March 2011 the

26   defendants and plaintiffs negotiated a confidential settlement agreement to resolve all the

27   outstanding issues between them... ¶¶ 15,16.

28

3

1  Plaintiffs now argue (1) that the settlement agreement applies only to claims for
2  nonpayment made by defendants, (2) that plaintiffs were mistaken in that never contemplated
3  that defendants had retained any records and (3) that because defendants did retain records, the
4  settlement agreement was procured by fraud.

5      These arguments fail because the settlement agreement makes clear that it is not
6  confined to claims of non-payment made by plaintiffs.

7      Either party may rely on admissions of fact contained in the opposing party's pleadings as
8  evidence. "An admission in the pleadings is not treated procedurally as evidence; i.e., the
9  pleading need not (and should not) be offered in evidence, but may be commented on in
10  argument and relied on as part of the case. And it is fundamentally different from evidence. It is
11  a waiver of proof of a fact by conceding its truth, and it has the effect of removing the matter
12  from the issues. Under the doctrine of conclusiveness of pleadings: a pleader is bound by well
13  pleaded material allegations or by failure to deny well pleaded material allegations." 4 Wilkin,
14  Cal. Procedure (5th ed. 2008) Plead, § 452 Valerio :  Andrew Youngquist Const; (2002) 103.
15  Cal.App.4th 1264, 1271.

16     The complaint alleges in great detail the history of their contracts with defendants, the
17  resulting dispute re their lack of access to and defendants wrongful retention of medical records
18  and the resolution of that dispute through a settlement agreement. Those allegations are
19  supported by the various agreements entered into between the parties, culminating in the
20  termination of their business, and the intended final transfer of document and protected patient
21  information through the SFTA and resolution of all disputes through the settlement agreement.

22     As to the claims that the settlement agreement may have been entered into through
23  mistake or fraud, neither is alleged. The pleadings serve as the "outer measure of materiality" in
24  a summary judgment motion, and the motion may not be granted or denied on issues not raised
25  by the pleadings. Laabs v. City of Victorville (2008) 163 Cal.App.4th 1242, 1258; Nieto v. Blue
26  Shield of Calif. Life & Health Ins. Co. (2010) 181 Cal.App.4th 60, 73–"the pleadings determine
27  the scope of relevant issues on a summary judgment motion." If plaintiffs wanted to avoid the
28  application of the settlement agreement, they need to plead that theory.

4

ACCORDINGLY, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED.

IT IS FURTHER ORDERED that Defendants' oral request at the hearing to lift the Preliminary Injunction issued by this Court on January 10, 2013 is DENIED. The Preliminary Injunction shall remain in effect pending further order of this Court.

IT IS FURTHER ORDERED that Plaintiffs' oral request at the hearing for leave to file an amended complaint is GRANTED. Plaintiffs shall have until September 20, 2013 to file an amended pleading.

Dated: August 2〇 2013

_____
Hon. David M. Chapman
Judge of the Superior Court

Approved as to form:

_____
Stephan C. Dean

_____
Liza Dean

5

KFHP000-93