# EXHIBIT A



# DECISION

Kaiser Foundation Health Plan, Inc. v. Stephan Dean / KP Health Connect
Claim Number: FA2110001969275

**PARTIES**

Complainant is **Kaiser Foundation Health Plan, Inc.** ("Complainant" or "Kaiser"), represented by **Catherine E. Maxon** of **Davis Wright Tremaine LLP**, Washington, USA. Respondent is **Stephan Dean / KP Health Connect** ("Respondent"), represented by **Jampol Law APC**, California, USA.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<kphealthconnectusa.com>** (the "Domain Name"), registered with **NameCheap, Inc.**.

**PANEL**

The undersigned certify that they have acted independently and impartially and to the best of their knowledge have no known conflict in serving as Panelist in this proceeding.

Michael A. Albert, James H. Grossman, and Gerald M. Levine (Chair) as Panelists.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the FORUM electronically on October 15, 2021; the FORUM received payment on October 15, 2021.

On October 15, 2021, NameCheap, Inc. confirmed by e-mail to the FORUM that the **<kphealthconnectusa.com>** Domain Name is registered with NameCheap, Inc. and that Respondent is the current registrant of the name. NameCheap, Inc. has verified that Respondent is bound by the NameCheap, Inc. registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On October 20, 2021, the FORUM served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of November 9, 2021 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@kphealth connectusa.com. Also on October 20, 2021, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to

1

Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

A timely Response was received and determined to be complete on November 9, 2021.

On November 29, 2021, pursuant to Complainant's request to have the dispute decided by a three-member Panel, the FORUM appointed Michael A. Albert, James H. Grossman, and Gerald M. Levine (Chair) as Panelists.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the FORUM has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2. Therefore, the Panel may issue its decision based on the documents submitted and in accordance with the ICANN Policy, ICANN Rules, the FORUM'S Supplemental Rules and any rules and principles of law that the Panel deems applicable.

**RELIEF SOUGHT**

Complainant requests that the Domain Name be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**

A. Complainant

Kaiser is a non-profit public benefit corporation. It provides health care services to its members through Kaiser Foundation Hospitals ("KFH") (a non-profit public benefit corporation) and eight independent medical groups (the "Permanente Medical Groups" or "PMGs"). Collectively, these separate legal entities, Kaiser, KFH, and PMGs, operate under the trade name and trademark "Kaiser Permanente." The system known as the Kaiser Permanente Medical Care Program comprises one of the largest health care providers in the United States, serving over 12 million pre-paid health care plan members in Hawaii, Washington, Oregon, California, Colorado, Maryland, Virginia, Georgia, and the District of Columbia.

Kaiser alleges that its history with Respondent goes back to 2009. In that year and again in 2010, Kaiser retained Respondent (doing business as Sure File) to store, decommission, and process paper copies of medical records associated with Kaiser patients. The parties' relationship quickly soured, and eventually resulted in a lawsuit filed by Kaiser in 2012. As the complaint filed in that lawsuit reflects, the parties' dispute solely related to Respondent's processing and retention of Kaiser's medical records, and payments associated with Respondent's services provided to Kaiser, and at no time did the dispute concern rights to use the Kaiser trademarks ("Marks") or logo.

2

Respondent registered **<kphealthconnectusa.com>** on August 21, 2021. It displays the Kaiser Mark and logo on the landing page of the associated website and is intended to sow confusion. Complainant asserts that the registration of the disputed Domain Name is part of Respondent's long running campaign to try to pressure Kaiser into paying Respondent more money. Kaiser states that Respondent's attorney, Respondent's representative in this proceeding, recently made this obvious in correspondence in which he clearly implied that Kaiser would need to spend more than "six figure[s]" to get Respondent to relinquish the Domain Name and to take down the associated website. He said: "if you genuinely want to see if 'this matter can be resolved informally' as you state in the last paragraph of your letter, now is the time. However, Kaiser must be realistic. The six-figure ship left port several years ago" (letter dated October 4, 2021 from Alan R. Jampol, Esq. to Catherine E. Maxson, Esq.)

Kaiser continues, "Bizarrely, in this letter Respondent's attorney claims that Kaiser granted his client permission "in writing" to use the "Kaiser name and logo," a blatantly incorrect statement. The Panel notes that Mr. Jampol then continues with the following statement: "I do not want to turn this into a saber-rattling contest, but I am sure you are aware of what can happen if a frivolous Lanham Act claim is made in a federal court."

B. Respondent
Respondent states that Kaiser's claim is outside the scope of the UDRP for the following reasons: 1) There is no issue as to who owns the Domain Name – Dean owns it, registered it, and pays for it. Kaiser has no interest in the Domain Name; 2) Dean is not competing with Kaiser or trying to steal Kaiser's members – in other words, Dean is not "cybersquatting". He has a legitimate interest in using the domain name and legal right to do so; 3) The domain name is not being used in bad faith or even wrongfully. Dean is simply doing what he is legally entitled to do.

Respondent continues: "The Domain Name is but one aspect of the permitted and legitimate use by Dean of Kaiser's trademark and service mark, which Dean acquired as set forth in his section 2 argument. He ends this recitation by advising the Panel that its jurisdiction "is limited to providing a remedy in cases of 'the abusive registration of domain names,' also known as 'cybersquatting' . . . " and assures the Panel that "Dean is assuredly not a cybersquatter, and this matter is not properly resolved under the UDRP."

Respondent draws the Panel's attention to a Settlement Agreement between Kaiser and Respondent effective March 24, 2011 and refers to a lawsuit filed in 2012. It also attaches a draft of Paragraph 13 deleting several lines of text that according to Respondent supports its contention that Complainant granted it the right to use its trademark and logo: "To put it tersely, Kaiser has already agreed in writing that Mr. Dean may use the Kaiser name and that having made that

3

concession (really more by omission than commission) . . . Kaiser has no colorable right to pursue any claim against Mr. Dean."

Respondent concludes by stating that "[t]his is not a case governed by ICANN or the UDRP. Respondent ('Dean') does not compete with Complainant ('Kaiser') or challenge the validity of Kaiser's trademark registrations as reflected in the Amended Complaint."

C. Additional Submissions
Complainant submitted an additional submission to the FORUM electronically on November 16, 2021. As it simply reiterates its argument and provides no additional evidence for the Panel's consideration it is not accepted into the record.

**FINDINGS**

Respondent states that "this is not a case governed by ICANN or the UDRP. However, the Panel finds that this dispute is squarely within the scope of the UDRP. As such the Panel has jurisdiction to resolve the dispute.

On the totality of evidence presented by the parties, the Panel finds as follows:
1. The disputed Domain Name is confusingly similar to Complainant's mark;

2. Respondent lacks rights or legitimate interests in **<kphealthconnectusa.com>**; and

3. Respondent registered and is using the disputed Domain Name in bad faith.

**DISCUSSION**

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(i) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(ii) Respondent has no rights or legitimate interests in respect of the domain name; and
(iii) Respondent registered and is using the disputed domain name in bad faith; in other words it is cybersquatting Complainant's marks and has made a false certification that "the information contained in the Response is to the best of Respondent's knowledge complete and accurate, [and] that the Response is not being presented for any improper purpose, such as to harass [the Complainant.]"

4

**Identical and/or Confusingly Similar**
Respondent does not dispute that the Domain Name is identical or confusingly similar to Complainant's Marks and service marks in which Complainant has definitive rights. He also does not dispute that the domain name postdates Complainants' Marks and services marks by many decades. Indeed, the fact that the disputed Domain Name is identical or confusingly similar to Complainant's marks was precisely Respondent's reason for registering it.

Accordingly, Complainant satisfies Paragraph 4(a)(i) of the UDRP.

**Rights or Legitimate Interests**
Complainants satisfy their burden of proof under Para. 4(a)(ii) by presenting a *prima facie* case that Respondent lacks rights or legitimate interests in the Domain Name, and if that burden is carried out, Respondents have the right to offer rebutting evidence that they have either rights or legitimate interests in the disputed domain name. *See AOL LLC v. Gerberg,* FA 780200 (FORUM September 25, 2006); *JUUL Labs, Inc. v. Dryx Emerson / KMF Events LTD*, FA190600 1849706 (FORUM July 17, 2019) ("According to the majority of Panel decisions this Panel also takes the position that while Complainant has the burden of proof on this issue, once the Complainant has made a prima facie showing, the burden of production shifts to the Respondent to show by providing concrete evidence that it has rights to or legitimate interests in the domain name at issue.").
Here, Complainant contends it has not authorized Respondent to use the trademark, that Respondent is not known by the name it has chosen for the disputed Domain Name, and that Respondent is not using the Domain Name in a noncommercial or fair use way. See *Time Inc. v. Max Martel*, D2004-0122 (WIPO May 4, 2004) (<sportsbook illustrated.com>. "[T]here is no circumstance under which the Respondent, unless authorized by the Complainant, could legitimately use the Domain Name under dispute incorporating the [Complainant's] mark without creating a false impression of an association with the Complainant.").
The Panel has reviewed Respondent's website and finds that it has all the trappings of being an official website of Complainant. It comes complete with the Kaiser Permanente logo and service mark and is offering to provide "potential access to thousands or current and past Kaiser Permanente members and patients."
Complainant's contentions are credible in light of Respondent's use of the Domain Name to resolve to a website that pretends to be officially sponsored by Complainant. Accordingly, the Panel finds that Complainant has submitted sufficient evidence to demonstrate a *prima facie* case that Respondent lacks rights or legitimate interests in the challenged domain name.
The UDRP provides a set of three nonexclusive circumstances any one of which if demonstrated would support rights or legitimate interests in the disputed Domain Name. Here, Respondent's rebuttal evidence falls well short of rebutting Complainant's proof. Therefore, it is unnecessary to examine his contentions at any great length.
Respondent contends that "Dean is simply doing what he is legally entitled to do." He asserts that "Dean owns [the disputed Domain Name], registered it, and pays

for it." These contentions are not proof that Respondent has either rights or legitimate interests in the disputed domain name. While a party may have a preemptive right to an available domain name that by happenstance corresponds to a complainant's mark it does not have a right to register a domain name that without justification targets a mark owner's rights in a distinctive mark.

Thus, while Respondent is fulsome in contending that he has a contractual and legal right to register the disputed Domain Name, he does not explain how this could be consistent with his use of it to offer a service that would be inconsistent with Complainant's mission and likely to raise actionable claims of violating members' and patients' privacy rights.

The right Respondent alleges is purportedly based on a Settlement Agreement. The Panel has carefully examined this document and finds that it does not contain any provision that grants Respondent a right to use Complainant's trademark or logo. Respondent also claims that an earlier draft provision in the Settlement Agreement establishes its right to use the Complainant's mark and logo. It shows that Complainant deleted the words: ""Except as set forth above, without the prior written consent of KP, Surefile [Dean] shall not use in advertising or publicity the trade names, service, marks, or logo of KP, the Kaiser Permanente Medical Care Program or any affiliates." This deletion according to Respondent is equivalent to granting rights to the marks or logo of KP. This is incorrect. The Settlement Agreement relates to the settlement of specific claims. Thus, the deletion of an express denial that a party may use an owner's mark and logo that is not inclusive to those claims is not magically transformed into an affirmative authorization that it has any right to do so.

For these reasons, Respondent lacks rights or legitimate interests in the disputed domain name. Accordingly, Complainant satisfies on Paragraph 4(a)(ii) of the Policy.

**Registration and Use in Bad Faith**
It is, of course, not sufficient that a complainant succeeds in demonstrating that respondent lacks rights or legitimate interests, but Para. 4(a)(iii) requires that it must also prove that respondent both registered the disputed domain name in bad faith and is using it in bad faith.

There are four nonexclusive circumstances any of which if proved establishes abusive registration. Para. 4(b) of the Policy states that "[f]or the purposes of Paragraph 4(a)(iii), the following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith."

The two relevant circumstance in this case are subparagraphs 4(b)(i) and 4(b)(iv). They read as follows:
(i) circumstances indicating that the respondent has registered or acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable

6

> consideration in excess of the respondent's documented out-of-pocket costs directly related to the domain name; or
>
> . . .
>
> (iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location."

Respondent makes much of two arguments already alluded to above, but avoids addressing subparagraphs 4(b)(i) and 4(b)(iv). Instead the arguments veer to issues long settled and irrelevant to the present dispute. Concerning subparagraph 4(b)(i), a respondent is found to have registered the disputed domain name "primarily for the purpose of" extorting a benefit from the trademark owner. Here, Respondent expressly puts Complainant on notice that in exchange for the disputed domain name it is looking for a six-figure settlement.

As Complainant has made this letter a part of the record, it would have been expected if it were untrue that Respondent would explain its intent and deny the contention, but it has taken a different tack which indirectly acknowledges the truth of its motive. See *Grace From Fire, LLC v. ConnectDomain.com Worldwide domains, Inc*. D2010-0143 (WIPO March 9, 2010) ("Given the prior relations between the parties, the Panel finds that the Respondent did not act in good faith when it took the disputed domain name from the Complainant apparently in order to exert pressure with respect to unresolved commercial issues"); *Coppertown Drive-Thru Systems, LLC v. R Snowden*, FA0605000715089 (FORUM July 17, 2006) ("Respondent's rather frank admission that he intends to use the disputed domain name to leverage compensation for copyright materials allegedly taken from his website suggests that the motive was to use the domain name as a bargaining means for another dispute. This is improper and in the Panel's view is a clear illustration of bad faith.").

As to subparagraph 4(b)(iv), Respondent does not disguise its intentions to attract Internet users for commercial gain, although here the commercial gain is using Internet users as pawns to put pressure on Complainant to settle alleged continuing differences. See *National Securities Corporation v. Registration Private, Domains By Proxy, LLC / Ridgeway Support, Richard (Rick) Garber*, D2018-02190 (WIPO March 23, 2018)("[I]t appears likely that the Respondent registered the Domain Name and immediately used it as leverage in the Garbers' dispute with the Complainant, to add pressure for a settlement because of the potentially disruptive value of the Domain Name."); *Smooch Labs Inc. v. Steven Nerayoff*, FA2104001940627 (FORUM May 10, 2021)
Respondent's primary intent in registering and continuing to use the Domain Name is less important than the effect of his conduct. Respondent knew or should have known the disruptive impact his conduct would have upon Complainant's

7

business. Respondent went forward with his plans in spite of that and this demonstrates bad faith.").

Respondent's final argument, which the Panel finds equally without merit is that the General Release associated with the Settlement Agreement "released all claims (present and future) of any kind . . . in any way related to or arising out of [an earlier agreement] or the parties' relationship." Apparently, this issue concerning the extensiveness in time of the General Release was argued to the Court in 2012, and the Court found that "the language within the Settlement Agreement establishes as a matter of law there was a release of all of the claims *that are alleged in the plaintiff's complaint*."

As to the present claim for cybersquatting and the corresponding defense of legal and contractual right, Complainant could not possibly have made a claim of cybersquatting eleven years before it actually occurred. Thus, the Settlement Agreement and associated General Release executed in respect to an earlier and unrelated claim has no bearing on the issues before this Panel, and for this reason it is likewise rejected.

We have in this dispute a Respondent who admits in his representative's letter to an ulterior motive for registering the disputed domain name, namely, to extract a settlement in a six-figure amount. Thus, for all the reasons set forth above, the record amply demonstrates that Respondent registered and is using the disputed Domain Name in bad faith.

Accordingly, Complainant succeeds on its Paragraph 4(a)(iii) burden.

**DECISION**

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is Ordered that the **<kphealthconnectusa.com>** domain name be **TRANSFERRED** from Respondent to Complainant.

Michael A. Albert, James H. Grossman, and Gerald M. Levine (Chair), Panelists
Dated: December 7, 2021

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page