# EXHIBIT B

# EXHIBIT A

# EXHIBIT A

```
1  Alan R. Jampol (053815)
   JAMPOL LAW APC
2  1801 Century Park East, 25th Floor
   Los Angeles, CA 90067
3  (310) 556 – 9678 Office
   (310) 614-4149 – Cell
4  Email: alan@jampol-law.com

5  Attorneys for Plaintiffs Stephan Dean and
   Liza Dean Individually and dba SureFile Filing
6  Systems
```

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE (PALM SPRINGS BRANCH)**

| | |
|---|---|
| STEPHAN DEAN AND LIZA DEAN INDIVIDUALLY AND DBA SUREFILE FILING SYSTEMS,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; DOES 1-50 INCLUSIVE<br><br>Defendants. | Case No:<br><br>Assigned to:<br><br>**COMPLAINT**<br><br>1. **Breach of Contract**<br>2. **Declaratory Relief**<br>3. **Permanent Injunction**<br>4. **Interference with Prospective Business Advantage** |

Plaintiffs Stephan Dean and Liza Dean, individually and doing business as SureFile Filing Systems, allege:

**Parties and Relevant Persons**

1. Plaintiffs Stephan Dean and Liza Dean reside in Cathedral City, California and do business as SureFile Filing Systems. They are referred to herein collectively as "DEAN." Even though DEAN is referred to herein in the singular for convenience, it refers to both Stephan and Liza Dean unless specified otherwise.

2. Defendant Kaiser Foundation Health Plan, Inc. is a corporation that does business throughout California, including Riverside County.

3. Defendant Kaiser Foundation Hospitals is an unincorporated entity that does business throughout California, including Riverside County and is an affiliate of Kaiser Foundation Health Plan, Inc. Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals are referred to herein collectively as "KAISER."

4. Defendants named herein as DOES 1-50 inclusive are presently unknown to Dean who therefore names said defendants by such fictitious names. When the true names and capacities of said Defendants DOES 1-50 are ascertained, this Complaint will be amended accordingly.

5. DEAN is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendants and Kaiser Foundation Hospitals were the agents, employees, co-venturers, affiliates, or partners of each other Defendant and of Kaiser Foundation Health Plan, Inc. and in doing or planning the actions herein alleged, each Defendant was acting with the course and scope of that agency, employment, partnership or joint venture with the knowledge, consent, and approval of each other Defendant.

**The Contracts Between DEAN and KAISER**

6. Between 2008 and 2010, DEAN and KAISER entered into two written contracts and numerous verbal agreements by which KAISER transmitted to DEAN certain information about some of KAISER's patients or members for storing and scanning by DEAN on DEAN's computers until requested by KAISER. The written contracts are commonly referred to as the "West Los Angeles Agreement" and the "Moreno Valley Agreement" (collectively, along with the verbal agreements, "the Storage/Scanning Contracts").

7. Pursuant to the Storage/Scanning Contracts, KAISER transmitted to DEAN information about certain of KAISER's patient. That information included certain "personal identification information" ("PII") and certain personal health information as defined by the federal HIPAA statute and medical information as defined in the California Medical Information Act, Civil Code §56 ("CMIA"). DEAN retained that information on his computer pursuant to the Storage/Scanning Contracts and continues to retain much

1  of said information. The information referred to in the remainder of this complaint is only
2  the PII and not any information subject to HIPAA or the CMIA.
3  8.    In 2010, KAISER terminated the Storage/Scanning Contracts. KAISER demanded
4  that DEAN retransfer to KAISER all of the paper documents regarding KAISER's patients
5  that KAISER had transferred to DEAN. DEAN did retransfer to KAISER the paper
6  documents.

### The Settlement Agreement

8  9.    In 2010 and 2011 KAISER and DEAN had disagreements over their respect rights
9  and duties regarding the Storage/Scanning Contracts, which had been terminated by
10 KAISER. In order to resolve those conflicts, KAISER and DEAN entered into a settlement
11 agreement effective as of March 24, 2011 ("the Settlement Agreement") a true copy of
12 which is attached hereto as Exhibit 1 and incorporated herein by this reference.
13 10.   In the Settlement Agreement, KAISER requested that DEAN continue to preserve
14 the KAISER patient information on his computer. DEAN has continued to do so.
15 11.   One of the demands of KAISER in negotiating the terms of the Settlement
16 Agreement was that DEAN be prohibited from using the KAISER name or logo in his
17 future business. DEAN demanded more money from KAISER to agree to such a
18 prohibition and gave KAISER the option of paying a higher amount in Settlement in
19 which the agreement would prohibit DEAN from using KAISER's name and logo in his
20 future business and a lower amount for an agreement without that prohibition.
21 12.   After negotiating with DEAN and his counsel regarding whether DEAN would be
22 prohibited from using the KAISER name and logo in DEAN's future businesses and the
23 price of such a prohibition, KAISER elected not to include such a provision in the
24 Settlement Agreement and as a result, to pay a lower amount to DEAN than KAISER
25 would have had to pay in order to include that prohibition in the Settlement Agreement.
26 This decision was made after full consideration by KAISER executives and its counsel;
27 KAISER knew and understood that as a result of its deliberate choice, it would
28 thenceforth be legally unable to prevent DEAN from using the KAISER name or logo in

his future business. This constituted a de facto grant of permission to DEAN to use such name and logo for which KAISER was paid by having to pay DEAN a lower amount as part of the settlement.

### The Kaiser Lawsuit Results in Judgment for DEAN

13. In 2012, KAISER and DEAN had disagreements regarding DEAN's rights under the Settlement Agreement and other matters. On October 12, 2012, KAISER filed a civil action in the Riverside Superior Court entitled Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals, plaintiffs v. Stephan Christopher Dean, Liza Dean, dba SureFile Filing Systems and Does 1-10 inclusive, RSC No. INC 1207224 ("the Kaiser Lawsuit"). DEAN answered denying all of the charging allegations.

14. On January 10, 2013, KAISER requested and obtained a preliminary injunction preventing DEAN from retaining any KAISER patient-related document pending a trial. However, judge refused KAISER's request that DEAN be required to certify that he had deleted the KAISER information or that KAISER have access to DEAN's computer.

15. On July 13, 2013, a hearing was held in the Kaiser Lawsuit on DEAN's motion for summary judgment. The motion asserted that in the Settlement Agreement, KAISER had released any claim against DEAN that DEAN was not permitted to use the KAISER name and logo and thus could not pursue its claim to prevent DEAN from such use. In the hearing, KAISER, through its counsel, argued that the Settlement Agreement applied only to the money debts that KAISER had to DEAN under the Storage/Scanning Contracts. The court rejected this argument and held that the Settlement Agreement applied to any claim of any kind against DEAN, including a claim that DEAN did not have the right to use KAISER's name and logo.

16. On August 20, 2013, the court entered its order granting the summary judgment motion with a detailed analysis but allowed KAISER to file an amended complaint. KAISER declined to do so, and on September 13, 2013, the Kaiser Lawsuit was dismissed with prejudice, leaving the summary judgment intact.

### The ICANN Arbitration over DEAN's Domain Name

17. On September 7, 2020, DEAN properly registered with the Attorney General of California as a data broker pursuant to California Business & Professions Code §1798.99.80. In connection with his business as a data broker, DEAN planned and still does plan to sell the data remaining on his computer relating to KAISER patients that is not HIPAA-protected information or medical information under the CMIA. The Office of Civil Rights, which oversees enforcement of HIPAA, confirmed to DEAN that his sale of patient information does not violate HIPAA.

18. In order to conduct his business, DEAN registered a domain name "kphealthconnectUSA.com" and advised KAISER of the domain name and his intent to sell the specified data. That information is permissibly salable as long as the patient has a way to opt out of such sale. Such a way was provided by DEAN by referring to a KAISER number. Despite DEAN's request, KAISER refused to provide to DEAN a better number which patients can call to opt out of any sale of their information.

19. On October 15, 2021, KAISER submitted to ICANN (a nationwide clearing and enforcement organization for internet domain names) a complaint against DEAN alleging that DEAN had wrongfully used KAISER's trademarked name and logo in his website. The complaint was later amended, and the matter proceeded to a hearing based upon the amended complaint.

20. DEAN responded with a history of the Settlement Agreement, the Kaiser Lawsuit, the summary judgment, and related documents asserting that KAISER had released the claim it was making in the ICANN proceeding, that the issue of interpretation and enforcement of the Settlement Agreement was not within the jurisdiction of ICANN or the arbitrators, and that the matter was already decided by the judgment in the Kaiser Lawsuit.

21. The claim by KAISER ("the ICANN Dispute") was resolved by three arbitrators under the supervision of the Forum, an arbitral body that among other things hears

1. domain name disputes, pursuant to the Rules for Uniform Domain Name Dispute Resolution Policy and the Forum's Supplemental Rules.

22. On December 7, 2021, the arbitrators issued their decision. The arbitrators improperly found that they did have the power to decide in effect the contract claims and could, and did, ignore the finding and judgment of the court in the Kaiser Lawsuit. Contrary to the Settlement Agreement and the judgment in the Kaiser Lawsuit, the arbitrators found that the Settlement Agreement did not apply to the claims KAISER was making, which was flatly contrary to the finding of the court in the Kaiser Lawsuit, The arbitrators found that DEAN had wrongfully and in bad faith created a domain that infringed KAISER's rights and ordered that the domain name kphealthconnectusa.com be transferred to KAISER.

23. The arbitrators in making their decision exceeded their jurisdiction in purporting to decide an issue not entrusted to them by the UDRP Rules, matters beyond anything dealing with a domain name, and matters that were unsupported by the evidence submitted to them and contrary to law and was already decided in the Kaiser Lawsuit contrary to the claims of KAISER.

24. There was no hearing in the arbitration limited briefing, and there is no right of appeal from the award. As a result, this action is only remedy available to DEAN to enforce his rights under the Settlement Agreement and to seek vacation of the arbitration award by the arbitrators in the ICANN Dispute.

25. DEAN has at all times performed every action he is obligated by the Settlement Agreement to perform and complied with its terms.

### First Cause of Action
### [Breach of Contract]

26. DEAN incorporates by reference the allegations of paragraphs 1-25 above.

27. The actions of KAISER in bringing and pursuing the ICANN Dispute, in taking the domain name created and used by DEAN, and in continuing to assert that DEAN has no right to use the KAISER name or logo are all breaches of the Settlement Agreement in which KAISER released all such claims.

- 6 -
COMPLAINT.

28. Such breaches of the Settlement Agreement are substantial causes of damage to DEAN in that he is unable to pursue his business as a data broker, which he is legally and contractually entitled to do, and which KAISER cannot legally prevent.

29. The amount of damage caused to DEAN by the breaches of KAISER are uncertain but exceed $100,000. DEAN will establish the true amount at trial.

**Second Cause of Action**
**[Declaratory Relief]**

30. DEAN incorporates by reference herein the allegations of paragraphs 1-25 and 27 - 29 above.

31. An actual controversy exists between DEAN and KAISER regarding (i) DEAN's rights to use the KAISER name and logo in his website and other materials as a data broker, DEAN's right to sell or transfer data relating to KAISER patients that is not subject to HIPAA or medical information protected by CMIA, and (iii) the power of the arbitrators in the ICANN Dispute arbitration to resolve the issues submitted by KAISER and the correctness of the ruling of the arbitrators in the ICANN Dispute.

32. DEAN contends that:

   a. He has the right to use the KAISER name and logo in his website and other materials;

   b. He has the right to sell or transfer data relating to KAISER patients that does not violate HIPAA or the CMIA so long as the KAISER patients have a method of opting out of such a transfer;

   c. KAISER has no right to continue to attack his use of a domain name that includes the word "Kaiser" or the initials "KP" or KAISER's logo;

   d. The arbitrators in the ICANN Dispute arbitration had no power to decide the issues they did decide or to hear KAISER's complaint and acted in excess of their jurisdiction in doing so;

   e. The ruling of the arbitrators in the ICANN Dispute arbitration, putting aside the absence of power to make any ruling, was incorrect on the law and the facts and contrary to the binding court decision in the Kaiser Lawsuit.

- 7 -
COMPLAINT.

33. KAISER contends that
    a. DEAN does not have the right to use its name, initials, or logo in his domain name or otherwise;
    b. It has the right to file ICANN complaints attacking any domain name that DEAN obtains that includes the KAISER name, KP, or the KAISER logo and take other legal or business steps to interfere with DEAN's business and use or transfer of KAISER patient information;
    c. The arbitrators in the ICANN Dispute had the power to decide the issues they did decide and that the ruling was correct.

34. A declaration of this Court as to (i) DEAN's rights to use the KAISER name, the KP initials, or the KAISER logo in his business, (ii) DEAN's right to sell or transfer the information on his computer regarding KAISER patients that does not violate HIPAA or the CMIA and if DEAN provides a method for patients opting out of such use (and whether KAISER is obligated to provide a contact method for such purpose), and (iii) the power of the arbitrators in the INCAA Dispute arbitration to rule on DEAN's right to use the domain name kphealthconnectUSA.com in his business and, if so, the validity and correctness of the ruling, is necessary so that the parties will know their rights and obligations, so that DEAN can conduct his business as a data broker or otherwise without interference by KAISER, and so that future lawsuits, disputes, and claims will be avoided by a final resolution of the parties' rights and obligations.

35. DEAN has no speedy and adequate remedy at law to secure his rights, given the ICANN arbitration and threated further attacks or proceedings by KAISER to prevent DEAN from exercising his rights and conducting his business other than a declaration by this Court of his rights.

### Third Cause of Action
### [Permanent Injunction]

36. DEAN incorporates by reference herein the allegations of paragraphs 1-25, 27-29, and 31-35 above.

- 8 -
COMPLAINT.

37. KAISER has continued for ten years or more to contend that DEAN does not have the rights conferred upon him by the Settlement Agreement and the judgment in the Kaiser Lawsuit, to harass DEAN, interfere with DEAN's pursuit of his business, to persuade him to give in to KAISER or forego his rights under those documents, and to bring meritless proceedings such as the ICANN Dispute to try to avoid the effect of the Settlement Agreement and judgment in the Kaiser Lawsuit and to prevent DEAN from conducting his legitimate business as a data broker.

38. KAISER threatens to bring additional proceedings should DEAN exercise his rights to use the KAISER name and logo and to continue to make DEAN incur fees and costs defending claims brought and to be brought by KAISER contrary to the Settlement Agreement and the holding in the Kaiser Lawsuit.

39. DEAN does not have a plain, speedy, and adequate remedy at law to enable him to prevent the constant harassment and interference of KAISER in his business and the bringing of more meritless proceedings to challenge DEAN's domain name, his right to sell the information on his computer regarding KAISER patients that does not violate HIPAA or the CMIA, or otherwise prevent him from conducting his business.

40. DEAN seeks and is entitled to a permanent injunction restraining KAISER from further seeking to prevent him from using the Kaiser name and logo in his business or interfering in DEAN's conduct of his business as a data broker of Kaiser patient data by bringing proceeding challenging his domain name or otherwise.

**Fourth Cause of Action**
**[Interference with Prospective Business Advantage]**

41. DEAN incorporates by reference herein the allegations of paragraphs 1-25, 27-29, and 31-35 above.

42. At all relevant times in 2020 and 2021, KAISER knew that DEAN had the right to use the KAISER name and logo in his business and that he intended to sell data regarding KAISER patients. KAISER also instituted and pursued the ICANN Dispute arbitration although it knew that it had released the very claim it was making in that proceeding.

- 9 -
COMPLAINT.

43. DEAN had potential clients that intended to purchase data from the website with the domain name that the arbitrators held was the property of KAISER although wrongfully and beyond their power, and such persons would have entered into contracts with DEAN to purchase KAISER information that DEAN is permitted to sell.

44. These and other similar acts by KAISER were intended to deprive DEAN of the revenue he would otherwise receive from the sale of the information regarding KAISER patients that he had a right to sell. DEAN is informed and believes, and thereon alleges, that he would have sold KAISER patient data to others at a substantial profit but for KAISER's intentional interference with his business and his website.

45. KAISER's interference with DEAN, the sale of his information, and his business was a breach of the Settlement Agreement, contrary to the judgment in the Kaiser Lawsuit, and unjustified and tortious.

46. As a result of the interference by KAISER as set forth herein, DEAN has been damaged in an amount of which he is uncertain but will be proved at trial.

47. The actions of KAISER as alleged herein were done by KAISER intentionally with the object of destroying DEAN's business as a data broker and otherwise, with a conscious disregard of DEAN's rights that KAISER knew he had, were despicable, malicious, and oppressive in that they were done solely to injure DEAN and make him spend money to defend the rights KAISER knew he had and acts that no reasonable person would do or accept. Therefore, DEAN is entitled to an award of punitive damages in an amount to be established at trial.

WHEREFORE, DEAN prays for judgment against all defendants, jointly and severally, as follows:

1. For damages in an amount to be proved at trial but not less than $100,000.00.

2. For a declaration that (i) he is entitled to sell or transfer the data he has concerning KAISER patients consistent with other statutory and regulatory requirements, (ii) KAISER has no right to attempt to prevent DEAN from exercising his rights to exploit the data he possesses relating to KAISER patients, (iii) DEAN is entitled to own and use

the domain name kphealthservicesusa.com or any other domain name using the letters KP or the word KAISER or KAISER's logo in his data broker business, (iv) the arbitration award in the ICANN Dispute arbitration was error, unsupported, beyond the power of the arbitrators to make, and is vacated; and (v) all further declarations that the Court considers appropriate to carry out the intent of this judgment.

3. For a permanent injunction prohibiting KAISER from (i) attacking DEAN's use or sale of KAISER patient information in his possession, (ii) attempting to attack or deprive DEAN of the use of any domain name or other use of the name Kaiser, the letters KP, or the KAISER logo, (iii) and (iii) all further injunctive relief to which DEAN is found entitled and to carry out the objective of the foregoing injunctions.

4. For punitive damages according to proof.

5. For costs of suit herein incurred, and

6. For all other and further relief to which DEAN is entitled.

Dated: December 16, 2021

JAMPOL LAW APC
Alan R. Jampol, Esq.

By _____
Alan R. Jampol
Attorneys for Plaintiffs Stephan Dean and Liza Dean individually and dba SureFile Filing Systems

# EXHIBIT 1

Final Agreement

## SETTLEMENT AGREEMENT AND RELEASE

Stephan C. Dean and Liza Dean, doing business as Sure File Systems ("Dean" or "Sure File"), with its principal place of business at 43-915 Camp Place, Indio, California 92203, on the one hand, and Kaiser Foundation Health Plan, Inc., a California nonprofit public benefit corporation ("KFHP") and Kaiser Foundation Hospitals, a California nonprofit public benefit corporation ("KFH"), each with its principal place of business at One Kaiser Plaza, Oakland, California 94612 (collectively referred to herein as "KP"), on the other hand, hereby enter into this Settlement Agreement And Release (the "Agreement"), effective as of March 24, 2011 ("Effective Date").

### RECITALS

WHEREAS, Stephan C. Dean and Liza Dean doing business as "Sure File Systems" have rendered services to KP and its affiliates, including without limitation, the preparation, sorting, scanning, indexing, quality control, transportation and storage of patient medical records (collectively, the "Services").

WHEREAS, Sure File and KP failed to fully memorialize their business relationship relating to the Services in a written agreement;

WHEREAS, Sure File asserts that it has yet to be fully compensated for Services performed and costs incurred in providing Services to KP and has alleged other claims against KP which KP has disputed (collectively, the "Dispute"); and

WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein.

WHEREAS, It is expressly understood by all parties that this Agreement is being entered into to avoid the costs and burdens of protracted disagreement and/or litigation and that the parties by entering into or performing this Agreement make no statement, admission, or concession concerning the viability of any claims they have asserted or may have asserted against each other.

### AGREEMENT

In consideration for the promises and performances hereafter described, the parties agree as follows:

1. **Consideration and Performance.**

    A. KP has agreed to pay Stephan C. Dean dba Sure File Systems the amount of $110,000 (the "Settlement Funds"). KP will make payment of the Settlement Funds via a check in immediately available funds made payable to Stephan C. Dean dba Sure File Systems, which will be available for pickup at KP's Walnut Center, CA facility two (2) business days following execution of this Agreement by the parties. At the request of Stephan Dean, KP shall send the check to Mr. Dean via FedEx or UPS overnight mail to the address specified in writing by Mr. Dean.

Surefile Release #543885v.10                                        1                                               Confidential

B. The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date.

C. Except as otherwise provided herein, KP and Sure File agree that no additional money shall be due from any party, for any reason whatsoever, for any obligation incurred by any party to any other party in connection with the Dispute.

2. Indemnification. KP will indemnify, defend and hold harmless Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees, from third party claims, demands, or causes of action for damages or loss resulting from alleged harm to or loss of the medical records previously maintained by Sure File, or resulting from Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees obtaining information regarding Kaiser patients. As used herein, the "third party" means any person or entity other than a party to this Agreement and such party's affiliates, as defined in paragraph 3 below.

3. Settlement and Releases. Further, effective upon signature of this Agreement and delivery of the Settlement Funds, KP, on the one hand, and Sure File, Stephan C. Dean, and Liza Dean, on the other hand, shall mutually remise, release, and forever discharge each other, including any and all persons, firms, partnerships, corporations, heirs, executors, contractors, subcontractors, suppliers, administrators, and their respective predecessors, successors, assigns and shareholders, and all of their past, present and future officers, directors, partners, agents, attorneys, parent companies, subsidiaries, related entities, affiliated companies, accountants, and employees and their respective successors, heirs, assigns, executors, and administrators thereof, and/or each of the aforesaid (collectively referred to herein as "affiliates"), from all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and/or arising from any of the foregoing, regardless of whether such claims, actions or causes of action have arisen prior to the Effective Date or arise after the Effective Date. Without limiting the scope of the foregoing, this release extends to unknown claims, meaning claims the parties may not have any basis to know or suspect at this time or at any time in the past, with respect to the Dispute, and all parties certify their intent to release such claims and obligations that relate to the Dispute notwithstanding their present lack of knowledge. Furthermore, each party confirms that it intends this Agreement to constitute a general release of all claims relating to the Dispute and each party hereby desires to and hereby does waive any rights or claims it would otherwise have under California Civil Code Section 1542, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4. Advice of Counsel. The parties understand and acknowledge the significance and consequences of signing this Agreement and have had a full opportunity to discuss, and/or have discussed, this Agreement with their attorneys.

5. **Warranty of Voluntary Agreement.** Each party warrants and represents that this Agreement is freely and voluntarily executed by such party, after having been apprised of all of the relevant information and data by its attorneys. Each party executing this Agreement warrants and represents that it has not relied on any inducements, promises or representations made by any party or its representative, or any other person, except for those expressly set forth herein.

6. **Warranty of Mutual Understanding.** The parties hereto warrant and represent that they have read this Agreement and that they have had a full opportunity to have, and/or have had, the terms used herein and the consequences hereof explained to them by their respective attorneys; that each is legally competent to execute this Agreement and accept full responsibility therefor; and has the authority to do so. It is expressly understood by the parties, and each of them, by reason of the consideration hereinabove mentioned, that the parties admit no liability of any sort and have made no representations as to any liabilities or obligations and have made no agreements or promises to do or admit to do any act or thing not set forth herein.

7. **Warranty of Performance.** Each party hereto agrees to promptly carry out and execute its responsibilities under the terms of this Agreement and to execute any and all documents which may be necessary from time to time in the future to implement the terms of this Agreement.

8. **Warranty of Right and Authority.** The parties each warrant no other person or entity has or had or claims to have had any interest in the claims, demands, causes of action, obligations, damages or liabilities described herein; that he, she or it has not pledged, sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, cause of action, obligation, damage or liability covered herein. The parties further warrant that the person(s) signing on their behalf is (are) duly authorized by appropriate corporate or other action to sign the agreement and bind their respective entities to it. Any breach of these warranties, or any of them, shall render the breaching party (ies) liable for any damages caused by the breach, including reasonable attorneys' fees expended as a result of the breach.

9. **Binding Effect.** This Agreement shall bind and inure to the benefit of all successors, assigns, spouses, children, and heirs of the parties. Should any party cease to exist during the period of performance of this Agreement, the rights, duties, and obligations of the deceased party shall inure and bind its successors, assigns, and heirs.

10. **Incorporation of Recitals.** The Recitals set forth at the beginning of this Agreement are affirmed by the parties hereto, and are acknowledged by the parties to be true and correct and are hereby incorporated into the body of this Agreement as if fully set forth herein.

11. **Modification Must Be In Writing.** This Agreement may not be altered, amended, or modified, except in a writing that is executed by duly authorized representatives of all of the parties hereto.

12. **Construction.** Should any paragraph, clause or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid or unenforceable, such construction and decision shall affect only those

13.  **Non-Disclosure.** The nature and terms of this Agreement shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties; provided, however, that any party may disclose the existence of this Agreement, and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement. KP and Dean will continue take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' Business Associate Agreement of June 24, 2009.

14.  **Governing Law.** This Agreement shall be construed and governed by the laws of the State of California.

15.  **Notices.** Notices under this Agreement shall all be in writing, effective upon receipt and shall be sent by any of the following methods (a) facsimile with return facsimile acknowledging receipt; (b) United States Postal Service certified or registered mail with return receipt showing receipt; or (c) courier delivery service with proof of delivery; or (d) personal delivery. Either party hereunder may change the names and addresses for receipt of notices by notice given as provided for herein.

Notices to Sure File shall be sent as follows:

Stephan C. Dean,
dba Sure File Systems
43-915 Camp Place
Indio, California 92203
With a copy to:

Notices to KFHP or KFH shall be sent as follows:

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals
393 E. Walnut Street, 5th floor, (53R03)
Pasadena, CA 91188
Attn: Laurel Junk, VP Supply Chain

With a copy to:
Kaiser Foundation Health Plan, Inc.
1800 Harrison St, 8th Floor
Oakland, CA 94612
Attn: Holly Burke, Senior Counsel

16. <u>Subject Headings</u>. Subject headings used in this Agreement are for convenience only. The singular shall include the plural and the masculine shall include the feminine and neuter genders.

17. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and each counterpart signature shall, when taken with all other signatures, be treated as if executed upon one original of this Agreement. A facsimile signature of any party shall be binding upon that party as if it were an original.

18. <u>Entire Agreement</u>. This Agreement states the entire agreement among the parties who have executed this Agreement and supersedes their prior agreements, negotiations or understandings. Each of these parties acknowledges and agrees that no other party, nor agent, nor attorney of any of the parties made any promise, representation or warranty, express or implied, not set forth in this Agreement. Each party signing this Agreement acknowledges that such party has not executed this Agreement on reliance on any promise, representation, conduct or warranty of any other party not expressly set forth in this Agreement.

IT IS SO AGREED.

Dated: March ___, 2011        Stephan C. Dean, dba Sure File Systems


By:_____
PRINT NAME:_____

LIZA DEAN

Dated: March ___, 2011
By:_____
PRINT NAME:_____

Dated: March 24, 2011        KAISER FOUNDATION HEALTH PLAN, INC.
                             KAISER FOUNDATION HOSPITALS

                             By: _/s/ Laurel L. Junk_____
                             PRINT NAME: Laurel L. Junk
                             TITLE: Vice President, Supply Chain