# EXHIBIT H

1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   STEPHAN DEAN and LIZA DEAN,        Case No. 5:22-cv-00278-MCS-KK
     Individually and DBA SUREFILE
11   FILING SYSTEMS,                    **ORDER RE: DEFENDANT AND**
12                                      **COUNTERCLAIMANT**
                    Plaintiff,          **KAISER FOUNDATION HEALTH**
13                                      **PLAN, INC.'S MOTION FOR**
                                        **SUMMARY JUDGMENT (ECF NO.**
14          v.                          **53)**

15   KAISER FOUNDATION HEALTH
16   PLAN, INC., KAISER FOUNDATION
     HOSPITALS, and Does 1-50 Inclusive,
17
18                  Defendants.
19

20
21          Defendant and Counterclaimant Kaiser Foundation Health Plan, Inc. ("KFHP")

22   moves for summary judgment on its counterclaims, and for a permanent injunction

23   against Plaintiffs and Counterclaim Defendants Stephan and Liza Dean, d/b/a SureFile

24   Filing Systems (collectively, the "Deans" or "SureFile").  (Mot., ECF No. 53.)  The

25   Deans opposed the motion, (Opp'n, ECF No. 71), and KFHP replied, (Reply, ECF No.

26   77).  The Court heard oral argument on August 1, 2022.

27   ///

28   ///

                                         1

## I.    BACKGROUND

KFHP is a non-profit public benefit corporation that provides health care services to its members through Kaiser Foundation Hospitals and eight independent medical groups.  (Deans' Statement of Genuine Issues of Material Fact ("GIMF") ¶ 1, ECF No. 71-2.)   Together, these separate legal entities operate under the trade name and trademark "Kaiser Permanente."  (*Id.*)  Kaiser Permanente has owned and used the trademarked Happy Family Logo (i.e., 👪) since 1984.  (*Id.* ¶ 2.)  Kaiser Permanente prominently uses KAISER, KAISER PERMANENTE, KP, KP HEALTHCONNECT, and the Happy Family Logo (collectively, the "KFHP marks"), on and in conjunction with the goods and services it offers, including on KFHP's website.  (*Id.* ¶ 3.)  KFHP owns a valid federal registration for the KFHP marks.  (*Id.* ¶ 4.)

Between 2008 and 2010, KFHP entered into agreements with the Deans to scan and store KFHP's patients' private medical records.  (*Id.* ¶ 8.)  After KFHP turned over thousands of patient records to the Deans to scan and store, the parties' relationship soured.  (*Id.* ¶ 10.)   In 2011, the parties reached an agreement (the "settlement agreement") to resolve, among other things, this dispute.  (*Id.* ¶ 11; *see* Dean Decl. Ex. 1 ("Settlement Agreement"), ECF No. 71-3).)  The settlement agreement did not use the word "trademark."  (GIMF ¶ 14.)

Under the settlement agreement, KFHP paid the Deans $110,000 and the Deans agreed to keep the patient information in the records confidential.  (*Id.* ¶¶ 13, 15.)  The settlement agreement required the Deans to "take appropriate steps to preserve all confidential information in the medical records . . . as required by the Confidentiality of Medical [Information] Act, Cal. Civ. Code § 56 et seq. [("CMIA")], Health Insurance Portability and Accountability Act [("HIPAA")], and the parties' Business Associate Agreement of June 24, 2009."  (*Id.* ¶ 16.)

The settlement agreement also contained an integration clause indicating the agreement "states the entire agreement among the parties," that it superseded their "prior    agreements,    negotiations    or    understandings,"    and    that    the    Deans

"acknowledge[d] and agree[d] that no other party, nor agent, nor attorney of any of the parties made any promise, representation or warranty, express or implied, not set forth in" the settlement agreement. (*Id.* ¶ 17.)

In 2012, KFHP sued the Deans in state court alleging the Deans retained KFHP's patients' medical records in violation of the agreements the parties entered into prior to reaching the settlement agreement, including the Moreno Valley Agreement, the West Los Angeles Agreement, the SureFile Transfer Agreement, and the Business Associate Agreement ("BAA") (together, the "subject agreements"). (*Id.* ¶ 18; Dean Decl. Ex 8 ("State Ct. Summ. J. Order").) The court rendered summary judgment in favor of the Deans, concluding "[t]here [was] no triable issue of fact that the parties settled all disputes arising out of the subject agreements" given the settlement agreement. (State Ct. Summ J. Order 2–3.)

Years later, in August of 2021, the Deans registered the domain name <kphealthconnectusa.com>, which prominently displayed the KFHP marks. (GIMF ¶ 21.) The website advertised "access to thousands of current and past Kaiser Permanente members and patients." (*Id.* ¶ 22.) The Deans offered to provide lists containing patients' names, medical record numbers, dates of birth, and dates when the patient was admitted into a specific facility. (*Id.* ¶ 23.) The website listed KFHP's genuine phone number and website as a means by which individuals could "opt out" of having their information disclosed to third parties. (*Id.* ¶ 25.)

On October 15, 2021, KFHP filed a complaint with the National Arbitration Forum ("NAF") seeking to have the <kphealthconnectusa.com> domain name transferred to KFHP. (*Id.* ¶ 30.) The NAF panel ruled in favor of KFHP, concluding the domain name was "identical or confusingly similar to [KFHP's trademarks] in which [KFHP] has definitive rights." (*Id.* ¶ 32.) Before the NAF panel, the Deans argued that KFHP granted them the right to use the KFHP marks by omitting any mention of them from the settlement agreement. (*Id.* ¶ 38.) The NAF panel expressly rejected this argument, stating that "the deletion of an express denial that a party may

use an owner's mark and logo that is not inclusive to those claims [settled in the agreement] is not magically transformed into an affirmative authorization that it has any right to do so." (*Id.* ¶ 39.)

The Deans then launched a second website under the domain name <patientslist.org> with the same content used on <kphealthconnectusa.com>, including the use of the KFHP marks. (*Id.* ¶¶ 40–41.) As with the previous website, <patientslist.org> advertised access to KFHP's patient names, medical record numbers, birth dates, and treatment locations. (*Id.* ¶ 42.)

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden,

> [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

## III.    DISCUSSION

### A.    Trademark Claims

#### 1.    *Trademark Infringement*

The Lanham Act provides a remedy for use of a trademark without the consent of the registrant. 15 U.S.C. § 1114(1). To prevail on a claim under 15 U.S.C. § 1114, a party must prove: 1) it has a protectable ownership interest in the mark and 2) the defendant's use of the mark is likely to cause consumer confusion. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). To determine the likelihood of customer confusion, courts consider a nonexhaustive list of factors first identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). These factors are: 1) the strength of the mark, 2) the proximity of the goods, 3) the similarity of the marks, 4) evidence of actual confusion, 5) the marketing channels used, 6) the type of goods and the degree of care likely to be exercised by the purchaser, 7) the defendant's intent in selecting the mark, and 8) the likelihood of expansion of the product lines. *Id.*

Except for KFHP's trademark dilution claim (discussed in section III.A.2, below), the trademark claims are evaluated under the same standards. The requirements to succeed on a claim of false designation of origin under 15 U.S.C. § 1125(a), trademark infringement under California common law, and trademark-based unfair competition under the common law and California Business and Professions Code section 17200 are the same as those for trademark infringement. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 781 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical . . . ."); *Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*, 707 F.2d 1054,

1058 (9th Cir. 1983) ("A showing of likely buyer confusion . . . applies to common-law trademark infringement claims brought under California law."); *Acad. of Motion Picture Arts and Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("An action for unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* is substantially congruent to a trademark infringement claim under the Lanham Act." (internal quotation marks omitted)).

The parties do not dispute that KFHP owns a protectable interest in its marks and that KFHP's goods and services offered under the marks have "come to be known to the purchasing public as conforming to a certain standard of quality." (GIMF ¶¶ 2–6.) Nor do the parties dispute the Deans' websites <kphealthconnectusa.com> and <patientslist.org> "prominently used" reproductions of KFHP's marks in commerce. (*Id*. ¶¶ 21, 40.) As a result, this dispute turns on whether the Deans had permission to use the KFHP marks and whether the use is likely to cause confusion. (*See id.* ¶ 41 (disputing KFHP's assertion that "[t]he Deans continued their prominent unauthorized use of the KFHP Marks" on the basis that the use of the KFHP marks was authorized as "as a term of settlement through omission of any restriction of use").)

a.   *The Deans Lacked Permission to Use the KFHP Marks*

The Deans argue the settlement agreement released all claims "past, present, and future" and "preserved" the Deans' "right to use the Kaiser name, even though it was trademarked, in their own business without Kaisers [sic] written authorization." (Opp'n 2–3.) In his declaration, Mr. Dean claims that as part of the settlement negotiations, he "remained firm in [his] insistence that [the Deans] retain the right to use the Kaiser name and trademarks without any restrictions unless Kaiser paid [the Deans] considerably more money as part of the settlement." (Dean Decl. ¶ 7.)

The Deans claim they have a right to use the KFHP marks based on the course of negotiations between the parties. During settlement agreement negotiations, the Deans offered KFHP two options: 1) pay the Deans $200,000 in exchange for language explicitly prohibiting the Deans from using the KFHP marks, or 2) pay the Deans

$110,000 to settle the dispute without the prohibition. (*See* Dean Decl. Ex. 2.) Although the settlement agreement does not mention or reference the KFHP marks, the Deans argue that by choosing the second option, KFHP "agreed in writing that [the Deans] may use the Kaiser name and logo" and by "having made that concession (really more by omission than commission) and having dismissed with prejudice its prior lawsuit . . . , [KFHP] has no colorable right to pursue any claim against" them. (Burke Decl. Ex. I (letter from Deans' counsel), ECF No 53-2.) This is incorrect both as a conclusion of law and as a matter of logic.

The settlement agreement is governed by California law. (Settlement Agreement § 14.) "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 810 (1998). The Deans do not contend (nor can they) that the text of the settlement agreement explicitly grants them authority to use the KFHP marks. The settlement agreement contains no provisions explicitly related to the use of the KFHP marks, and courts are not at liberty to read into a contract language that is demonstrably not there. *See, e.g., Moss Dev. Co. v. Geary*, 41 Cal. App. 3d 1, 9 (1974) ("Courts will not add a term to a contract about which the agreement is silent."); *Vons Cos., Inc. v. U.S. Fire Ins. Co.*, 78 Cal. App. 4th 52, 59 (2000) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").

Instead, the Deans attempt to rely upon extrinsic evidence (i.e., settlement offers made during negotiations) to impute an alternative meaning to their agreement. (*E.g.*, Opp'n 3.) "In California, the 'parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument.'" *Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 F. App'x 709, 711 (9th Cir. 2011) (quoting *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1992)). Extrinsic evidence may only "be admitted to explain the meaning of a writing when the meaning urged is one to which

1   the written contract term is reasonably susceptible or when the contract is ambiguous."

2   *Hayter Trucking, Inc. v. Shell W. E&P, Inc.*, 18 Cal. App. 4th 1, 15 (1993).

3        "If a writing is intended by the parties as a 'complete and exclusive statement of

4   the terms of the agreement,'" a contract is fully integrated. *Esbensen v. Userware Int'l,*

5   *Inc.*, 11 Cal. App. 4th 631, 637 (1992) (quoting Cal. Civ. Proc. Code § 1856(b)).

6   Determination as to whether an agreement is fully integrated is a question of law for the

7   court. *Hayter Trucking*, 18 Cal. App. 4th at 14.  The settlement agreement contains a

8   clause affirming it "states the entire agreement among the parties" and "supersedes"

9   any "prior agreements, negotiations or understandings." (Settlement Agreement § 18.)

10  The Court therefore concludes the settlement agreement is a fully integrated contract.

11  Consequently, extrinsic evidence may only be used as proof of a meaning to which the

12  settlement agreement is "reasonably susceptible" or to the extent the "contract is

13  ambiguous." *Hayter Trucking*, 18 Cal. App. 4th at 15.

14       The settlement agreement relates to matters "arising out of or relating to the

15  Dispute." (Settlement Agreement § 3)  The "Dispute" involves claims that SureFile

16  had not been "fully compensated for Services performed and costs incurred in providing

17  Services to [KFHP]" as well as "other claims [alleged] against [KFHP] which [KFHP]

18  has disputed." (*Id.*, Recitals.)  SureFile's "Services" are defined as "the preparation,

19  sorting, scanning, indexing, quality control, transportation and storage of patient

20  medical records." (*Id.*)  Although the terms of the settlement agreement are "not

21  confined to claims of non-payment," (State Ct. Summ. J. Order 3), the text of the

22  settlement agreement clearly shows the "Dispute" was limited to issues arising from

23  SureFile's "Services."  SureFile's "Services" are in no way related to the KFHP marks.

24  (*See* Settlement Agreement, Recitals.)

25       Consequently, the Deans urge an interpretation of the settlement agreement to

26  which it is not reasonable susceptible.  The settlement agreement is undoubtedly broad,

27  as it relates to all claims, regardless of when they accrued, "arising out of or relating to

28  the Dispute." (Settlement Agreement § 3.)  However, even applying the broadest

interpretation possible, there is no reasonable indication that trademark issues were ever part of the "Dispute."  As a result, nothing in the settlement agreement (including its release and waiver provisions) could be understood as granting the Deans affirmative authority to use the KFHP marks.

Even if the Court were to assume the "other claims [alleged] against [KFHP] which [KFHP] has disputed" language made the contract sufficiently ambiguous, the proffered evidence would still not change the outcome.  "An essential element of any contract is 'consent.'"  *Flick*, 60 Cal. App. 4th at 811 (quoting Cal. Civ. Code § 1550).  For consent to be valid, it must be mutual.  *Id.*; Cal. Civ. Code § 1565.  "Consent is not mutual, unless the parties all agree upon the same thing in the same sense."  *Flick*, 60 Cal. App. 4th at 811 (quoting Cal. Civ. Code § 1580).  Ultimately, "contracts must be enforced according to the 'mutual intention of the parties as it existed at the time of contracting.'"  *Id.* (quoting Cal. Civ. Code § 1636.)

Despite the Deans' contentions, evidence that KFHP rejected a settlement proposal is not evidence they consented to the proposal's inverse.  Stated differently, where a party has no right to engage in a course of conduct, a written contract's failure to disclaim the party's authority to engage in that conduct is *not* a concession (by omission or otherwise) that such conduct is authorized.  Consequently, the Deans cannot show KFHP consented to a contract granting them an affirmative license to use the KFHP marks.

The holder of a valid trademark possesses the "*exclusive* right to use the mark on the goods and services specified in the registration."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (emphasis added).  The extrinsic evidence shows that, at most, KFHP merely agreed to a contract that did not expressly prevent the Deans from using KFHP's "trade names, service marks, or logo," something they had no right to do in the first place.  (Dean Decl. Ex. 2.)  Either version of the settlement agreement would have done nothing more than preserve the status quo.  Even with the proffered evidence, the Deans cannot show how the settlement agreement

9

1    grants them the authority they claim to have.

2        To adopt the line of reasoning suggested by the Deans (i.e., KFHP's failure to

3    specifically disclaim the Deans' right to use the KFHP marks was a "de facto" grant of

4    authority) would undermine the entire body of contract and intellectual property

5    licensing law.  Such a conclusion would allow contractual partners to surreptitiously

6    insert binding provisos simply by claiming the written instrument failed to properly

7    disclaim a course of conduct that had been raised during negotiations.  Instead of serving

8    as reliable evidence as to the existence and terms of an agreement, fully integrated

9    contracts would be rendered functionally meaningless.  Alternatively, even relatively

10    simple contracts would balloon to the length of dictionaries, as the parties would be

11    forced to repudiate every possible condition which may or may not have been part of

12    their negotiations.

13        Viewing the evidence in the light most favorable to the Deans, the Court

14    concludes KFHP has shown the Deans did not have permission to use the KFHP marks.

15            b.    *The Deans' Use of the KFHP Marks Is Likely to Cause*

16                   *Consumer Confusion*

17        Where trademark infringement is perpetrated over the internet, the "the law

18    considers three of [the *Sleekcraft*] factors to be of greatest importance: (i) similarity of

19    plaintiff's and defendant's mark; (ii) relatedness of services; and (iii) simultaneous use

20    of the Internet as a marketing channel." *Internet Specialties W., Inc. v. Milon-DiGiorgio*

21    *Enters., Inc.*, 559 F.3d 985, 989 (9th Cir. 2009) (citation omitted).  The Court agrees

22    with KFHP that the first factor, the similarity of the marks, weighs "decisively" in favor

23    of KFHP.  (Mot. 12.)  The marks in this case are identical.  (GIMF ¶¶ 21, 40–41.)  In

24    this context, the use of identical marks, with no alteration or suggestion they have been

25    misappropriated by a third party, is likely to give a reasonable consumer the

26    misimpression KFHP is sponsoring or otherwise approves of the website's activities.

27        The second factor similarly favors concluding consumers are likely to be

28    confused.  The Deans used the KFHP marks to advertise access to highly specific KFHP

1    patient information, including patient names, record numbers, birth dates, and treatment

2    locations.  (GIMF ¶ 42.)  A consumer exercising reasonable care would likely conclude

3    the type of goods being offered—information related to KFHP's patients' medical

4    treatment—must be related to KFHP's medical services.

5        Finally, the marketing channel analysis favors KFHP.  Both parties use the

6    internet "as a marketing and advertising facility." *Brookfield Commc'ns*, 174 F.3d at

7    1057. (*See* GIMF ¶¶ 3, 40.)  As a result, a consumer visiting the Deans' webpages would

8    have limited means of determining the source of the product being advertised, thereby

9    "exacerbating the likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1057.

10        Other *Sleekcraft* factors also show consumers are likely to be confused.  The

11   parties do not dispute the strength of the KFHP marks.  (*See* GIMF ¶¶ 2–7.)  Next, the

12   fact that the Deans chose to adopt the actual KFHP marks is sufficient evidence of bad

13   faith intent.  (*See* GIMF ¶¶ 21–24.)  *See also Off. Airline Guides, Inc. v. Goss*, 6 F.3d

14   1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark

15   similar to another's, courts will presume an intent to deceive the public.").  The Court

16   also agrees with the NAF panel that the Deans registered <kphealthconnectusa.com>,

17   which featured the same content as <patientslist.org>,  "primarily for the purpose of

18   extorting a benefit from [KFHP]."  (GIMF ¶ 35.)  Finally, "[g]oods are proximate if

19   consumers are likely to associate the two product lines." *Moroccanoil, Inc. v. Zotos*

20   *Int'l, Inc.*, 230 F. Supp. 3d 1161, 1173 (C.D. Cal. 2017) (internal quotation marks

21   omitted).  As discussed above, consumers are likely to associate the sale of KFHP's

22   patients' medical information with KFHP's medical services.

23        The remaining factors are either absent or neutral.  There is no suggestion that

24   KFHP intends to expand into the market of selling patients' personal medical

25   information.  Additionally, there is no evidence of actual consumer confusion.

26   However, the absence of such evidence "is generally unnoteworthy because actual

27   confusion is hard to prove." *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156,

28   1166 (N.D. Cal. 2011).

1       After weighing the *Sleekcraft* factors, the Court concludes the Deans' use of the

2   KFHP marks is likely to cause consumer confusion.

3                          ***

4       Viewing the evidence in the light most favorable to the Deans, the Court

5   concludes KFHP has shown it has a protectable ownership interest in the KFHP marks,

6   the Deans used the KFHP marks in commerce without the KFHP's consent, and the

7   Deans' use of the KFHP marks is likely to cause consumer confusion.  Consequently,

8   KFHP is entitled to summary judgment for trademark infringement under 15 U.S.C.

9   § 1114, false designation of origin under 15 U.S.C. § 1125(a), trademark infringement

10  under California common law, and unfair competition under the common law and

11  California Business and Professions Code section 17200.

12           *2.    Trademark Dilution*

13      To succeed on a trademark dilution claim under 15 U.S.C. § 1225(c), a plaintiff

14  must prove: 1) the mark is famous, 2) the defendant is making a commercial use of the

15  mark in commerce, 3) the defendant's use began after the mark became famous, and

16  4) the defendant's use of the mark dilutes the quality of the mark by diminishing the

17  capacity of the mark to identify and distinguish goods and services.  *Panavision Int'l,*

18  *L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).

19      The Deans do not offer a meaningful argument contesting summary judgment on

20  the claim.  (*See generally* Opp'n.)  The first three elements obviously are not in dispute.

21  (*See* GIMF ¶¶ 2–6, 21, 40–41.)  With respect to the fourth element, dilution by blurring

22  occurs when "another party's use of the mark 'weaken[s] the commercial magnetism of

23  these marks and diminish[es] their ability to evoke their original associations.'"  *Adobe*

24  *Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 969 (N.D. Cal. 2015)

25  (alterations in original) (quoting *Mattel, Inc. v. MCA Records*, *Inc.*, 296 F.3d 894, 903

26  (9th Cir. 2002)).  "The theory of dilution by blurring thus protects the benefits that flow

27  from a sharp and distinct connection between one mark and one product."  *Horphag*

28  *Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1037 (9th Cir. 2007).

Here, the Deans seek to offer a product that threatens to blur the KFHP marks' association with healthcare that is "known to the purchasing public as conforming to a certain standard of quality." (GIMF ¶ 6.) Public association of the KFHP marks with the sale of sensitive patient information will erode the connection between KFHP's marks and its medical services. *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1096 (N.D. Cal. 2014) (concluding the use of plaintiff's trademarks on a website offering services adjacent to those associated with the plaintiff's trademark can impair the distinctiveness of the trademark).

As a result, the Court concludes KFHP is entitled to summary judgment on its trademark dilution claim.

## B.    Contract Claim

To succeed on a breach of contract claim, a plaintiff must prove: 1) the existence of a contract, 2) plaintiff's performance or excuse for nonperformance, 3) defendant's breach, and 4) the resulting damages to the plaintiff. *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014).

The parties do not dispute the existence of the settlement agreement or that KFHP performed by paying the Deans $110,000. (GIMF ¶¶ 11, 13.) The dispute centers on whether the Deans breached any term of the agreement by offering "access to thousands of current and past Kaiser Permanente members and patients," including information such as the patients' names, medical record numbers, dates of birth, and dates of admission. (GIMF ¶¶ 63–64.) KFHP claims that under the settlement agreement, the Deans promised to "take appropriate steps to preserve all confidential information in the medical records [they handled] during the course of providing Services as required by the Confidentiality of Medical [Information] Act, Cal. Civ. Code § 56 et seq. [("CMIA")], Health Insurance Portability and Accountability Act [("HIPAA")], and the parties' Business Associate Agreement of June 24, 2009." (GIMF ¶ 56.) KFHP alleges "[t]he Deans' threatened sale of patient data violates their contractual obligations under the Settlement Agreement for three independent reasons: (1) it violates HIPAA, (2) it

13

violates CMIA, and (3) it falls far outside the use permitted under the Business Associate Agreement." (Mot. 19.)

In opposition, the Deans argue that the contractual claims are barred by claim or issue preclusion, (Opp'n 4–5); the information they sought to sell was not covered under the settlement agreement because it was not "protected health information" under HIPAA, (GIMF ¶ 72); and that the settlement agreement superseded the BAA, (Opp'n 3–4).

1.    *The Claims Are Not Barred by Issue or Claim Preclusion*

When claim or issue preclusion is based on a prior state court judgment, federal courts must apply the law of preclusion of the state in which the judgment was entered. *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016). The previous judgment was entered in California, meaning California preclusion laws apply. (*See* State Ct. Summ. J. Order.)

Claim preclusion, or res judicata, "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *Cal Sierra Dev., Inc. v. George Reed, Inc.*, 14 Cal. App. 5th 663, 671 (2017) (cleaned up). Once applied, claim preclusion acts as a bar to any cause of action that "could have been brought, whether or not it was actually asserted or decided in the first lawsuit." *Samara v. Matar*, 8 Cal. App. 5th 796, 803 (2017), *aff'd*, 5 Cal. 5th 322 (2018).

KFHP's claims arise from alleged contractual violations that did not occur until at least 2021, beginning when the Deans registered the domain name <kphealthconnectusa.com>. (GIMF ¶¶ 21, 23–24, 62–65, 69, 71, 73.) Because KFHP's claims accrued almost a decade after the complaint in the earlier case was filed, KFHP's claims cannot be barred by claim preclusion.[1]

---

[1] For similar reasons, the Court rejects the Deans' arguments that all of KFHP's claims

Issue preclusion, also known as collateral estoppel, "prevents relitigation of previously decided issues, rather than causes of action as a whole." *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (internal quotation marks omitted). "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015). Thus, issue preclusion does not apply with respect to "issues that could have been raised and decided in the prior proceeding but were not." *Bridgeford v. Pac. Health Corp.*, 202 Cal. App. 4th 1034, 1043 (2012).

The 2012 case was not premised on an alleged breach of the settlement agreement. (Dean Decl. Ex. 9, at 3:9–13.) The state court held there was no triable issue because the settlement agreement "settled all disputes arising out of the subject agreements." (State Ct. Summ. J. Order 3.) Here, KFHP does not allege a violation of any of the subject agreements, but instead claims the Deans "have breached the parties' *settlement agreement*" itself. (Answer & Countercls. ¶ 73, ECF No. 22 (emphasis added).) Because no breach of the settlement agreement was actually litigated in the earlier case, issue preclusion does not bar KFHP's current claim.

> 2.  *The Deans' Conduct Violates the Terms of the Settlement Agreement*
>      a.  <u>*Violations of HIPAA and CMIA*</u>

The settlement agreement requires the Deans to "take appropriate steps to preserve all confidential information in the medical records" they handled subject to the provisions of HIPAA and CMIA. (GIMF ¶ 56.) The parties do not dispute that the Deans offered to sell KFHP patients' names, medical record numbers, dates of birth, and the dates patients were admitted to a specific facility. (GIMF ¶ 64; *see also* Compl.

---

are barred by the statute of limitations or laches. (Opp'n 5–7.) The conduct giving rise to KFHP's claims commenced in August of 2021. (*See* GIMF ¶¶ 21, 62.) KFHP brought these claims in March of 2022, well within any applicable statute of limitations.

¶ 17.)  The Deans contend, however, that they did not violate their obligation to "take appropriate steps to preserve all confidential information" on the grounds that the information was not protected under HIPAA or CMIA, or that there could be no violation of these provisions (and thus no violation of the contract) if they obtained permission from the individual patients.  (*See* GIMF ¶ 14 ("The Deans had the right to use the non-PHI" information.); *id.* ¶ 72 ("The Deans have never threatened to sell patient information without their written authorization. Therefore it is not a violation of HIPAA.").)

HIPAA and its implementing regulations prevent the disclosure of health information that could reasonably be used to identify an individual.  45 C.F.R. § 160.103.  This expressly includes an individual's name, phone number, address, email address, birth date, zip code, medical record number, and admission and discharge dates.  *Id*. § 164.514(b)(2)(i).  Similarly, CMIA prevents the unauthorized disclosure of "personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual."  Cal. Civ. Code § 56.05(*i*).

Based on these definitions, there is no validity to the Deans' argument that "[a] person's name and [the fact] that they were admitted into a medical facility is not considered protected information under HIPAA."  (GIMF ¶ 72.)  Further, it is impossible to understand how this information would not be "sufficient to allow identification of the individual" within the meaning of CMIA.  Cal. Civ. Code § 56.05(*i*).  As a result, the information being offered by the Deans is clearly "protected health information" under HIPAA and CMIA.

The Deans argue that they "have never threatened to sell patient information without [the patients'] written authorization," meaning their conduct "is not a violation of HIPAA."  (GIMF ¶ 72.)  This argument is premised on a misunderstanding of who is authorized to seek patient permission to sell protected medical information.  "Except

pursuant to and in compliance with [45 C.F.R.] § 164.508(a)(4), a covered entity or business associate may not sell protected health information." 45 C.F.R. § 164.502(a)(5)(ii)(A). Only the "covered entity" may "obtain an authorization for any disclosure of protected health information which is a sale of protected health information." *See id.* § 164.508(a)(4)(i). A "covered entity" is a "health plan" or "health care provider," such as KFHP. *Id.* § 160.103. A "business associate," on the other hand, is an individual or organization that "creates, receives, maintains, or transmits protected health information" for a "covered entity." *Id.* SureFile was contracted to provide "the preparation, sorting, scanning, indexing, quality control, transportation and storage of patient medical records" and is, therefore, clearly not a "covered entity." (Settlement Agreement, Recitals.) As a "business associate," SureFile cannot avoid HIPAA violations by first obtaining authorization.

Nor does the fact that certain provisions of the BAA are no longer operative lend any credence to the Deans' arguments they can avoid HIPAA violations by seeking permission. An entity's status as a "business associate" does not turn on whether it is or remains in a contractual relationship with a "covered entity." *See* 45 C.F.R. § 160.103(1)–(3); 78 Fed. Reg. 5,566, 5,574 (Jan. 15, 2013). In fact, the section of the Code of Federal Regulations preventing the sale of protected health information was specifically adopted to ensure that when there is no "business associate contract or other arrangement" with "covered entity" the "business associate may use or disclose protected health information *only as necessary to perform its obligations for the covered entity* . . . any other use or disclosure would violate the Privacy Rule." 75 Fed. Reg. 40,868, 40,887 (July 14, 2010) (emphasis added).

        b.    *The Deans Violated the BAA's Confidentiality Provision, as It Was Incorporated into the Settlement Agreement*

The Deans argue that the operative effect of the BAA was actually litigated and decided in the earlier case. (*See* GIMF ¶¶ 9, 50, 56, 60.) The scope of the state court's decision, however, did not extend to the BAA's confidentiality provisions. (State Ct.

Summ. J. Order 3.)  The state court recognized the BAA remained operative with respect to the Deans' obligation to "take appropriate steps to preserve all confidential information maintained in those records as required by . . . the parties' Business Associates Agreement."  (*Id.* (ellipsis in original) (internal quotation marks omitted); *see also* Dean Decl., Ex. 9, at 14:8–12 ("[A]t least in this court's opinion, . . . the settlement agreement absolutely provides that the confidentiality aspects of the business associate agreement survives the settlement agreement.").)  As a result, the BAA's confidentiality obligations are not barred by issue preclusion and were explicitly incorporated into the terms of the settlement agreement.  (*See* Settlement Agreement § 13 (the Deans must "take appropriate steps to preserve all confidential information in the medical records handled by [the Deans] during the course of providing services as required by . . . the parties' Business Associate Agreement of June 24, 2009.")

The BAA states that protected health information "may not be recorded, retained or transmitted to other parties other than [KFHP] in any manner."  (Burke Decl. Ex. C, Ex. A § 2.)  By offering to transmit "lists that contain" protected health information to "attorneys, doctors, pharmaceutical companies and insurance brokers," (GIMF ¶¶ 64–65), the Deans' failed to "take appropriate steps to preserve all confidential information" as required by the settlement agreement.

***

Viewing the facts in the light most favorable to the Deans, it is clear the Deans have breached their obligation to take "appropriate steps to preserve all confidential information in the medical records" they handled as required by the CMIA, HIPAA, and the BAA.  KFHP is therefore entitled to partial summary judgment as to the existence of a valid contract, KFHP's performance of the contract, and the Deans' breach.

With respect to the remaining element of damages, "[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).  "To be

18

1  actionable, harm must constitute something more than nominal damages, speculative

2  harm, or the threat of future harm—not yet realized[.]" *Id.* (quoting *Buttram v. Owens-*

3  *Corning Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997)). Here, KFHP offers evidence

4  that "if the Deans are permitted to offer to sell or disclose patients' information, KFHP

5  is *likely* to suffer reputational damage and loss of goodwill, because it will give the false

6  impression that KFHP has authorized the use." (GIMF ¶ 73 (emphasis added).) At

7  best, this is evidence of speculative harm, not evidence that KFHP has actually been

8  damaged.

9      The Court also refuses to adopt the circular logic that costs incurred prosecuting

10  KFHP's claims and defending itself in this action, without more, are sufficient to give

11  rise to a finding of damages. (Mot. 21.) Attorneys' fees may be awarded as damages in

12  certain circumstances. *See Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29

13  Cal. App. 5th 1, 9–11 (2018) (discussing distinction between "attorney fees sought as

14  damages and attorney fees sought as costs of suit"). In this case however, concluding

15  attorneys' fees alone are sufficient would render the damages element of a breach claim

16  superfluous. The mere act of prosecuting a claim for breach of contract would itself

17  satisfy one of the elements a plaintiff must prove. Without rendering a decision as to

18  whether KFHP is entitled to recover fees as damages, the Court finds that its showing

19  does not suffice to meet its summary judgment burden.

20      Finally, even assuming KFHP has a right to enforce the contract on the ground

21  that its members are creditor beneficiaries, (*see* Mot. 21–22), this right is not evidence

22  of damages. To sustain a cause of action under this theory, KFHP would still need to

23  show its members suffered "appreciable and actual damage." *Aguilera*, 223 F.3d at

24  1015.

25      Accordingly, the Court denies summary judgment on the damages element of the

26  breach claim and does not reach KFHP's argument that it is entitled to specific

27  performance. (*See* Mot. 22–23.)

28  ///

### C.    Injunctive Relief

KFHP seeks a permanent injunction prohibiting the Deans from using KFHP's marks or selling patient information, among other relief.  (Proposed Order, ECF No. 53-4.)  "To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (internal quotation marks omitted).  Because the Court has not determined KFHP's actual success on the merits of the contract claim, the Court declines to consider permanent injunctive relief stemming from that claim on this motion.  However, the Court has rendered a finding of trademark infringement and may thus determine at this stage the propriety of a permanent injunction as a remedy for the infringement.  *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1074 (C.D. Cal. 2004) ("[W]hen summary judgment has been granted on a finding of trademark infringement, a permanent injunction may be granted without a specific hearing on the issue.").

This Court previously concluded KFHP met the comparable standards for issuance of a preliminary injunction.  (*See* Order Gr. Prelim. Inj., ECF No. 37.) Unsurprisingly, an analysis of the analogous factors shows KFHP is entitled to a permanent injunction.  First, in trademark cases, "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding" the defendant has violated its trademark.  15 U.S.C. § 1116(a).  As discussed above, (*see* Section III.A.1), the Deans infringed the KFHP marks.  The Deans have made no showing to rebut the presumption of irreparable harm, and this factor therefore weighs in favor of granting a permanent injunction.

Second, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Century 21 Real Estate Corp. v. Sandlin*, 846

F.2d 1175, 1180 (9th Cir. 1988). Further, the Deans admit that they are "financially unable" to pay a fee award of $50,804.89 or even a "substantial portion of it", (GIMF ¶ 76), evidencing that monetary damages would be inadequate to compensate for injuries sustained as a result of continued infringement, *see Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("Damages are no remedy at all if they cannot be collected." (internal quotation marks omitted)).

Third, the balance of equities unequivocally favors KFHP, as a prohibition against unlawful conduct cannot constitute harm. *See Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other grounds as recognized in Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1158–59 (9th Cir. 2011).

Fourth, and finally, a permanent injunction against further trademark infringement favors the public interest. Prohibiting further infringement will protect the public from confusion arising from the misuse of the KFHP marks.

The Court concludes that KFHP is entitled to a permanent injunction as a remedy to trademark infringement.

## IV.    CONCLUSION

Viewing the undisputed facts in the light most favorable to the Deans, the Court concludes that KFHP is entitled to partial summary judgment. The motion is GRANTED in part and DENIED in part.

The evidence shows the Deans engaged in trademark infringement under 15 U.S.C. § 1114. KFHP is also entitled to prevail on its claims for false designation of origin under 15 U.S.C. § 1125(a), unfair competition under California Business and Professions Code section 17200, and the common law. KFHP has also established a claim for trademark dilution against the Deans. The Court therefore GRANTS partial summary judgment as to all trademark claims. The Court reserves judgment as to damages.

The Deans breached the settlement agreement by failing to take appropriate steps to keep KFHP patient information confidential under HIPAA, CMIA, and the Business

Association Agreement (as it was incorporated into the settlement agreement). The Court therefore GRANTS partial summary judgment as to all elements of KFHP's contract claim except for damages.

KFHP has demonstrated the factors strongly favor granting a permanent injunction against further trademark infringement by the Deans. The Court therefore GRANTS KFHP's motion for a permanent injunction except as to relief concerning the breach of contract claim. The injunction will issue separately from this Order.

The parties shall meet and confer to discuss a discovery plan and trial schedule to settle the remaining issues of damages and remedies. The parties shall file a proposed schedule within 14 days of this Order.

**IT IS SO ORDERED.**

Dated: November 22, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE