# EXHIBIT L

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10    STEPHAN DEAN and LIZA DEAN,          Case No. 5:22-cv-00278-MCS-KK
      Individually and DBA SUREFILE
11    FILING SYSTEMS,
                                           **ORDER RE: COUNTERCLAIMANT**
12                                         **KAISER FOUNDATION HEALTH**
                 Plaintiffs,               **PLAN, INC.'S MOTIONS TO**
13                                         **ENFORCE AWARD OF**
                                           **ATTORNEY'S FEES AND FOR**
14         v.                              **SUMMARY JUDGMENT (ECF NOS.**
                                           **85, 97)**
15    KAISER FOUNDATION HEALTH
16    PLAN, INC., KAISER FOUNDATION
      HOSPITALS, and Does 1-50 Inclusive,
17
18               Defendants.
19    _____
20    AND RELATED COUNTERCLAIMS.

21
22         Counterclaimant Kaiser Foundation Health Plan, Inc. ("Kaiser") moves for

23    summary judgment on its counterclaims, requesting damages and injunctive relief

24    against Counterclaim Defendants Stephan and Liza Dean, d/b/a SureFile Filing Systems

25    (collectively, the "Deans"). (Notice of Mot., ECF No. 97; Mot., ECF No. 97-1.) The

26    Deans oppose the motion, (Opp'n, ECF No. 101-1), and Kaiser filed a reply, (Reply,

27    ECF No. 102). Also before the Court is a fully briefed motion to enforce an attorney's

28    fees award. (MTE, ECF No. 85-1; MTE Opp'n, ECF No. 94; MTE Reply, ECF No. 95.)

                                           1

1    The Court deems the motions appropriate for decision without oral argument. Fed. R.

2    Civ. P. 78(b); C.D. Cal. R. 7-15.

3    **I.    BACKGROUND**

4        Kaiser is a nonprofit public benefit corporation that provides health care services

5    to its members through Kaiser Foundation Hospitals (a nonprofit public benefit

6    corporation) and eight independent medical groups. (Statement of Genuine Issues of

7    Material Fact ("GIMF") ¶ 1, ECF No. 101-3.) Between 2008 and 2010, Kaiser entered

8    into agreements with the Deans to scan and store Kaiser's patients' private medical

9    records. (*Id.* ¶ 2.) After Kaiser turned over thousands of patient records to the Deans to

10   scan and store, the parties' relationship soured. (*Id.* ¶ 5.) In 2011, the parties reached an

11   settlement agreement to resolve their legal dispute. (*Id.* ¶ 6.)

12       Under the settlement agreement, Kaiser paid the Deans $110,000, and the Deans

13   agreed to keep the patient information in the records confidential. (*Id.* ¶¶ 8–9.) The

14   settlement agreement required the Deans to "take appropriate steps to preserve all

15   confidential information in the medical records . . . as required by the Confidentiality

16   of Medical [Information] Act, Cal. Civ. Code § 56 et seq. [("CMIA")], Health Insurance

17   Portability and Accountability Act [("HIPAA")], and the parties' Business Associate

18   Agreement of June 24, 2009." (*Id.* ¶ 10 (internal quotation marks omitted) (second and

19   third alterations in original).)

20       The settlement agreement also contained an integration clause stating the

21   agreement "states the entire agreement among the parties," that it superseded their

22   "prior agreements, negotiations or understandings," and that the Deans

23   "acknowledge[d] and agree[d] that no other party, nor agent, nor attorney of any of the

24   parties made any promise, representation or warranty, express or implied, not set forth

25   in" the settlement agreement. (*Id.* ¶ 11 (internal quotation marks omitted) (alterations

26   in original).)

27       In 2012, Kaiser sued the Deans in state court alleging the Deans retained Kaiser's

28   patients' medical records in violation of the agreements the parties entered into prior to

reaching the settlement agreement (the "subject agreements"). (*Id.* ¶ 13.) The state court rendered summary judgment in favor of the Deans. (Burke Decl. Ex. E, at 3, ECF No. 97-4; Dean Decl. Ex. A, at 11, ECF No. 101-2.)[1]

Years later, in August 2021, the Deans registered the domain name <kphealthconnectusa.com>, which prominently displayed the Kaiser Marks. (GIMF ¶ 14; Compl. ¶ 18, ECF No. 1-1.) The website advertised "access to thousands of current and past Kaiser Permanente members and patients." (*Id.* ¶ 15 (internal quotation marks omitted).) The Deans offered to provide lists containing patients' names, medical record numbers, dates of birth, and dates when the patient was admitted into a specific facility. (*Id.* ¶¶ 16–17.) The website listed Kaiser's genuine phone number and website as a means by which individuals could "opt out" of having their information disclosed to third parties. (*Id.* ¶ 18.)

On October 15, 2021, Kaiser filed a complaint with the National Arbitration Forum ("NAF") seeking to have the <kphealthconnectusa.com> domain name transferred to Kaiser. (*Id.* ¶ 23.) Kaiser brought this action pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers. (*Id.* ¶¶ 22–23.) The NAF panel ruled in favor of Kaiser. (*Id.* ¶ 24.)

The Deans then launched a second website under the domain name, <patientlist.org>, with the same content used on <kphealthconnectusa.com>, including Kaiser's patient data. (*Id.* ¶¶ 30–31.) In connection with this second website, "the Deans also registered with the State of California as a data broker on the California Data Broker Registry." (*Id.* ¶ 33.) After learning of the Deans' <patientlist.org> website, Kaiser contacted the Deans' counsel and informed him that the Deans had no right to sell or disclose Kaiser patient data. (*Id.* ¶ 37.) Kaiser also referred the matter to the

---

[1] Pinpoint citations of the Dean declaration and its exhibits refer to the page numbers generated in the CM/ECF header.

1    California Attorney General's Office to notify "the office of the Deans' improper data

2    broker registration and to make clear that the Deans were not authorized to sell or

3    disclose any Kaiser Permanente data." (*Id.* ¶ 38 (cleaned up).)

4        On August 9, 2022, a California resident and Kaiser patient, Ross Dreyer,

5    requested the Deans to not sell his patient information and to delete any of his Kaiser-

6    related data. (*Id.* ¶ 41.) The Deans refused. (*Id.*) Kaiser then informed the California

7    Attorney General's Office about the Deans refusal to take down Dreyer's data and

8    sought removal of the Deans' data broker registration. (*Id.* ¶¶ 42–43.) The California

9    Attorney General ultimately revoked the Deans' registration. (*Id.* ¶ 47.)

10   **II.    MOTION FOR SUMMARY JUDGMENT**

11       **A.    Legal Standard**

12       Summary judgment is appropriate where there is no genuine issue of material

13   fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

14   56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under

15   the governing law, the resolution of that fact might affect the outcome of the case.

16   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the

17   evidence is such that a reasonable jury could return a verdict for the nonmoving party."

18   *Id.* The burden of establishing the absence of a genuine issue of material fact lies with

19   the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts

20   and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*

21   *v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden,

22       [t]he moving party may produce evidence negating an

23       essential element of the nonmoving party's case, or, after

24       suitable discovery, the moving party may show that the

25       nonmoving party does not have enough evidence of an

26       essential element of its claim or defense to carry its ultimate

27       burden of persuasion at trial.

28   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir.

1    2000).

2        Once the moving party satisfies its burden, the nonmoving party cannot simply

3    rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

4    material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd.*

5    *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial

6    where the record taken as a whole could not lead a rational trier of fact to find for the

7    nonmoving party. *Id.* at 587.

8        **B.    Discussion**

9        To succeed on a breach of contract claim, a plaintiff must prove: (1) the existence

10   of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

11   breach, and (4) the resulting damages to the plaintiff. *D'Arrigo Bros. of Cal. v. United*

12   *Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014).

13       In a prior order, the Court granted summary judgment in favor of Kaiser on each

14   element of its breach of contract counterclaim except for damages, leaving open

15   whether Kaiser could prove damages and an entitlement to specific performance. (Order

16   Re: MSJ 19, 21–22, ECF No. 81.) In the instant motion, Kaiser asserts monetary

17   damages satisfying the fourth and final element of a breach of contract cause of action

18   and now seeks injunctive relief. (Mot. 10–19.)

19           1.    The Deans' Opposition

20       Before considering the merits of Kaiser's motion, the Court first addresses the

21   Deans' arguments that are either long-rejected or unresponsive to the motion. First, the

22   Deans assert that Kaiser cannot restrict them "from using [Kaiser's] name or logo for

23   marketing purposes" because any such restriction would effectively add a term to the

24   settlement agreement. (Opp'n 6.)[2] This argument is wholly unresponsive to any issue

25   in the instant motion, which seeks only to demonstrate damages and an entitlement to

26   _____

27   [2] Pinpoint citations of the opposition brief refer to the page numbers generated in the
28   CM/ECF header.

5

1  injunctive relief on Kaiser's breach of contract counterclaim. (*See generally* Mot.) The
2  Court disregards the Deans' trademark arguments accordingly.

3     Second, the Deans argue that Kaiser cannot assert any damages because the fully
4  integrated settlement agreement extinguished Kaiser's breach of contract and trademark
5  claims and released the Deans of any liability for the use and sale of Kaiser patient data.
6  (Opp'n 7–9.) But the Court has already found the Deans in breach of the settlement
7  agreement in its prior summary judgment order, though it declined to "render[] a
8  decision as to whether [Kaiser] is entitled to recover fees as damages." (Order Re: MSJ
9  19.) And as Kaiser notes, the Deans' "release theory" has been held meritless
10 throughout this litigation. (Reply 8 (collecting decisions issued by this Court and the
11 Magistrate Judge).) The Court also disregards the Deans' release theory.

12    Third, the Deans maintain that the prior state court litigation precludes recovery
13 in this case, (Opp'n 9–10), but the Court has already rejected the Deans' preclusion
14 argument in its prior summary judgment order and declines to reconsider this argument
15 now, (Order Re: MSJ 14–15).

16    Accordingly, the Court will not consider these arguments, as either previously
17 rejected or irrelevant to any of the issues in the instant motion. To the extent the Deans
18 do raise factual or legal arguments germane to the resolution of this motion, the Court
19 will consider them in turn.

20          2.    Factual Disputes

21    Before considering whether Kaiser is entitled to summary judgment, the Court
22 addresses Kaiser's contention that the Deans have conceded the material facts for failing
23 to dispute them in a statement of genuine disputes. (*See generally id.*) Under Local Rule
24 56-3,

25          the Court may assume that the material facts as claimed and
26          adequately supported by the moving party are admitted to
27          exist without controversy except to the extent that such
28          material facts are (a) included in the "Statement of Genuine

6

1    Disputes" and (b) controverted by declaration or other written

2    evidence filed in opposition to the motion.

3  C.D. Cal. R. 56-3. While the Deans filed a statement of genuine disputes of material

4  fact and an accompanying declaration, the disputed facts are largely attempts to rehash

5  arguments this Court has already rejected in its prior orders, (*see* GIMF ¶¶ 3–4, 6, 8,

6  44), or insufficient to raise material factual disputes, (*see id.* ¶¶ 7, 12, 24, 26, 27, 31, 39,

7  58).

8    To the extent the Deans advance arguments the Court has already deemed

9  meritless, the Court will consider those material facts as conceded. C.D. Cal. R. 56-3.

10  To the extent the Deans raise some colorable argument raising material factual disputes,

11  (*see* GIMF ¶¶ 47, 50), or where the Deans have failed to controvert material facts by

12  way of their declaration and exhibits, (*see id.* ¶¶ 7, 12, 24, 26, 27, 31, 39, 58), the Court

13  will address any relevant issues below. But in sum, the Court finds no factual disputes

14  preventing the grant of summary judgment.[3]

15    3.    <u>Attorney's Fees</u>

16    To support the remaining element of its breach of contract claim, Kaiser submits

17  that it suffered damages in the form of attorney's fees. (Mot. 10–14.)[4] "In limited

18  circumstances, it is permissible for plaintiffs to recover attorney's fees as

19  [compensatory] damages." *Mai v. HKT Cal, Inc.*, 66 Cal. App. 5th 504, 512 (2021).

20  California courts "distinguish attorney's fees as damages from 'attorney's fees *qua*

21  attorney's fees.'" *Id.* (quoting *Third Eye Blind, Inc. v. Near N. Ent. Ins. Servs., LLC*,

22  127 Cal. App. 4th 1311, 1325 (2005)). Thus, attorney's fees are recoverable "in 'the

23  same way that medical fees would be part of the damages in a personal injury action,'"

24  _____

25  [3] Kaiser also request judicial notice of the transcripts of proceedings during the state

26  court litigation. Because the Court need not rely on these documents, the Court denies

27  Kaiser's requests for judicial notice. *See Japanese Vill., LLC v. Fed. Transit Admin.*,
843 F.3d 445, 454 (9th Cir. 2016).

28  [4] However, Kaiser no longer seeks monetary damages as relief for its claim. (Mot. 1.)

*id.* (quoting *Brandt v. Superior Ct.*, 37 Cal. 3d 813, 817 (1985)), but not as costs of bringing suit, *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal. App. 5th 1, 9 (2018). One such form of compensatory damages includes costs of "professional services to deal with the consequences of the defendant's unlawful action." *Mai*, 66 Cal. App. 5th at 519.

Kaiser brings three claims of attorney's fees as damages. First, Kaiser asserts legal fees incurred from bringing a UDRP action to challenge the Deans' registration of the <kphealthconnect.com> domain. (Mot. 12–13.) Second, Kaiser asserts fees for filing complaints with the California Attorney General's Office to take down the Deans' data broker registration to prevent the Deans' sale of Kaiser's members' healthcare information. (*Id.* at 13.) And third, Kaiser points to attorney's fees "expended in seeking to mitigate damages relating to disclosure of confidential materials." (*Id.* at 13–14.)

The Court considers whether, given the Deans' breach of the settlement agreement, Kaiser is entitled to summary judgment on each claim for damages. (Order Re: MSJ 15–18.)

a.    *UDRP Action*

As to Kaiser's first claim for damages, the Deans fail to dispute any material fact supporting attorney's fees incurred in bringing the UDRP action filed on October 15, 2021. In their complaint, the Deans admit to operating their business through the <kphealthconnect.com> domain name. (Compl. ¶ 18.) The Deans now concede that Kaiser then initiated a UDRP action before the NAF, which resulted in over $9,000 in fees incurred separate from pursuing the counterclaims in this litigation. (GIMF ¶¶ 23, 28–29.) While the Deans dispute (1) whether Kaiser fully briefed the NAF, (2) whether their website admitted to selling patient data, and (3) the reason Kaiser brought the UDRP action, each of these disputes is immaterial to determining whether Kaiser suffered actual damages from the Deans' improper use of Kaiser's patient data. (*Id.* ¶¶ 24, 26–27.) Rather, the Deans' arguments amount to little more than quibbling over immaterial factual details and reasserting long-rejected legal arguments. Accordingly,

8

1  the Court finds that Kaiser is entitled to summary judgment on damages related to
2  bringing the UDRP action, which are professional services to deal with the
3  consequences of the Deans' wrongful conduct. *See Mai*, 66 Cal. App. 5th at 512.

4             b.    *California Data Broker Registry and Mitigation*

5       As to Kaiser's second and third claims for damages, the Deans' failure to dispute
6  any of the material facts likewise entitles Kaiser to summary judgment. Per the Deans'
7  own statement of genuine disputes, Dreyer demanded that the Deans cease storing and
8  selling his Kaiser patient information. (*Id.* ¶ 41.) After the Deans refused, Kaiser's
9  counsel contacted the California Attorney General's Office to request a revocation of
10  the Deans' data broker registration, which was later granted. (*Id.* ¶¶ 41–47.) Kaiser
11  asserts that its efforts, which cost "several hundred dollars," led to the removal of the
12  Deans' data broker registration. (*Id.* ¶¶ 47–48.) The Deans argue that the California
13  Attorney General removed their registration because of the Deans' failure to pay the
14  registration fee, "which was due January of 2023." (*Id.* ¶ 47.) But as Kaiser notes, this
15  argument is nonsensical because the Deans' registration was revoked on August 11,
16  2022, six months before the fee was allegedly due. (*See id.*; Burns Decl. ¶ 4, ECF No.
17  97-8; Reply 4 n.2.) And in response to Kaiser's contention that its counsel sought to
18  mitigate damages related to the Deans' breach of the settlement agreement, the Deans
19  assert that they "did not breach the Settlement Agreement by offering to [sell] patients'
20  data." (GIMF ¶ 44.) However, this rejected argument cannot raise a fact dispute as to
21  any issue. (Order Re: MSJ 15–18.)

22       Accordingly, the Court finds that Kaiser is entitled to summary judgment as to
23  the damages element in that Kaiser incurred attorney's fees to remove the Deans' data
24  broker registration, which resulted from the Deans' operation of the
25  <kphealthconnect.com> website. *See Mai*, 66 Cal. App. 5th at 512. Kaiser has also
26  shown there is no triable issue as to damages arising from efforts to mitigate the Deans'
27  wrongful use of Kaiser patient data by preventing further breaches of the settlement
28  agreement. *See Brandon & Tibbs v. George Kevorkian Accounting Corp.*, 226 Cal. App.

3d 442, 462 (1990) ("[A]n injured party who makes a reasonable attempt to mitigate his damages is allowed to recover the cost of such reasonable mitigation effort as damages from the party who breached the contract . . . .").

### 4.    Nominal Damages

"When a breach of duty has caused no appreciable detriment to the party affected, [that party] may yet recover nominal damages." Cal. Civ. Code § 3360. Thus, "[a] plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him." *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959).

Kaiser argues, in the alternative, that it has demonstrated nominal damages. (Mot. 15.) But because the Court finds that Kaiser suffered damages in the form of attorney's fees, the Court need not consider Kaiser's claim of nominal damages.

### 5.    Injunctive Relief

#### a.    *The Proper Form of Relief*

Before considering the propriety of injunctive relief, the Court notes that Kaiser's requests for specific performance and a permanent injunction seek similar relief: to prevent the Deans from disclosing or otherwise using any more Kaiser patient data in violation of the settlement agreement. (*Id.* at 16–17 ("Kaiser seeks an order requiring the Deans not to disclose the patient information they pledged to protect."); *see also id.* at 18 ("Kaiser further respectfully requests an award of a permanent injunction directing the Deans to not disclose, sell, offer for sale, or otherwise use Kaiser's patients' medical data."); *see also* Kaiser Counterclaim ¶¶ 75, 86, ECF No. 22.)

Although there is no meaningful dispute as to the propriety of issuing either form of injunctive relief, (*see generally* Opp'n), the Court finds *Pure Wafer Inc. v. City of Prescott* instructive. 275 F. Supp. 3d 1173 (D. Ariz. 2017). The *Pure Wafer* court considered in relevant part whether to order the defendant "to comply with specific portions of the Development Agreement." *Id.* at 1175. The plaintiff there requested both specific performance and a permanent injunction, while the defendant argued "that only

10

specific performance [was] an appropriate remedy." *Id.* at 1176. That court disagreed with both parties, instead "treat[ing] Pure Wafer's request as one for a permanent injunction subject to [the] four-factor test" propounded in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *Pure Wafer*, 275 F. Supp. 3d at 1176. While the *Pure Wafer* court considered a breach of contract claim under Arizona law, this Court similarly concludes that any distinction here between specific performance and a permanent injunction "is legally irrelevant" because both requests seek to limit the Deans' use of Kaiser patient data. *Id.*; (Mot. 16–18). As in *Pure Wafer*, the Court will examine the propriety of permanent injunctive relief rather than specific performance, 275 F. Supp. 3d at 1176, except under California state law as opposed to federal law, *see Sullivan ex rel. Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 956 (E.D. Cal. 1990) ("Where federal courts are called upon to adjudicate a claim predicated on state law, . . . the ultimate issue of whether injunctive relief may issue must be decided under applicable state law."); *Nomadix, Inc. v. Guest-Tek Interactive Ent., Ltd.*, No. 2:19-cv-04980-AB-FFM, 2020 WL 1939826, at *1 (C.D. Cal. Apr. 22, 2020) ("Because Nomadix seeks a permanent injunction to enforce its meritorious California breach of contract claim, California law governs whether a permanent injunction should issue.").

### b. *Permanent Injunction*

A plaintiff may be granted a permanent injunction to prevent the breach of an obligation where: (1) pecuniary compensation would not afford adequate relief, (2) it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, (3) the restraint is necessary to prevent a multiplicity of judicial proceedings, or (4) the obligation arises from a trust. Cal. Civ. Code § 3422. The Court understands Kaiser's motion as asserting only the first prong of section 3422. (*See* Mot. 19 (arguing that "[t]here is no adequate remedy at law").)

Kaiser has demonstrated that a legal, monetary remedy for the Deans' breach of the settlement agreement would be inadequate. For a legal remedy to be adequate, "[i]t

11

must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future." *Hicks v. Clayton*, 67 Cal. App. 3d 251, 264 (1977) (quoting *Quist v. Empire Water Co.*, 204 Cal. 646, 653 (1928)). First and foremost, the Deans firmly assert that they are "financially unable" to pay the Court-ordered attorney's fees in this case, which strongly suggests the inadequacy of a legal remedy at this time. (GIMF ¶ 55); *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("Damages are no remedy at all if they cannot be collected . . . ." (internal quotation marks omitted)); *Hicks*, 67 Cal. App. 3d at 264. Further, the Deans admit that it is impossible to ascertain the true extent of damages at the present time given that Kaiser cannot forecast potential civil penalties for violations of HIPAA and CMIA or costs in defending any such violations. (GIMF ¶¶ 56–57.) And while the Deans indicate that in 2017, federal prosecutors declined to issue any criminal charges against the Deans for allegedly unlawful business practices, (Opp'n 10), it remains to be seen if the U.S. Attorney's Office will investigate a potential HIPAA violation here, which the Deans concede could damage "Kaiser's reputation and goodwill," (GIMF ¶ 58 (disputing only whether their conduct is criminal). The Deans admit that Kaiser's reputational damages are difficult to monetarily calculate. (*Id.*) Based on these conceded facts, the Court finds that a permanent injunction is appropriate to enjoin the Deans from disclosing, selling, offering for sale, or otherwise using Kaiser's patient's data.

In sum, the Court grants in significant part Kaiser's motion for summary judgment. The Court finds that Kaiser is entitled to summary judgment on the damages element of its breach of contract case and that Kaiser is entitled to a permanent injunction against the Deans.

## III.    MOTION TO ENFORCE AWARD OF ATTORNEY'S FEES

Kaiser[5] also seeks a court order to enforce the parties' stipulated order, which

---

[5] This motion is brought by Kaiser Foundation Health Plan, Inc. and Kaiser Foundation

1  requires the Deans to pay attorney's fees of $50,704.89 Kaiser incurred for defending

2  their "frivolous litigation." (MTE 10–11; *see* Order on Stip., ECF No. 34.) Kaiser also

3  requests an order holding the Deans in contempt for failing to pay the fee award. (MTE

4  10–11.) And if the Deans continue to assert their inability to pay any attorney's fees,

5  Kaiser additionally asks the Court to require the Deans to submit financial

6  documentation confirming the number and location of their assets. (*Id.* at 12–14.)

7      In support of its motion for enforcement of the fee award and for a finding of

8  contempt, Kaiser asks the Court to apply *Sparrow LLC v. Lora*, No. CV-14-1188-MWF

9  (JCx), 2015 WL 12778337 (C.D. Cal. Apr. 6, 2015). (Mot. 11.) The *Sparrow* court

10  considered whether to issue sanctions against defendants who sought to avoid paying

11  attorney's fees under the California anti-SLAPP statute due to an inability to pay the

12  fee award. 2015 WL 12778337, at *2–3. Relevant to here, that court declined to find

13  the defendants in contempt, reasoning in part that the defendants had provided at least

14  some evidence of an inability to pay. *Id.* at *3–4. But given some of the deficiencies in

15  the defendants' proof, the *Sparrow* court ordered the defendants to submit additional

16  financial documentation, *id.* at *4, similar to what Kaiser seeks in its own motion, (Mot.

17  12–13).

18      "Federal courts have both inherent and statutory authority to punish contempt and

19  to coerce compliance with their orders." *Sparrow*, 2015 WL 12778337, at *3 (citing

20  *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831–32 (1994), and 18 U.S.C. § 401(3)).

21  An inability to comply with a judicial order is a defense to a charge of contempt but

22  must be proven categorically and in detail. *See id.* (citing *United States v. Rylander*, 460

23  U.S. 752, 757 (1983), and *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).

24      According to Kaiser, the Deans relied on their application to proceed in forma

25  pauperis as supporting their inability to pay the fee award. (MTE 10.) While the Deans'

26  _____

27

28  Hospitals, which both were parties to the Deans' action. For ease of reference, the Court
refers to both parties collectively as Kaiser.

13

proffer is likely insufficient, one of Kaiser's primary arguments in support of injunctive relief was the Deans' purported inability to pay any damages. (Mot. 17–19; SUF ¶ 55, ECF No. 97-2.) Indeed, the Court accepted the Deans' inability to pay as a material fact supporting the inadequacy of a legal remedy for the Deans' breach of the settlement agreement. It would be a peculiar result to now hold that the Deans have not demonstrated an inability to pay the Court-awarded fees, directly contradicting the Court's ruling on summary judgment and the facts both parties conceded. Accordingly, the Court declines to find the Deans in contempt or otherwise require them to proffer documentation supporting their financial statuses at this time. This conclusion does not preclude Kaiser from seeking such documentation in judgment enforcement proceedings.

## IV.    CONCLUSION

For the reasons stated above, the Court grants in part Kaiser's motion for summary judgment. Kaiser is entitled to summary judgment on the damages element of its breach of contract claim. The Court will issue a permanent injunction as outlined in its final judgment. The Court declines to consider whether Kaiser has demonstrated the propriety of nominal damages or is entitled to specific performance.

Kaiser's motion to enforce the award of attorney's fees and to find the Deans in contempt is denied without prejudice to Kaiser's continued attempts to collect the fee award.

**IT IS SO ORDERED.**

Dated: May 31, 2023

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

14