SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL PIETRINI, Cal. Bar No. 138335
PAUL BOST, Cal. Bar No. 261531
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone:  310.228.3700
Facsimile:  310.228.3701
Email        JPietrini@sheppardmullin.com
             PBost@sheppardmullin.com
JOHN F. BURNS, Cal. Bar No. 290523
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone:  619.338.6588
Facsimile:  619.515.4182
Email:       JBurns@sheppardmullin.com

Attorneys for Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| Stephan Dean and Liza Dean, Individually and DBA SureFile Filing Systems,<br><br>  Plaintiffs,<br><br>v.<br><br>Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Does 1-50 Inclusive,<br><br>  Defendants. | Case No. 5:25-cv-02938-JGB-DTB<br>Hon. Jesus G. Bernal<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KAISER FOUNDATION HEALTH PLAN INC.'S AND KAISER FOUNDATION HOSPITALS' MOTION FOR AN ORDER: (1) DECLARING PLAINTIFFS VEXATIOUS LITIGANTS; AND (2) IMPOSING PRE-FILING CONDITIONS**<br><br>*[Filed Concurrently With Notice of Motion, Declaration of John Burns, Exhibits, and Proposed Order]*<br><br>Hearing:<br>Date:         December 8, 2025<br>Time:         9:00 a.m.<br>Courtroom: 1 |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1
I.    INTRODUCTION .......................................................................................... 1
II.   FACTUAL BACKGROUND ......................................................................... 1
      A.    Background. ........................................................................................ 1
      B.    Plaintiffs' Websites. ............................................................................ 2
      C.    Plaintiffs' Data Broker Registration. .................................................. 4
      D.    Plaintiffs' Continuing Misuse Of Patient Data. ................................. 4
      E.    The Court's Orders Rejected Plaintiffs' Arguments ........................... 5
      F.    This Suit Is A Copy and Paste of Already-Rejected Arguments. ...... 8
      G.    Plaintiffs' Purpose Is To Harass Kaiser Into Paying Them. .............. 8
      H.    Plaintiffs' Other Lawsuits Against Kaiser. ........................................ 9
III.  PLAINTIFFS ARE VEXATIOUS LITIGANTS AND THE COURT
      SHOULD ISSUE A PRE-FILING ORDER. ............................................... 10
      A.    Notice And Opportunity To Be Heard. ............................................ 11
      B.    Compilation Of Adequate Records For Review. ............................. 11
      C.    Frivolousness Or Harassment. .......................................................... 12
            1.    Frivolousness. ......................................................................... 12
            2.    Harassment. ............................................................................. 13
      D.    Pre-Filing Order. ............................................................................... 14
IV.   CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*
    No. CV 10-03738, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) .................. 3, 4

*Azam v. Fed. Deposit Ins. Corp.*
    No. 15-cv-3930, 2016 WL 4150762 (C.D. Cal. July 19, 2016) ................... 14, 15

*Clark v. Wells Fargo Bank*
    No. 6:20-CV-00253-AA, 2020 WL 2301312 (D. Or. May 8, 2020) ................. 15

*Cox-Lyle, LLC v. Dillman Equip., Inc.*
    No. 2:08-cv-284, 2009 WL 10693343 (D. Nev. Oct. 9, 2009) .......................... 15

*Credit Data of Arizona, Inc. v. State of Ariz.*
    602 F.2d 195 (9th Cir. 1979) ................................................................................ 9

*De Long v. Hennessey*
    912 F.2d 1144 (9th Cir. 1990) ..................................................... 10, 11, 12, 13

*Dean v. Kaiser Found. Health Plan, Inc.*
    22-cv-278, 2023 WL 3551811 (C.D. Cal. Mar. 14, 2023) ............................. 7, 12

*Dean v. Kaiser Found. Health Plan, Inc.*
    562 F. Supp. 3d 928 (C.D. Cal. 2022) ........................................................ 5, 6, 12

*Dean v. Kaiser Found. Health Plan, Inc.*
    No. 23-55580, 2024 WL 2828826 (9th Cir. Apr. 1, 2024) ............................. 8, 13

*Dean v. Kaiser Found. Health Plan, Inc.*
    No. 5:22-cv-278, 2022 WL 1155113 (C.D. Cal. Apr. 19, 2022) .................... 6, 12

*Dean v. Kaiser Found. Health Plan, Inc.*
    No. 5:22-cv-278, 2022 WL 18938253 (C.D. Cal. Nov. 22, 2022) .... 2, 6, 7, 8, 12

*Dean v. Kaiser Found. Health Plan, Inc.*
    No. 5:22-cv-278, 2023 WL 8261408 (C.D. Cal. May 31, 2023) ....... 2, 3, 7, 9, 12

*Dean v. Kaiser Found. Health Plan*
    No. 5:22-cv-278, 2023 WL 4829301 (C.D. Cal. June 29, 2023) ........................ 7

*Foley v. Valdes*
   No. 2:17-cv-2783, 2019 WL 1111196 (D. Nev. Mar. 8, 2019) .......................... 12

*Havensight Cap. v. Facebook, Inc.*
   No. 2:17-cv-6727, 2018 WL 6356080 (C.D. Cal. Oct. 2, 2018) .......................... 8

*Microsoft Corp. v. Motorola, Inc.*
   696 F.3d 872 (9th Cir. 2012) ................................................................ 10

*Miletak v. AT&T Servs., Inc.*
   No. 12-CV-05326, 2021 WL 9860785 (N.D. Cal. Mar. 4, 2021) ...................... 11

*Molski v. Evergreen Dynasty Corp.*
   500 F.3d 1047 (9th Cir. 2007) ......................................................... 13, 14

*Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*
   210 F.3d 1112 (9th Cir. 2000) ................................................................ 11

*Ringgold-Lockhart v. Cty. of Los Angeles*
   761 F.3d 1057 (9th Cir. 2014) ................................................................ 11

*Smith v. Spokane Cnty. Sherfiff Off.*
   No. 2:24-cv-27, 2024 WL 3034085 (E.D. Wash. June 17, 2024) ...................... 12

*Travelers Com. Ins. v. Hall*
   No. 22-cv-8234, 2023 WL 4291843 (C.D. Cal. Mar. 15, 2023) ........................ 13

Statutes

Cal. Civ. Code § 1798.105 ................................................................................. 5

Cal. Civ. Code § 1798.120 ................................................................................. 5

Other Authorities

45 C.F.R. § 164.504(e)(2)(ii)(J) ........................................................................ 2

Black's Law Dictionary 1701 (9th ed. 2009) .................................................... 10

Fed. R. Evid. 201(b)(1) ..................................................................................... 5

Local Rule 83-8.2 ............................................................................................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") move for an order declaring plaintiffs Stephan Dean and Liza Dean, individually and doing business as SureFile Filing Systems ("Plaintiffs") vexatious litigants, imposing pre-filing conditions on them, and directing them to communicate with Kaiser through counsel.

## I.    INTRODUCTION

This lawsuit is the latest in Plaintiffs' serial effort to harass Kaiser into making nuisance payments. Plaintiffs claim that they gained the affirmative right to use Kaiser's trademarks because the parties' 2011 settlement agreement did not expressly preclude them from doing so and included a release. This Court has repeatedly rejected these identical theories in prior litigation between the parties. In fact, the Court has ordered Plaintiffs to pay Kaiser more than $50,000 in attorney's fees for pursuing the same theories—an award that Plaintiffs have still not paid. The Ninth Circuit rejected Plaintiffs' appeal in that lawsuit against Kaiser, describing it as "frivolous."

Undeterred, Plaintiffs copied and pasted the same already-rejected arguments into their complaint and sued Kaiser again. It is apparent that no matter how clear the Court is in rejecting Plaintiffs' frivolous arguments, Plaintiffs will continue to pursue them to try to get Kaiser to make nuisance payments. Kaiser therefore asks this Court to issue an order declaring Plaintiffs vexatious litigants and imposing pre-filing conditions on any future filing by Plaintiffs. Absent such an order, Plaintiffs will continue to abuse the judicial processes to extract undue payments from Kaiser.

## II.    FACTUAL BACKGROUND

### A.    Background.

Plaintiffs are former medical record scanning and storage contractors of Kaiser. *Dean v. Kaiser Found. Health Plan, Inc.*, No. 5:22-cv-278, 2023 WL 8261408, at *1 (C.D. Cal. May 31, 2023). Plaintiffs improperly kept patient

information when their contracts with Kaiser ended more than a decade ago. *Id*. at *2; 45 C.F.R. § 164.504(e)(2)(ii)(J) (requiring business associates to "return or destroy all protected health information" once a business associate agreement terminates). Plaintiffs have since focused their efforts on trying to extract nuisance payments from Kaiser.

In 2011, the parties entered into a settlement agreement. *Dean*, No. 5:22-cv-278, 2023 WL 8261408, at *1; *see also* Dkt. 1-1, Exh 2. Under the settlement agreement, Plaintiffs agreed to keep the patient information in the records confidential. *Dean*, No. 5:22-cv-278, 2023 WL 8261408, at *1; Dkt. 1-1, Exh 2 ¶ 13. The settlement agreement is entirely devoid of any reference to Kaiser's trademarks, much less any right granted to Plaintiffs to use Kaiser's trademarks. The settlement agreement—which ultimately, was a futile attempt by Kaiser to buy peace after Plaintiffs' initial attempt to extract payment from Kaiser—did not end Plaintiffs' pursuit of nuisance settlements. Rather, it was merely a harbinger of things to come.

### B. Plaintiffs' Websites.

In 2021, Plaintiffs registered the domain name <kphealthconnectusa.com>, which is a registered trademark of Kaiser. *Dean v. Kaiser Found. Health Plan, Inc.*, No. 5:22-cv-278, 2022 WL 18938253, at *1 (C.D. Cal. Nov. 22, 2022); *Dean*, No. 5:22-cv-278, 2023 WL 8261408, at *2. Despite their promises to maintain the confidentiality of patient information, Plaintiffs launched a website on the domain name where they advertised "access to thousands of current and past Kaiser Permanente members and patients." *Dean*, No. 5:22-cv-278, 2023 WL 8261408, at *2. Plaintiffs offered to provide lists containing patients' names, medical record numbers, dates of birth, and dates when the patients were admitted into a specific facility. *Id*. The website was designed to confuse visitors into believing it was operated or authorized by Kaiser. It prominently displayed Kaiser's trademarks and

listed Kaiser's actual phone number and website domain name as a means by which individuals could "opt out" of having their information disclosed to third parties. *Id.*

The website also included a favorable client review by a purported client named "Cesar J.," who described the "wonderful experience" and "options" that Plaintiffs' business provided to him. Declaration of John Burns ("Burns Decl.") ¶ 3; Exh. B. It later turned out that there was no "Cesar J." and that Plaintiffs simply invented him and the quotes they attributed to him as a tactic for settlement leverage. *Id.* ¶ 4; Exh. C. Plaintiffs, through counsel, then tried to use their website to convince Kaiser to again pay them, telling Kaiser that it could buy Plaintiffs' "computers and/or his business" for $1,000,000 or more, i.e., "[t]he six-figure ship left port several years ago." *Id.* ¶ 5; Exh. D.

Rather than give in to Plaintiffs' demand, Kaiser challenged Plaintiffs' <kphealthconnectusa.com> domain name pursuant to the Internet Corporation for Assigned Names and Numbers' ("ICANN") Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), a streamlined and relatively inexpensive mechanism to have a domain name registration cancelled or transferred. *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738, 2015 WL 5311085, at *8 (C.D. Cal. Sept. 10, 2015). Plaintiffs argued to the UDRP panel that Kaiser granted them the right to use its trademarks because the settlement agreement did not preclude them from doing so. (Burns Decl. ¶ 6; Exh. E at 6.) The panel rejected this argument. *Id.* ("[T]he deletion of an express denial that a party may use an owner's mark and logo . . . is not magically transformed into an affirmative authorization that it has any right to do so."). Plaintiffs also argued that the settlement agreement's release precluded the UDRP action, which argument the panel also rejected. *Id.* at 8. The UDRP panel recognized Plaintiffs' conduct for what it was—an attempt to "extort[] a benefit from" Kaiser—and ordered that the domain name be transferred to Kaiser. *Id.* at 7.

Undeterred by Kaiser's successful UDRP action, Plaintiffs launched a second website under the domain name <patientslist.org> with the *same* violative and infringing content used on <kphealthconnectusa.com>. (Burns Decl. ¶ 7; Exh. F.) Plaintiffs then sued Kaiser in December 2021 for: (1) breach of contract, (2) declaratory relief, (3) permanent injunction, and (4) interference with prospective business advantage ("2021 Action"). *Id.* ¶ 8; Exh. G. Plaintiffs' claims were all based on the theories that the settlement agreement granted them the right to use Kaiser's trademarks because it did not expressly preclude them from doing so and because it contained a release—i.e., the same theories that the UDRP rejected. *Id*. ¶¶ 11, 12, 15, 17–25, 27, 28, 31–34, 37–39, 42–47.

### C. Plaintiffs' Data Broker Registration.

In connection with their offer to sell patient data through their websites, Plaintiffs also registered with the State of California as a data broker on the California Data Broker Registry. (Burns Decl. ¶ 9; Exh. H.) The business name that Plaintiffs chose for their data broker business was the same infringing one they used on their websites—KP Healthconnect. *Id*. Plaintiffs listed the <patientslist.org> domain name as their data broker business website. *Id.* And as they did on their websites, Plaintiffs listed Kaiser's actual phone number and website domain name as a means by which individuals could "opt out" of having their information disclosed to third parties, furthering their insinuation that they were acting on behalf or with the authorization of Kaiser. (Burns Decl. ¶ 10; Exh. I.)

### D. Plaintiffs' Continuing Misuse Of Patient Data.

Soon after suing Kaiser, Plaintiffs again threatened to sell Kaiser patient information. Plaintiffs' then-counsel stated that Plaintiffs had "a customer who will purchase information of 100 West LA Kaiser patients on an ongoing basis." (Burns Decl. ¶ 11; Exh. J.) It later became clear in discovery that there was no such

customer. (Burns Decl. ¶ 11; Exh. K.) Rather, this was another invention by Plaintiffs to try to create settlement leverage.

Plaintiffs also continued to misuse their data broker registration to harass Kaiser. In August 2022, a California resident named Ross Dreyer emailed Plaintiffs and asked that they: (i) not sell his information; and (ii) delete all information that Plaintiffs have about him. (Burns Decl. ¶ 12; Exh. L.) Mr. Dreyer made this request under California law, which permits a consumer to request a data broker to delete any personal information it has about the consumer and prohibit the data broker from selling the consumer's information. Cal. Civ. Code §§ 1798.105, 1798.120. Plaintiffs responded that they would <u>not</u> honor Mr. Dreyer's request, and copied Kaiser's counsel. (Burns Decl. ¶ 12; Exh. L.)

### E. The Court's Orders Rejected Plaintiffs' Arguments.

The Court thoroughly rejected Plaintiffs' arguments and dismissed Plaintiffs' claims against Kaiser, granted Kaiser's motion to strike, and awarded Kaiser $50,804.89 in fees that Kaiser incurred in connection with its motion to strike. *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 936 (C.D. Cal. 2022); Case No. 5:22-cv-278, Dkt. No. 34 (Apr. 12, 2022).[1]

In its order granting Kaiser's motions to dismiss and to strike, the Court rejected Plaintiffs' theory that the settlement agreement gave Plaintiffs any right to use Kaiser's trademark, explaining that "Plaintiffs failed to identify express promises or legal duties in the settlement agreement Defendants breached by bringing the [UDRP action], taking Plaintiffs' domain name, and continuing to assert Plaintiffs have no right to use Defendants' marks" and that "[h]aving

---

[1] Kaiser requests judicial notice of the documents in Case No. 5:22-cv-278 of the Central District of California. Fed. R. Evid. 201(b)(1) (allowing court to take judicial notice of documents that are not subject to reasonable dispute and that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

conducted an independent review of the agreement, the Court has discovered no express promise or duty forbidding [Kaiser] from engaging in the alleged conduct." *Dean*, 562 F. Supp. 3d at 935.

Kaiser filed counterclaims against Plaintiffs for trademark infringement and related claims and breach of contract based on their second infringing website, <patientslist.org>, and the Court ruled for Kaiser on the counterclaims. The Court entered a preliminary injunction for Kaiser on its counterclaims, enjoining Plaintiffs from using Kaiser's trademarks or offering to sell Kaiser patient data. *Dean v. Kaiser Found. Health Plan, Inc.*, No. 5:22-cv-278, 2022 WL 1155113, at *2 (C.D. Cal. Apr. 19, 2022). Then the Court granted partial summary judgment in Kaiser's favor on Kaiser's causes of action against Plaintiffs. *Dean*, 2022 WL 18938253, at *11.

Plaintiffs again defended against Kaiser's counterclaims by arguing that they had the right to use Kaiser's trademarks because the settlement agreement did not preclude them from doing so and based on the settlement agreement's release. *Id.* at *3. The Court rejected these arguments as "incorrect both as a conclusion of law and as a matter of logic" and explained that Plaintiffs "urge an interpretation of the settlement agreement to which it is not reasonably susceptible." *Id.* at *3, *4. The Court explained that "where a party has no right to engage in a course of conduct, a written contract's failure to disclaim the party's authority to engage in that conduct is not a concession (by omission or otherwise) that such conduct is authorized." *Id.* at *5. The Court also rejected Plaintiffs' release argument, explaining that "there is no reasonable indication" that trademark issues were released. *Id.* at *4.

Like here, Plaintiffs claimed that extrinsic evidence of the removal of a trademark provision from a draft settlement agreement supported their arguments, but the Court explained that Plaintiffs were wrong: "The extrinsic evidence shows that, at most, [Kaiser] merely agreed to a contract that did not expressly prevent [Plaintiffs] from using [Kaiser's] 'trade names, service marks, or logo,' something

they had no right to do in the first place." *Id.* at *5. Having rejected Plaintiffs' defenses, the Court granted partial summary judgment, enjoined Plaintiffs' use of Kaiser's trademarks and disclosure of Kaiser patient data, and reserved judgment on the issue of damages. *Id.* at *11.

Despite the UDRP panel's and the Court's repeated rejection of Plaintiffs' theories, Plaintiffs continued to cling to them. Plaintiffs refused to respond to discovery related to damages based on the objection that "the 2011 settlement agreement . . . released all claims including the trademark claims at issue in the instant litigation." *Dean v. Kaiser Found. Health Plan, Inc.*, 22-cv-278, 2023 WL 3551811, at *4 (C.D. Cal. Mar. 14, 2023). The Court again dismissed this argument, explaining that the Court had "already rejected" it. *Id.*

Kaiser then moved for summary judgment on the remaining issue of damages on its breach of contract counterclaim. Plaintiffs again opposed the motion based on the same arguments, which the Court again dismissed as "long-rejected," emphasizing that their release theory had been "held meritless throughout this litigation." *Dean*, No. 5:22-cv-278, 2023 WL 8261408, at *3. The Court granted summary judgment in Kaiser's favor and issued judgment in Kaiser's favor. *Id.* at *7; Case No. 5:22-cv-278, Dkt. No. 106 (May 31, 2023). Days later, Plaintiffs revived their dialogue with Mr. Dreyer from several months earlier, again telling him that they would <u>not</u> honor his requests to delete any information they have on him or refrain from selling his information. (Burns Decl. ¶ 12; Exh. L.)

Plaintiffs then moved for leave to appeal in forma pauperis to challenge the Court's anti-SLAPP order, which motion the Court denied because Plaintiffs' arguments were "frivolous," "not taken in good faith," and without "arguable basis in fact or law." *Dean v. Kaiser Found. Health Plan*, No. 5:22-cv-278, 2023 WL 4829301, at *1–2 (C.D. Cal. June 29, 2023). On appeal, Plaintiffs again argued that "Kaiser deliberately bargained away the right to challenge [Plaintiffs'] use of the trademarks" because there was no term in the settlement agreement precluding

Plaintiffs from using the trademarks. (Burns Decl. ¶ 14; Exh. S at 2.) The Ninth Circuit came to the same conclusion, dismissing Plaintiffs' appeal and explaining that "we conclude that this appeal is frivolous." *Dean v. Kaiser Found. Health Plan, Inc.*, No. 23-55580, 2024 WL 2828826, at *1 (9th Cir. Apr. 1, 2024).

### F. This Suit Is A Copy and Paste of Already-Rejected Arguments.

Plaintiffs' complaint in this lawsuit here is a copy and paste of their already-rejected theories. Through this lawsuit, Plaintiffs assert breach of contract and declaratory relief causes of action that are substantively identical to those that the Court rejected in the 2021 Action. Plaintiffs again claim that they gained the contractual right to use Kaiser's trademarks because the settlement agreement did not preclude them from doing so. (Dkt. 1-1, Compl. ¶¶ 8, 9, 11, 12.) Plaintiffs again claim that Kaiser released any claim that Plaintiffs were not permitted to use Kaiser's trademarks. *Id.* ¶¶ 10, 13, 19. Plaintiffs again claim that Kaiser breached the contract by submitting a UDRP complaint challenging Plaintiffs' use of its trademarks and again seek declaratory relief regarding their use of Kaiser's trademarks. *Id.* ¶¶ 13, 39, 40. The allegations of extrinsic communications regarding the formation of the settlement agreement are the same as those the Court already explained do not support Plaintiffs' claims. *Dean*, 2022 WL 18938253, at *5.

### G. Plaintiffs' Purpose Is To Harass Kaiser Into Paying Them.

Plaintiffs' former counsel explained that Plaintiffs' purpose in suing Kaiser is to get Kaiser to again pay them settlement money. Case No. 5:22-cv-278-MCS-KK, Dkt. No. 49, ¶ 9 (May 11, 2022). Indeed, he acknowledged that absent settlement, there was "little chance" Plaintiffs would recover under their claims in the 2021 Action, which are copied and pasted into their complaint here. *Id.*

Consistent with this explanation by Plaintiffs' former counsel, Plaintiffs have barraged Kaiser with settlement demands, particularly when they take any action that might impose a burden on Kaiser. (Burns Decl. ¶ 16; Exh. V); *Havensight Cap.*

*v. Facebook, Inc.*, No. 2:17-cv-6727, 2018 WL 6356080, at *2 (C.D. Cal. Oct. 2, 2018) (settlement communications admissible in vexatious litigant motion because they were not being introduced for the purpose of proving liability for the claims that were the subject of the settlement communications, but to show improper purpose behind settlement demands). Plaintiffs have made *hundreds* of unsolicited settlement demands over the past three and a half years. (Burns Decl. ¶ 16; Exh. V at 99–113.) Even when courts issue orders that are conclusively in Kaiser's favor—like the Court's summary judgment orders and the Ninth Circuit's dismissal order—Plaintiffs promptly respond by sending settlement demands to Kaiser with nonsensical interpretations of the Court's rulings or reiterations of arguments expressly rejected by the Court, thereby prolonging and multiplying litigation on already decided issues. *Id.* ¶ 16, Exh. V at 50–73, 82–81, 99–113.

Plaintiffs have also repeatedly emailed Kaiser employees directly in connection with this case in yet another transparent attempt to harass Kaiser. *Id.* ¶ 17, Exh. W.) Kaiser's counsel has on several occasions told Plaintiffs that Kaiser is represented by counsel and that Plaintiffs should not contact Kaiser directly. *Id.* ¶ 17, Exh. X. Plaintiffs nonetheless ignore this direction.

Kaiser is a nonprofit public benefit corporation, and as such, the litigation costs that Plaintiffs' harassment tactics improperly impose on Kaiser are all ultimately shouldered by Kaiser's members. *Dean*, No. 5:22-CV-00278, 2023 WL 8261408, at *1; *Credit Data of Arizona, Inc. v. State of Ariz.*, 602 F.2d 195, 198 (9th Cir. 1979) (non-profit's expenses are borne by its members). Moreover, Plaintiffs have not paid any amount of the $50,804.89 fee that the Court ordered Plaintiffs to pay Kaiser, and claim that they cannot do so. (Burns Decl. ¶ 18.)

**H.     Plaintiffs' Other Lawsuits Against Kaiser.**

In addition to this lawsuit and the lawsuits discussed above, Plaintiffs have initiated at least three other lawsuits against Kaiser, two of which Plaintiffs voluntarily dismissed after filing. (Burns Decl. ¶ 20, Exh. Z.) These lawsuits also

required Kaiser to spend money on legal fees that it should not have been required to spend. (Burns Decl. ¶ 20.)

## III. PLAINTIFFS ARE VEXATIOUS LITIGANTS AND THE COURT SHOULD ISSUE A PRE-FILING ORDER.

Local Rule 83-8.2 provides that the Court may declare a party to be a vexatious litigant:

> On its own motion or on motion of a party, after opportunity to be heard, the Court may, at any time, order a party to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant, and may make such other orders as are appropriate to control the conduct of a vexatious litigant. Such orders may include, without limitations, a directive to the Clerk not to accept further filings from the litigant without payment of normal filing fees and/or without written authorization from a judge of the Court or a Magistrate Judge, issued upon such showing of the evidence supporting the claim as the judge may require.

C.D. Cal. R. 83-8.2. "Any order issued under [Local Rule] 83-8.2 shall be based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken." *Id*. In the Ninth Circuit, "vexatious" means "without reasonable or probable cause or excuse; harassing; annoying." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 886 (9th Cir. 2012) (quoting Black's Law Dictionary 1701 (9th ed. 2009)).

The Ninth Circuit set forth the following requirements for entering pre-filing orders against vexatious litigants: (1) the litigant must be given notice and opportunity to be heard before the order is entered; (2) the court must compile an adequate record for review; (3) the court must make substantive findings that the litigant's filings are frivolous or harassing; and (4) the pre-filing order may not be overly broad, and must be "narrowly tailored to closely fit the specific vice encountered." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).

Under the four *De Long* factors, a pre-filing order is appropriate because Plaintiffs have abused the Court's processes and are likely to continue such abuse unless protective measures are taken.

### A. Notice And Opportunity To Be Heard.

The first factor simply requires that the litigant be given an opportunity to oppose the order before it is entered. *De Long*, 912 F.2d at 1147. It does not require an in-person hearing or oral argument. *See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding that "an opportunity to be heard does not require an oral or evidentiary hearing on the issue"). Counsel for Kaiser met and conferred with Plaintiffs about this motion, and Plaintiffs will receive notice of this motion and have the opportunity to respond to it. (Burns Decl. ¶ 20.) As a result, the first factor is satisfied.

### B. Compilation Of Adequate Records For Review.

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long*, 912 F.2d at 1147. "At the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive." *Id*. The second *De Long* factor, thus, requires the Court to compile a list of filings by Plaintiffs that serve as the basis for a finding that they are vexatious litigants. *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1063–64 (9th Cir. 2014) (finding the second factor satisfied when the district court discussed the litigation history leading to its order). Plaintiffs' arguments underlying their current lawsuit have already been argued and rejected in countless prior filings and orders in the 2021 Action. For convenience, Exhibit Y is a chart that summarizes the pertinent docket entries from the 2021 Action. (Burns Decl. ¶ 19; Exh. Y.)

Case law confirms that this record warrants entry of an order finding Plaintiffs to be vexatious litigants. Indeed, courts will commonly enter such orders when a plaintiff brings a second lawsuit that is identical to a prior lawsuit that was

rejected on the merits and when prior monetary penalties have proved ineffective to curb the plaintiff's conduct. *See, e.g., Miletak v. AT&T Servs., Inc.*, No. 12-CV-05326, 2021 WL 9860785, at *4 n.4 (N.D. Cal. Mar. 4, 2021) (entering order finding plaintiff a vexatious litigant and entering pre-filing order in second lawsuit and explaining that doing so was necessary because a prior monetary award had "proven to be ineffective"); *Smith v. Spokane Cnty. Sherfiff Off.*, No. 2:24-cv-27, 2024 WL 3034085, at *1 (E.D. Wash. June 17, 2024) (entering order finding plaintiff a vexatious litigant and entering pre-filing order in second lawsuit).

Moreover, Courts hold that, even when the number of cases filed by a plaintiff is low, harassing conduct by the plaintiff will nonetheless support an order declaring litigants vexatious. *Foley v. Valdes*, No. 2:17-cv-2783, 2019 WL 1111196, at *4 (D. Nev. Mar. 8, 2019) (rejecting argument that vexatious litigant order not warranted because plaintiff filed a low number of cases and explaining that order was warranted based not just on the number of cases, but also on the "pattern of harassment in the allegations" and "rancorous motivation in [the plaintiff's] filings," demonstrating that the plaintiff's intent was to harass the defendants). Each of these circumstances are present here. Plaintiffs' claims here are the same ones that the Court rejected as "frivolous" in the 2021 Action, Plaintiffs have still failed to pay the $50,804.89 award that they owed to Kaiser two years ago, showing that lesser penalties have proven to be ineffective, and Plaintiffs' conduct demonstrates an intent to harass Kaiser.

### C. Frivolousness Or Harassment.

Under the third *De Long* factor, the Court determines whether the filings are frivolous *or* harassing. Here, Plaintiffs' filings satisfy both standards.

#### 1. Frivolousness.

Plaintiffs have repeated the same theories for why they have allegedly gained the right to use Kaiser's trademarks over and over throughout the UDRP action, the 2021 Action, and this case. *See, e.g.,* Exhs. E, M, N, O, P, Q, R. The theories have

-12-

been rejected every single time.  *See, e.g.*, Exh. Y; *Dean*, 562 F. Supp. 3d at 935; *Dean*, 2022 WL 1155113, at *2; *Dean*, 2022 WL 18938253, at *3–5; *Dean*, 2023 WL 3551811, at *4; *Dean*, 2023 WL 8261408, at *3.  Plaintiffs again argued to the Ninth Circuit that the settlement agreement gave them the right to use Kaiser's trademarks, and the Ninth Circuit dismissed Plaintiffs' appeal as "frivolous."  *Dean*, 2024 WL 2828826, at *1.  As the Ninth Circuit correctly concluded, Plaintiffs' arguments are frivolous, so the third *De Long* factor is satisfied.

### 2. Harassment.

"[A]n alternative to the finding of frivolousness is the finding that [the litigant's] claims show a pattern of harassment."  *De Long*, 912 F.2d at 1148.  Relevant considerations under the Ninth Circuit's standard include:  (1) the litigants' motive for pursuing the litigation; (2) whether the litigants have a history of bringing harassing and duplicative suits; (3) whether sanctions would be necessary to protect the parties; and (4) whether the litigants caused unnecessary expense to the parties or placed needless burden on the courts.  *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1051 (9th Cir. 2007).

Each of these considerations favor a finding of harassment.  *Molski* explained that the motive factor is satisfied when litigants act with the purpose of "extract[ing] cash settlements from defendants."  *Id.* at 1052.  Plaintiffs' former counsel *admitted* that Plaintiffs sued Kaiser in the 2021 Action with the purpose of settling, and in fact admitted that there was "little chance" Plaintiffs would recover under their claims in the 2021 Action.  Case No. 5:22-cv-278, Dkt. No. 49, ¶ 9 (May 11, 2022).  Because an attorney is his client's agent, these admissions are treated as those of his client.  *Travelers Com. Ins. v. Hall*, No. 22-cv-8234, 2023 WL 4291843, at *4 (C.D. Cal. Mar. 15, 2023).  Notably, Plaintiffs' claims here are all copied from their 2021 Action.  Plaintiffs' barrage of settlement proposals further show what their attorney admitted:  the purpose of the lawsuits is not to vindicate a legal right or engage in a legitimate business activity or even to gain the right to use Kaiser's trademarks, but

to harass Kaiser into making a payment.  Thus, this case is just like *Molski* where the intent to induce settlement favored a finding that the plaintiff was a vexatious litigant.

The litigation history and necessity of sanctions also favors Kaiser.  As discussed at length above, and in the attached summary of filings from the 2021 Action (Exhibit Y), Plaintiffs' history of presenting the same frivolous theories over and over demonstrates a pattern and also shows that Plaintiffs will continue to bring duplicative and time-consuming legal claims until the Court puts an end to it.

Plaintiffs' tactics have also caused unnecessary expense and burden.  Indeed, the Court ordered Plaintiffs to pay Kaiser more than $50,000 in attorney's fees based on their frivolous complaint in the 2021 Action.  Case No. 5:22-cv-278, Dkt. No. 34 (Apr. 12, 2022).  Plaintiffs have still not paid that fee award even though they were required under the Court's order to make payment two years ago.  (Burns Decl. ¶ 18.)  Plaintiffs' conduct also unnecessarily burdens the Court.  The docket in the 2021 Action has more than 100 entries, including several detailed orders from the Court that clearly took considerable time to research and write.  *See generally* Case No. 5:22-cv-278-MCS-KK.  The expense and burden factor therefore also favors Kaiser.

Finally, while *Molski* discussed representation by counsel as another factor, this factor is neutral in this case.  *See, e.g., Azam v. Fed. Deposit Ins. Corp.*, No. 15-cv-3930, 2016 WL 4150762, at *8 (C.D. Cal. July 19, 2016) (whether litigant is *pro se* not determinative).

**D.     Pre-Filing Order.**

Kaiser respectfully requests the Court enter the following pre-filing order, which is narrowly tailored to prevent only the specific type of frivolous, harassing, duplicative litigation that Plaintiffs have already displayed:

> Plaintiffs, or any person acting on their behalf, must first obtain written authorization from a Judge of the Court or a Magistrate Judge before

initiating a new action that relates to Kaiser or its affiliates. Plaintiffs will be allowed to file the complaint if the Judge of the Court or Magistrate Judge finds that the proposed complaint is not frivolous and not duplicative of any claim they have already filed in state or federal court. If the Judge allows the filing but determines, based on the pleadings and any evidence provided by the parties, that there is no reasonable probability Plaintiffs will prevail in the litigation, the Judge may order that Plaintiffs first post security in an amount to be determined by the Judge.

This narrow order is appropriate and closely parallels the prefiling order entered in *Azam*, 2016 WL 4150762, at *14.

## IV. CONCLUSION

For the foregoing reasons, Kaiser respectfully asks the Court to issue an order declaring Plaintiffs vexatious litigants and imposing pre-filing conditions on any future filing by Plaintiffs. Plaintiffs' conduct makes clear that, absent such an order, they will continue to endlessly litigate already foreclosed arguments, and Kaiser (and its members) will continue to incur legal expenses fending off Plaintiffs' frivolous claims.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: November 5, 2025

By /s/ *John Burns*
Jill Pietrini
Paul Bost
John Burns
Attorneys for Defendants
Kaiser Foundation Health Plan, Inc.
and Kaiser Foundation Hospitals

# CERTIFICATE OF COMPLIANCE

I, John Burns, counsel of record for Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals, certify that this brief contains 4,783 words, which complies with the word limit of Local Rule 11-6.1.

Dated: November 5, 2025

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  *s/ John Burns*
JOHN BURNS
JILL PIETRINI
PAUL BOST

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals