SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL PIETRINI, Cal. Bar No. 138335
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: 310.228.3700
Facsimile: 310.228.3701
Email      JPietrini@sheppardmullin.com
JOHN F. BURNS, Cal. Bar No. 290523
501 West Broadway, 18th Floor
San Diego, CA 92101
Telephone: 619.338.6588
Facsimile: 619.515.4182
Email:     JBurns@sheppardmullin.com

*Attorneys for Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| Stephan Dean and Liza Dean, Individually and DBA SureFile Filing Systems,<br><br>        Plaintiffs,<br><br>v.<br><br>Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Does 1-50 Inclusive,<br><br>        Defendants. | Case No. 5:25-cv-02938-JGB-DTB<br>Hon. Jesus G. Bernal<br>**DECLARATION OF JOHN BURNS IN SUPPORT OF KAISER FOUNDATION HEALTH PLAN'S AND KAISER FOUNDATION HOSPITALS' MOTION FOR AN ORDER: (1) DECLARING PLAINTIFFS VEXATIOUS LITIGANTS; AND (2) IMPOSING PRE-FILING CONDITIONS**<br>*[Filed Concurrently With Notice of Motion, Memorandum of Points and Authorities, Exhibits, and Proposed Order]*<br>Hearing:<br>Date:      December 8, 2025<br>Time:     9:00 a.m.<br>Courtroom: 1 |

## DECLARATION OF JOHN F. BURNS

I, John F. Burns, declare as follows:

1. I am an attorney at the law firm Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") in this action. I have firsthand knowledge of the following facts, and if called as a witness, could and would testify competently thereto.

2. **Exhibit A**, attached hereto, is a true and correct copy of the 2011 settlement agreement between Kaiser and Plaintiffs Stephan Dean and Liza Dean, individually and doing business as SureFile Filing Systems ("Plaintiffs"). Plaintiffs also attached a copy of this document to their complaint.

3. In 2021, Plaintiffs registered the domain name <kphealthconnectusa.com>, which is a registered trademark of Kaiser. Plaintiffs launched a website on the domain name where they advertised "access to thousands of current and past Kaiser Permanente members and patients." Plaintiffs offered to provide lists containing patients' names, medical record numbers, dates of birth, and dates when the patients were admitted into a specific facility. The website was designed to confuse visitors into believing it was operated or authorized by Kaiser. It prominently displayed Kaiser's trademarks and listed Kaiser's actual phone number and website domain name as a means by which individuals could "opt out" of having their information disclosed to third parties. The website also included a favorable client review by a client named "Cesar J.," who described the "wonderful experience" and "options" that Plaintiffs' business provided to him. **Exhibit B**, attached hereto, is a true and correct copy of a screenshot of Plaintiffs' website on the domain name <kphealthconnectusa.com>.

4. It later turned out that there was no "Cesar J.," and that Plaintiffs simply invented him and the quotes they attributed to him as a tactic for settlement leverage. In discovery, Plaintiffs claimed that "Cesar J" was a "pseudo name" for a Kaiser

-1-

employee named Donna Davies. Plaintiffs justified the comments that Plaintiffs made up and attributed to "Cesar J" because Ms. Davies "liked the Deans and never had a problem." **Exhibit C**, attached hereto, is a true and correct copy of discovery responses and follow up correspondence regarding Plaintiffs' fabrication of "Cesar J."

5. Plaintiffs, through counsel, tried to use their website to convince Kaiser to again pay them, telling Kaiser that it could buy Plaintiffs' "computers and/or his business" for $1,000,000 or more, i.e., "[t]he six-figure ship left port several years ago." **Exhibit D**, attached hereto, is a true and correct copy of this email exchange.

6. Rather than give in to Plaintiffs' extortionate demand, Kaiser challenged Plaintiffs' <kphealthconnectusa.com> domain name pursuant to the Internet Corporation for Assigned Names and Numbers' ("ICANN") Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), a streamlined and relatively inexpensive mechanism to have a domain name registration cancelled or transferred. Plaintiffs argued to the UDRP panel that Kaiser granted them the right to use its trademarks because the settlement agreement did not preclude them from doing so, and the panel rejected this argument. Plaintiffs also argued that the settlement agreement's release precluded the UDRP action, which argument the panel also rejected. The UDRP panel recognized Plaintiffs' conduct as an attempt to "extort[] a benefit from" Kaiser—and ordered that the domain name be transferred to Kaiser. **Exhibit E**, attached hereto, is a true and correct copy of the UDRP decision, which Plaintiffs refer to in their complaint and which is also available at the following link: <https://www.adrforum.com/DomainDecisions/1969275.htm>.

7. Undeterred by Kaiser's successful UDRP action, Plaintiffs launched a second website under the domain name <patientslist.org> with the *same* violative and infringing content used on <kphealthconnectusa.com>. **Exhibit F**, attached hereto, is a true and correct copy of a screenshot of Plaintiffs' website on the domain name <patientslist.org >.

-2-

8. Plaintiffs then sued Kaiser in December 2021 for: (1) breach of contract, (2) declaratory relief, (3) permanent injunction, and (4) interference with prospective business advantage ("2021 Action"). **Exhibit G**, attached hereto, is a true and correct copy of the complaint in the 2021 Action.

9. In connection with their offer to sell patient data through their websites, Plaintiffs also registered with the State of California as a data broker on the California Data Broker Registry. **Exhibit H**, attached hereto, is a true and correct copy of Plaintiffs' data broker registration.

10. In the 2021 Action, Plaintiffs admitted, among other things, (1) to operating the websites discussed above and shown in Exhibits B and F, (2) that their counsel sent the email attached as Exhibit D on their behalf, and (3) that they filed the data broker registration attached at Exhibit H. **Exhibit I**, attached hereto, is a true and correct copy of Plaintiffs' response to Kaiser's statement of undisputed facts in the 2021 Action, where Plaintiffs made these admissions.

11. Soon after suing Kaiser, Plaintiffs again threatened to sell Kaiser patient information. Plaintiffs' counsel stated that Plaintiffs had "a customer who will purchase information of 100 West LA Kaiser patients on an ongoing basis." **Exhibit J**, attached hereto, is a true and correct copy of this email. It later became clear in discovery that there was no such customer. Plaintiffs' counsel admitted that he has "no personal knowledge as to whether any such customer ever actually existed," while Plaintiffs feigned ignorance and admitted that they had no communications with any such purported customer. **Exhibit K**, attached hereto, is a true and correct copy of the discovery and follow up correspondence regarding this purported customer.

12. In August 2022, a California resident named Ross Dreyer emailed Plaintiffs and asked that they: (i) not sell his information; and (ii) delete all information that Plaintiffs have about him. Plaintiffs responded that they would not honor Mr. Dreyer's request, and copied me. Then, in June 2023, after the Court granted summary judgment in Kaiser's favor in the 2021 Action, Plaintiffs

unilaterally revived their dialogue with Mr. Dreyer from several months earlier, again telling him that they would not honor his requests to delete any information that they have on him or refrain from selling his information. Mr. Dreyer then forwarded this email to me. **Exhibit L**, attached hereto, is a true and correct copy of this email chain.

13. For convenience, Kaiser attaches hereto true and correct copies of several docket entries from the 2021 Action, which are also available on CM/ECF from Case No. 5:22-cv-278-MCS-KK in the U.S. District Court for the Central District of California. These are: **Exhibit M** (the Court's order granting Kaiser's motion to dismiss and to strike); **Exhibit N** (the Court's order granting Kaiser's motion for a preliminary injunction); **Exhibit O** (the Court's order granting in part Kaiser's first motion for summary judgment); **Exhibit P** (the Court's order granting Kaiser's ex parte application to compel discovery responses); **Exhibit Q** (the Court's order granting Kaiser's second motion for summary judgment); **Exhibit R** (the Court's order denying Plaintiffs' second application to file an appeal in forma pauperis).

14. Plaintiffs appealed the Court's grant of Kaiser's motion to dismiss and to strike in the 2021 Action. On appeal, Plaintiffs again argued that "Kaiser deliberately bargained away the right to challenge [Plaintiffs'] use of the trademarks" because there was no term in the settlement agreement precluding Plaintiffs from using the trademarks. **Exhibit S**, attached hereto, is a true and correct copy of Plaintiffs' Ninth Circuit filing in which Plaintiffs made these arguments. The Ninth Circuit rejected Plaintiffs' arguments, dismissing Plaintiffs' appeal and explaining that "we conclude that this appeal is frivolous." **Exhibit T**, attached hereto, is a true and correct copy of the Ninth Circuit's order. Exhibit S and T are available on CM/ECF for Case No. 23-55580 in the Ninth Circuit Court of Appeals.

15. Plaintiffs' former counsel explained that Plaintiffs' purpose in suing Kaiser is to get Kaiser to again pay them settlement money. Indeed, he acknowledged that absent settlement, there was "little chance" Plaintiffs would recover under their claims in the 2021 Action, which are copied and pasted into their complaint here. **Exhibit U**, attached hereto, is a true and correct copy of the declaration of Plaintiffs' former counsel where he made these admissions. This document is also available on CM/ECF from Case No. 5:22-cv-278-MCS-KK in the U.S. District Court for the Central District of California.

16. Consistent with this explanation by Plaintiffs' former counsel, Plaintiffs have barraged Kaiser with settlement demands, particularly when they take any action that might impose a burden on Kaiser. Plaintiffs have made hundreds of unsolicited settlement demands over the past three and a half years. Plaintiffs commonly send multiple settlement emails per day. **Exhibit V**, attached hereto, is a sample of just some of the settlement demands Plaintiffs have made to Kaiser. Even when courts issue orders that are conclusively in Kaiser's favor—like the Court's summary judgment orders and the Ninth Circuit's recent dismissal order—Plaintiffs promptly respond by sending settlement demands to Kaiser with nonsensical interpretations of the Court's rulings or reiterations of arguments expressly rejected by the Court, thereby prolonging and multiplying litigation on already decided issues.

17. Plaintiffs have also repeatedly emailed Kaiser employees directly in connection with this case any time they unilaterally deem counsel's responses to their bombardment of emails insufficient. This is yet another transparent attempt to harass Kaiser. On several occasions I have told Plaintiffs that Kaiser is represented by counsel and that Plaintiffs should not contact Kaiser directly. Plaintiffs nonetheless ignore this direction. **Exhibit W**, attached hereto, are true and correct copies of examples of emails where Plaintiffs have directly contacted Kaiser even though I have told them to communicate through counsel. These include direct emails to Holly Burke, who is an employee of Kaiser Foundation Hospitals and Kaiser Foundation

Health Plan, Inc. **Exhibit X**, attached hereto, are true and correct copies of additional examples where I have told Plaintiffs that Kaiser is represented by counsel.

18. In the 2021 Action, the Court ordered Plaintiffs to pay Kaiser $50,804.89 in attorney's fees after the Court granted Kaiser's motion to strike. Under the Court's order, Plaintiff were required to make this payment no later than April 27, 2022. Plaintiffs have not paid any amount of the $50,804.89 fee that the Court ordered Plaintiffs to pay Kaiser, and claim that they cannot do so.

19. Plaintiffs' arguments underlying their current lawsuit have already been argued and rejected in countless prior filings and orders in the 2021 Action. For convenience, **Exhibit Y** is a chart that summarizes the pertinent docket entries from the 2021 Action.

20. In addition to this lawsuit and the lawsuits discussed above, Plaintiffs have initiated at least three other lawsuits against Kaiser, two of which Plaintiffs voluntarily dismissed after filing. **Exhibit Z**, attached hereto, is a true and correct copy the complaints and dismissals of these other cases. These lawsuits also required Kaiser to spend money on legal fees that it should not have been required to spend.

21. On October 22, 2025, I met and conferred with Plaintiffs about this motion pursuant to Local Rule 7-3. Plaintiffs will receive notice of this motion and have the opportunity to respond to it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 5, 2025 at San Diego, California.

JOHN F. BURNS