# EXHIBIT Z

# EXHIBIT Z



Dept. #____ Assigned _____

**FILED**
Superior Court of California
County of Los Angeles

AUG 08 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shaunya Bolden

1  Stephan C. Dean, Liza D. Dean
   37187 Bankside Dr. #2,
2  Cathedral City, CA, 92234
   323-314-9692
3  Surefile@msn.com
   Pro Per
4

5                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

6                    IN AND FOR THE COUNTY OF LOS ANGLES

| | |
|---|---|
| 7  Stephan C. Dean, Liza D. Dean | Case No.: Number  **BC 7 1 7 1 6 8** |
| 8  PRO PER | |
| 9  vs. | COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF |
| 10 KAISER FOUNDATION HEALTH PLAN, INC., A CALIFORNIA CORPORATION; THE PERMANENTE MEDICAL GROUP, INC., A CALIFORNIA | (1) MALICIOUS PROSECUTION |
| 11 CORPORATION; KAISER FOUNDATION HOSPITALS, A CALIFORNIA CORPORATION; | (2) ABUSE OF PROCESS |
| 12 KAISER PERMANENTE INSURANCE COMPANY, A CALIFORNIA CORPORATION; THE PERMANENTE | (3) BREACH OF WRITTEN CONTRACT |
| 13 FOUNDATION, A CALIFORNIA CORPORATION; AND DOES 1 THROUGH 20, INCLUSIVE | (4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) |
| 14          DEFENDANTS | |

15

16

17

18

19

20          COMES NOW, PLAINTIFFS STEPHAN C. DEAN AND LIZA D. DEAN, FORMALLY

21  DOING BUISNESS AS SUREFILE A SOLE PROPRIETORSHIP ('PLAINTIFF' OR 'THE DEANS' OR

22  'SUREFILE'), AND FOR ITS COMPAINT AGAINST KAISER FOUNDATION HEALTH PLAN, INC., A

23  CALIFORNIA CORPORATION; THE PERMANENTE MEDICAL GROUP, INC., A CALIFORNIA

24  CORPORATION; KAISER FOUNDATION HOSPITALS, A CALIFORNIA CORPORATION; KAISER

25  PERMANENTE INSURANCE COMPANY, A CALIFORNIA CORPORATION; THE PERMANENTE

26  FOUNDATION, A CALIFORNIA CORPORATION; AND DOES 1 THROUGH 20, INCLUSIVE,

27  (COLLECTIVLY, "KAISER") ALLEGES AS FOLLOWS

28  COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF
    PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND
    PROFESSION CODE 17200 ET SEQ.) - 1

GENERAL ALLEGATIONS

1  PLAINTIFFS STEPHAN C. DEAN AND LIZA D. DEAN FORMALLY DOING BUISNESS AS SUREFILE A SOLE PROPRIETORSHIP, ("DEANS").

2  PLAINTIFFS THE DEANS ARE INFORMED AND BELIEVES ON THAT BASIS KAISER FOUNDATION HEALTH PLAN, INC. IS, AND AT ALL TIMES RELEVANT HERETO WAS, A CALIFORNIA CORPORATION WITH ITS PRINCIPAL PLACE OF BUISNESS IN ALAMEDA COUNTY, CALIFORNIA. WITH A REGIONAL OFFICE LOCATED IN LOS ANGLES COUNTY, CALIFORNIA.

3  PLAINTIFFS THE DEANS ARE INFORMED AND BELIEVES ON THAT BASIS THE PERMANENTE MEDICAL GROUP, INC. IS, AND AT ALL TIMES RELEVANT HERETO WAS, A CALIFORNIA CORPORATION WITH ITS PRINCIPAL PLACE OF BUISNESS IN ALAMEDA COUNTY, CALIFORNIA. WITH A REGIONAL OFFICE LOCATED IN LOS ANGLES COUNTY, CALIFORNIA.

4  PLAINTIFFS THE DEANS ARE INFORMED AND BELIEVES ON THAT BASIS THE KAISER FOUNDATION HOSPITAL IS, AND AT ALL TIMES RELEVANT HERETO WAS, A CALIFORNIA CORPORATION WITH ITS PRINCIPAL PLACE OF BUISNESS IN ALAMEDA COUNTY, CALIFORNIA. WITH A REGIONAL OFFICE LOCATED IN LOS ANGLES COUNTY, CALIFORNIA.

5  PLAINTIFFS THE DEANS ARE INFORMED AND BELIEVES ON THAT BASIS THE KAISER PERMANENTE INSURANCE COMPANY IS, AND AT ALL TIMES RELEVANT HERETO WAS, A CALIFORNIA CORPORATION WITH ITS PRINCIPAL PLACE OF BUISNESS IN ALAMEDA COUNTY, CALIFORNIA. WITH A REGIONAL OFFICE LOCATED IN LOS ANGLES COUNTY, CALIFORNIA

6    PLAINTIFFS THE DEANS ARE INFORMED AND BELIEVES ON THAT BASIS PERMANENTE
     FOUNDATION IS, AND AT ALL TIMES RELEVANT HERETO WAS, A CALIFORNIA
     CORPORATION WITH ITS PRINCIPAL PLACE OF BUISNESS IN ALAMEDA COUNTY,
     CALIFORNIA. WITH A REGIONAL OFFICE LOCATED IN LOS ANGLES COUNTY, CALIFORNIA

7    ON INFORMATION AND BELIEF, DEFENDANTS DOES 1 THROUGH 20, INCLUSIVE, AND
     EACH OF THEM, ARE IN SOME MANNER LIABLE TO PLAINIFF. PLAINIFF IS UNAWARE OF
     THE TRUE NAMES, CAPACITIES OR BASES FOR LIABILITY OF DEFENDENTS DOES 1
     THROUGH 20, INCLUSIVE, AND THEREFORE, SUES SAID PARTIES BY THEIR FICTITIOUS
     NAMES. PLAINTIFF WILL AMEND THIS COMPLAINT TO ALLEGE SAID PARTIES' TRUE
     NAMES, CAPACITIES, AND BASES FOR LIABILITY WHEN THE SAME HAS BEEN
     ASCERTAINED.

8    ON INFORMATION AND BELIEF, AT ALL RELEVNANT TIMES, DEFENDANTS WERE AND ARE
     THE AGENTS, SERVANTS, AND/OR EMPLOYEES OF ONE ANOTHER, AND IN DOING THE
     THINGS ALLEGED HEREIN, WERE AND ARE ACTING WITHIN THE COURSE AND SCOPE OF
     SUCH AGENCY, SERVICE AND EMPLOYMENT AND WITH THE PERMISSION AND CONSENT
     OF EACH OTHER.

9    ON INFORMATION AND BELIEF, AT ALL RELEVANT TIMES, DEFENDANTS, AND EACH OF
     THEM, WERE MEMBERS OF, AND ENGAGED IN, A JOINT VENTURE, PARTNERSHIP AND
     COMMON ENTERPRISE, AND WERE ACTING WITHIN THE COURSE AND SCOPE OF, AND IN
     PURSUANCE OF, SAID JOINT VENTURE, PARTNERSHIP AND COMMON ENTERPRISE.

10   ON INFORMATION AND BELIEF, AT ALL RELEVANT TIMES, THE ACTS AND OMISSIONS OF
     DEFENDANTS, AND EACH OF THEM, CONCURRED AND CONTRIBUTED TO THE VARIOUS

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF
PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND
PROFESSION CODE 17200 ET SEQ.) - 3

ACTS AND OMISSIONS OF EACH AND ALL OF THE OTHER DEFENDANTS IN PROXIMATELY

CAUSING THE INJURIES AND DAMAGES ALLEGED HEREIN.


11  ON INFORMATION AND BELIEF, AT ALL RELEVANT TIMES, THE DEFENDANTS, AND EACH

OF THEM, RATIFIED AND/OR AIDED AND ABETTED IN THE COMMISSION OF THE ACTS AND

OMISSIONS OF EACH OTHER IN PROXIMATELY CAUSING THE DAMAGES AS ALLEGED

HEREIN.


12  IN JUNE OF 2010 A DISPUTE AROSE AMONG THE PARTIES AND DEFENDANT KAISER

DECIDED TO END THE BUSINESS RELATIONSHIP WITH PLAINTIFF THE DEANS.


13  IN JULY 2010 KAISER AND THE DEANS ENTERED INTO A TRANSFER AGREEMENT TO

TRANSFER BACK TO KAISER ALL PAPER MEDICAL RECORDS THAT THE PLAINTIFF DEAN

HAD BEEN STORING, CATALOGING, AND SCANNING FOR KAISER THE DEFENDANT.


14  AS PART OF THE TRANSFER AGREEMENT DEAN AGREED TO CONTINUE TO PRESERVE THE

PROTECTED HEALTH INFORMATION (PHI), AS REQUIRED BY STATE AND FEDERAL LAW.

BOTH PARTIES AGREED DEAN COULD PURSUE KAISER FOR PAST STORAGE AND SERVICES

THAT HAD BEEN RENDERED.


15  IN MARCH OF 2011 THE PLAINTIFF DEAN AND DEFENDANT KAISER ENTERED INTO A

CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT. PER THIS AGREEMENT BOTH

PLAINTIFF AND DEFENDANT WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST

EACH OTHER. THIS AGREEMENT SUPERSEDED ALL PRIOR AGREEMENTS.


16  THE MARCH 2011 SETTLEMENT AND RELEASE AGREEMENT ALSO REQUIRED BOTH

PARTIES TO CONTINUE TO MAINTAIN THE PHI AS REQUIRED BY LAW.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 4

17  APPROXIMATELY IN JUNE OF 2011 THE PLAINTIFFS EXPRESSED TO THE DEFENDANTS LAWYERS THAT SOMETHING NEEDED TO BE DONE WITH THE ELECTRONIC PHI WHICH THE DEANS WERE REQUIRED TO CONTINUE TO PRESERVE AS REQUIRED BY THE MARCH 2011 AGREEMENT.

18  THE PLAINTIFFS DEMANDED THAT THEY BE COMPENSATED FOR THE STORAGE AND SECURITY THAT HAD BEEN PROVIDED FOR THE ELECTRONIC PHI. THE PLAINTIFFS ALSO DEMANDED THAT DEFENDANTS PAY FOR THE PROPER RETURN OR DESTRUCTION OF THE PHI AS REQUIRED BY LAW.

19  IN 2012 DEFENDANTS AND PLAINTIFFS ENTERED INTO CONFIDENTIAL SETTLEMENT NEGOTIATIONS, FOR THE RETURN AND DESTRUCTION OF THE PHI THAT WAS STILL IN THE POSSESION OF THE PLAINTIFFS. DEFENDANT KAISER OFFERED PLAINTIFF DEAN 250,000 DOLLARS TO PROPERLY HAVE THE PHI RETURNED AND DESTROYED. THIS WOULD REQUIRE THAT PLAINTIFFS TURN OVER ALL COMPUTERS AND DEVICES THAT HAD EVER HAD PHI ON STORED ON THEM. PLAINTIFFS DEMANDED THEY BE PAYED 600,000 DOLLARS TO COMPENSATE FOR INVASION OF PRIVACY AND BACK STORAGE. THE PARTIES COULD NOT COME TO AN AGREEMENT.

20  ON OR ABOUT OCTOBER 2012, KAISER FILED A COMPLAINT IN CIVIL COURT FOR AN INJUNCTION AND DAMAGES. DEFENDANT KAISER WAS SEEKING A COURT ORDER REQUIRING THE PLAINTIFF DEANS TO TURN OVER THEIR COMPUTERS AND DEVICES AS WELL AS ACCESS TO THEIR E-MAIL ACCOUNTS. THE PURPOSE OF THIS WAS TO HAVE A FORENSIC EXPERT PROPERLY GO THROUGH THE COMPUTERS AND E-MAILS AS WELL AS OTHER DEVICES TO PROFESSIONALLY DESTROY ALL ELECTRONIC PHI. THE PLAINTIFF DEANS DECLAIRED THEY HAD DONE ALL THEY COULD TO MANUALLY DELETE THE PHI.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 5

KAISER BROUGHT A FORENSIC EXPERT WHO CLEARLY STATED THAT WHAT THE DEANS DID BY MANUALLY DELETING THE PHI WAS NOT SUFFICIENT ENOUGH TO PROPERLY REMOVE AND DESTROY THE PHI. KAISERS OWN LAWYER TOLD THE DEANS THAT WHAT THEY DID WAS NOT SUFFICIENT, AND KAISER WOULD NOT DISMISS THE LAWSUIT UNTIL THE DEANS SURRENDERED THEIR DEVICES. THE DEANS REFUSED KAISERS DEMANDS UNLESS THEY WERE COMPENSATED.

21  THE DEANS FILED AN MSJ ASKING THE COURT TO RULE BASED ON THE MARCH 2011 SETTLEMENT AGREEMENT IN WHICH BOTH PARTIES WAVED ALL CLAIMS AND CAUSES OF ACTION. THE COURT GRANTED THE DEANS MOTION, STATING THAT THE SETTLEMENT AGREEMENT SUBSUMED ALL KAISERS CLAIMS. KAISER THEN REQUESTED THAT THEY BE ALLOWED TO AMEND THEIR COMPLAINT TO ADD A CAUSE OF ACTION FOR FRAUD. THE JUDGE SAID HE WOULD ALLOW IT BUT WARNED KAISER THAT IT COULD QUITE POSSIBLY BE A LESSON IN FUTILITY, BECAUSE OF THE MARCH 2011 SETTLEMENT AGREEMENT AND KAISERS WAVING OF ALL CLAIMS. KAISER IMMEDIATELY ASKED THE COURT FOR A SETTLEMENT CONFERENCE.

22  DEFENDANT KAISER FILED A SETTLEMENT CONFERENCE BRIEF. IN THE BRIEF KAISER SAID THAT THEY WOULD BE WILLING TO PAY DEAN A NOMINAL SETTLEMENT FOR HIM TO SURRENDER HIS COMPUTERS AND DEVICES AND GIVE ACCESS TO HIS E-MAIL, OR FOR THE DEANS TO AGREE TO A PERMANENT INJUNCTION REGARDING USE AND DISCLOSURE OF PHI. KAISER ALSO STATED THAT THE COURT HAD GRANTED THE DEANS MSJ AND THAT THE SETTLEMENT AGREEMENT SUBSUMED ALL KAISERS CLAIMS.

23  THE DEANS ALSO FILED A SETTLEMENT CONFERENCE BRIEF IN WHICH THEY STATED THAT THEY AGREED WITH THE JUDGES GRANTING OF THEIR MSJ AND THAT IF KAISER

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES   (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 6

AMENDED THEIR COMPLAINT TO FRAUD THEY WOULD CONSIDER IT MALICIOUS

PROSECUTION.


24  THE PARTIES IN SEPTEMBER OF 2013 ATTENDED THE MSC. AT THE CONFERENCE KAISER

OFFERED THE DEANS 25 THOUSAND DOLLARS TO SURRENDOR THEIR COMPUTERS AND

ACCESS TO THEIR E-MAIL ACCOUNTS. THE DEANS DECLINED THEIR OFFER. THE DEANS

THEN STATED WHAT THEY HAD EARLIER DECLARED THAT THEY WOULD DELETE ANY

PHI IF THEY DISCOVERED IT AND IF THEY FOUND A PAPER RECORD THEY WOULD

RETURN IT TO KAISER. THE DEANS SIMPLY STATED WHAT THEY HAD ALREADY DONE

WHICH WAS MANUAL DELETION. KAISER THEN DROPPED THEIR COMPLAINT WITH

PREJUDICE.


25  AFTER THE MSC OF SEPTEMBER OF 2013, THE DEANS CONTACTED KAISERS ATTORNEY

CONCERNING THE FACT THAT KAISERS OWN FORENSIC EXPERT DECLARED THAT THE

COMPUTERS NEEDED TO BE FORENSICALLY WIPED TO HAVE THE PHI PROPERLY

REMOVED FROM THE DEANS DEVICES. THE DEANS NOTIFIED KAISER THAT THE ONLY

WAY THEY WOUD ALLOW KAISER OR A THIRD-PARTY ACCESS TO THEIR COMPUTERS OR

DEVICES IS IF KASIER WOULD COMPENSATE THEM FOR INVASION OF PRIVACY AS WELL

AS PAYMENT FOR PAST STORAGE AND SECURITY. THE DEANS ALSO NOTIFIED KAISER

THAT THEY WERE GOING TO REPORT THE DISPUTE TO THE CALIFORNIA DEPARTMENT OF

PUBLIC HEALTH (CDPH).


26  IN DECEMBER OF 2013, KAISERS ATTORNEY CONTACTED THE DEANS AND STATED THAT

KAISERS EXECUTIVE DIRECTOR WISHED TO SPEAK WITH THEM. ON OR ABOUT

DECEMBER OF 2013 KAISERS EXECUTIVE DIRECTOR CONTACTED THE DEANS AND ASKED

THEM HOW MUCH THEY WANTED TO SETTLE. THE DEANS CONFIRMED WITH KAISERS

EXECUTIVE DIRECTOR THAT THEY WERE ENTERING INTO SETTLEMENT NEGOTIATIONS.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF
PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND
PROFESSION CODE 17200 ET SEQ.) - 7

27  KAISERS EXECUTIVE DIRECTOR TRICKED THE DEANS INTO THINKING THAT KAISER WISHED TO SETTLE THE MATTER. INSTEAD THE EXECUTIVE DIRECTOR WAS SECRETLY RECORDING THE CONFIDENTIAL SETTLEMENT COMMUNICATIONS. THE DEANS SPECIFICALLY ASKED KAISERS DIRECTOR IF KAISERS ATTORNEY WAS STILL INVOLVED AND THE DIRECTOR RESPONDED THAT NO SHE WAS HANDLING IT NOW.

28  AFTER BEING INDUCED INTO THINKING THE PARTIES WERE IN CONFIDENTIAL NEGOTIATIONS, THE DEANS, WERE REQUESTED TO PROVIDED SEVERAL SETTLEMENT OFFERS TO DEFENDANTS KAISER.

29  KAISERS EXECUTIVE DIRECTOR CONTINUED TO ACT AS IF SHE WAS SEEKING APPROVAL FOR THE OFFERS, BUT INSTEAD WAS BEING COACHED BY THEIR HIRED ATTORNEY, AND EX-GOVERNMENT PROSECUTER.

30  ON FEBUARY 4, 2014, KAISERS EXECUTIVE DIRECTOR SAID SHE WAS GOING TO CALL THE DEANS WITH KAISERS DECISION AS FAR AS EXCEPTING THEIR PROPOSAL. INSTEAD, AT THAT MORNING AT 7 AM, THE DEANS HOME WAS RAIDED BY THE FBI. ALL THE DEANS DEVICES AND COMPUTERS THAT KAISER ATTEMPTED TO HAVE TURNED OVER IN CIVIL COURT WERE REMOVED BY THE FBI. KAISER GOT ITS WAY AND WAS ABLE TO MANIPULATE THE CRIMINAL SYSTEM.

31  IN SEPTMEBER OF 2017, THE GOVERNMENT NOTIFIED THE DEANS THAT THE CASE WAS CLOSED AND THE CRIMINAL INVESTIGATION LEAD TO NO CRIMINAL CHARGES BEING FILED. THE COMPUTERS AND DEVICES WERE RETURNED TO THE DEANS WITHOUT BEING FORENSICALLY WIPED. THE COMPUTERS AND DEVICES AT THIS TIME STILL HAVE

1    ELECTRONIC PHI ON THEM, AND UNTIL THEY ARE FORENSICALLY WIPED THIS WILL BE

2    THE CASE.

3

4                          FIRST CAUSE OF ACTION

5                          MALICIOUS PROSECUTION

6                          (AGAINST EACH DEFENDANT)

7    32  PLAINTIFF REALLEGE AND INCORPORATE BY REFERENCE THE ALLEGATIONS OF

8        PARAGAPHS 1 TO 31 ABOVE.

9    33  THE MARCH 2011 SETTLEMENT AND RELEASE AGREEMENT SPECIFIED THAT DEFENDANT

10       KAISER WAIVED ALL CLAIMS AND CAUSES OF ACTON AGAINST PLAINTIFFS DEAN. ALSO,

11       IN THIS AGREEMENT DEFENDANT AGREED PLAINTIFF DEAN WOULD CONTINUE TO

12       PRESERVE THE PHI. THE AGREEMENT ALSO SUPERSEDED ALL OTHER AGREEMENTS.

13

14   34  DESPITE THE PLAINTIFFS WARNING TO DEFENDANTS ABOUT THE TERMS OF THE

15       SETTLEMENT AGREEMENT STATED IN 33, DEFENDANTS FILED A CIVIL ACTION.

16

17   35  DEFENDANTS BEING FULLY AWARE THAT THE DEANS, A TRULY MOM AND POP

18       OPERATION, WERE REPRESENTING THEMSELVES. ATTEMPTED TO BULLY THEM TO GIVE

19       THEIR DEVICES OVER TO THEM. THEY DID THIS BY TAKING UNWARRANTED LEGAL

20       ACTION.

21

22   36  THE PLAINTIFFS DEAN, IN THE MIDDLE OF SETTLEMENT NEGOTIATIONS IN WHICH

23       DEFENDANTS HAD OFFERED 250,000 DOLLARS WERE NOTIFIED OF A EX PARTY HEARING

24       THE NEXT DAY. THE DEANS WERE NEVER EVEN SERVED DEFENDANTS INITIAL

25       COMPLAINT UNTIL AFTER THE EX PARTY HEARING. THIS WAS CLEARLY AN ATTEMPT BY

26       DEFENDANT TO BULLY THROUGH LITIGATION. THIS IS CLEARLY A CASE OF MALICIOS

27       PROSECUTION.

28   COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF
     PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND
     PROFESSION CODE 17200 ET SEQ.) - 9

SECOND CAUSE OF ACTION

ABUSE OF PROCESS

(AGAINST EACH DEFENDANT)

37  PLAINTIFF REALLEGE AND INCORPORATE BY REFERENCE THE ALLEGATIONS OF

PARAGRAPHS 1 TO 36 ABOVE.

38  DEFENDANT KAISER WAS GIVEN TIME TO AMEND THEIR CIVIL COMPLAINT TO FRAUD.

INSTEAD THEY CHOSE TO END THE DISPUTE WITH PREJUDICE. THEY MADE THIS

DECISION KNOWING FULLY WELL THAT UNTIL THE PLAINTIFFS COMPUTERS AND

DEVICES WERE FORENSICALLY WIPED PHI WOULD REMAIN ON THEM. THEIR OWN

FORENSIC EXPERT HAD DECLARED THIS IN KASIERS MOVING PAPERS.

39  AFTER THE DEANS CONTACTED THE DEFENDANT KAISER FOLLOWING THE MSC

REGARDING THE NEED FOR A FORENSIC WIPING KAISER MADE A DECISION. RATHER

THEN THEM NEGOTIATE A NEW AGREEMENT THAT WOULD SUPERSEDE THE MARCH 2011

AGREEMENT KAISER DECIDED TO CIRCUMVENT THE CIVIL PROCESS AND SET THE DEANS

UP THROUGH TRICKERY.

40  DEFENDANT KAISER IMPROPERLY USED A CRIMINAL PROCESS FOR A UNINTENDED,

MALICIOUS, PERVERSE REASON. NAMELY TO GAIN ACCESS TO THE DEANS PROPERTY

WITHOUT COMPENSATING THEM.

41  DEFENDANT KAISER WAS ABLE TO GET AN EX-GOVERNMENT PROSECUTER TO

CONVINCE HIS EX-COLLEAGUES AT THE FBI TO SECURE A SEARCH WARRANT. THAT

SEARCH WARRANT WAS EXECUTED ON FEBUARY 4, 2014. IT APPEARS KAISER HAD

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF
PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND
PROFESSION CODE 17200 ET SEQ.) - 10

ACCOMPLISHED THROUGH MALICIOUS MEANS WHAT THEY COULDN'T GET IN CIVIL COURT. THE PLAINTIFF DEANS COMPUTERS AND DEVICES. THIS IS A CLEAR CASE OF ABUSE OF PROCESS.

THIRD CAUSE OF ACTION

BREACH OF WRITTEN CONTRACT

(AGAINST EACH DEFENDANT)

42  PLAINTIFFS REALLEGE AND INCORPORATE BY REFERENCE THE ALLEGATIONS OF PARAGRAPHS 1 TO 41 ABOVE.

43  IN THE MARCH 2011 SETTLEMENT AND RELEASE AGREEMENT DEFENDANT KAISER WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST PLAINTIFF DEAN. DEFENDANT KAISER WILLINGLY AND KNOWINGLY BREACHED THAT AGREEMENT BY FILING A CIVIL LAWSUIT KNOWING PERFECTLY WELL IT HAD SUBSUMED ALL THEIR CLAIMS.

44  DEFENDANT KAISER WILLINGLY AND KNOWINGLY AFTER ADMITTING THAT THE MARCH 2011 SETTLEMENT PRECLUDED THEM FROM ALL CLAIMS AND CAUSES OF ACTION RELATED TO THE DISPUTE, AND FOR A SECOND TIME BREACHED THE SETTLEMENT AGREEMENT BY FALSELY ACCUSING THE DEANS OF EXTORTION.

45  DEFENDANT KAISER IN THEIR CIVIL LAWSUIT HAD ALREADY CLAIMED EXTORTION AND HAD THE RIGHT TO AMEND THEIR CIVIL COMPLAINT ADDING THAT AS A SEPARATE CAUSE OF ACTION. INSTEAD PLANNED TO TAKE ANOTHER ROUTE ACCUSING THE DEANS OF A CRIMINAL ACT FOR THE SOLE PURPOSE OF CIRCUMVENTING THE MARCH 2011

SETTLEMENT AGREEMENT. BY THIS WILLFUL ACT OF DEFENDANT, THE SETTLEMENT AGREEMENT WAS BREACHED.

### FOURTH CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW

### (AGAINST EACH DEFENDANT)

46  PLAINTIFFS REALLEGE AND INCOPORATE BY REFERENCE THE ALLEGATIONS OF PAPRAGRAPHS 1 TO 45.

47  CALIFORNIA BUISNESS & PROFESSIONS CODE 17200 ET. SEQ. (THE "UCL") PROHIBIT UNFAIR COMPETITION. IN THIS CONTEXT, "UNFAIR COMPETITION SHALL MEAN AND INCLUDE ANY UNLAWFUL, UNFAIR OR FRAUDULENT BUISNESS ACT OR PRACTICE.... "CAL. BUS. & PROF. CODE 17200.

48  THE "UNLAWFUL" PRONG OF UCL PERMITS A PLAINTIFF TO OBTAIN RELIEF FROM ANYTHING THAT CAN PROPERLY BE CALLED A BUISNESS PRACTICE AND THAT AT THE SAME TIME IS FORBIDDEN BY LAW, REGARDLESS OF WHETHER THE UNDERLYING LAW PROVIDES FOR A PRIVATE RIGHT OF ACTION.

49  DEFENDANTS, BY THEIR CONDUCT AND PRACTICES ALLEGED HEREIN, HAVE COMMITED AND CONTINUE TO COMMIT VIOLATIONS OF THE HEALTH INSURANCE PORTABILITY ACT OF 1996, P.L. 104-191 ("HIPAA") AND THE CONFIDENTIALITY OF MEDICAL RECORDS, ACT, CIV. CODE 56 ET SEQ. DEFENDANTS ARE THEREFORE IN VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 12

50  THE "UNFAIR" PRONG OF THE UCL IS INTENTIONALLY BROAD, THUS ALLOWING COURTS
    MAXIMUM DISCRETION TO PROHIBIT NEW SCHEMES TO DEFRAUD. OUTSIDE OF THE
    COMPETITOR CONTEXT, COURTS HAVE ENUNCIATED DIFFERING TESTS FOR UNFAIRNESS
    UNDER THE UCL. ONE TEST IS THAT THE HARM TO THE VICTIM OUTWAYS THE
    JUSTIFICATION OF THE ALLEGED WRONG DOER. DEFENDANT KAISER ADVERTISES THAT
    THE PRIVACY AND PROTECTION OF THEIR PATIENTS CONFIDENTIAL MEDICAL
    INFORMATION IS ONE OF THEIR MAIN PRIORITIES. YET AS DESCRIBED KAISER HAS
    ABANDONED THE PHI ON THE DEANS DEVICES. DEFENDANT KAISER REFUSES TO
    NEGOTIATE THE SECURITY AND STORAGE OF THE PHI OR FOR THE LEGAL DESTRUCTION
    OF THE PHI AS REQUIRED BY ("HIPAA")

51  DEFENDANTS, BY THEIR CONDUCT AND PRACTICES ALLEGED HEREIN, HAVE ENGAGED
    AND CONTINUE TO ENGAGE IN CONDUCT AND PRACTICES THAT CAUSE CONSIDERABLE
    HARM TO NOT ONLY THE PLAINTIFF DEAN BUT ALSO THE INNOCENT KAISER PATIENTS
    WHOS PHI IS INVOLVED.

52  PLAINTIFFS HAVE NUMEROUS TIMES OFFERED TO ALLOW KAISER TO STORE THEIR
    DEVICES WHILE THE PARTIES NEGOTIATE FOR THE PROPER LEGAL DESTRUCTION OF THE
    PHI. KAISERS ONLY RESPONSE HAS BEEN THAT THEY WOULD BE WILLING TO TAKE THE
    DEVICES WITHOUT COMPENSATING THE DEANS FOR THE INVASION OF PRIVACY.

53  THE DEFENDANT KAISER UNDER HIPAA IS DEFINED AS A COVERED ENTITY.  A COVERED
    ENTITY IS REQUIRED TO IMPLEMENT APPROPRIATE ADMINISTRATIVE TECHNICAL AND
    PHYSICAL SAFE GAURDS. THE DEFENDANT KAISER IS WELL AWARE OF THE PLAINTIFFS
    LIMITATED RESOURCES, AND YET REFUSES TO PAY PLAINTIFFS FOR SECURITY AND
    STORAGE.

54  AS A COVERED ENTITY DEFENDANT KAISER IS RESPONSIBLE FOR THE SECURITY OF THE PHI. DEFENDANTS PRACTICE HERE OF ABANDONING THE PHI IS A VIOLATION OF HIPAA. SO, DEFENDANTS CONDUCT AND PRACTICES OFFEND A PUBLIC POLICY.

55  PLAINTIFFS HAVE SUFFERED IN FACT AND HAVE INCURRED UNNECESSARY EXPENSIVES. AS A RESULT OF DEFENDANTS VIOLATIONS OF THE UCL.

56  PLAINTIFFS ARE THEREFORE ENTITLED TO RESTITUTION AND DISGORGEMENT IN AMOUNT TO BE PROVEN AT TRIAL.

57  PLAINTIFF HAS INCURRED COSTS IN CONNECTION WITH THESE PROCEEDINGS AND MAY INCUR ADDITIONAL COSTS AND FEES HERE UNDER.

WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:

1.  FOR GENERAL DAMAGES, ACCORDING TO PROOF;

2.  FOR SPECIAL DAMAGES, ACCORING TO PROOF;

3.  FOR COMPENSATORY DAMAGES, ACCORDING TO PROOF;

4.  FOR RESTITUTION AND OTHER EQUITABLE RELIEF ASSOCIATED WITH STORING THE PHI ON BEHALF OF DEFENDANTS;

5.  FOR A DECLARATION THAT DEFENDANTS ARE RESPONSIBLE FOR ACCEPTING TRANSFER OF THE PHI AND PAYING FOR STORAGE AND TRANSFER COST.;

6.  FOR INTEREST ACCORDING TO LAW;

7.  FOR COSTS OF SUITE INCURRED HEREIN;

8.  FOR ATTORNEYS FEES AS ALOUD BY LAW;

9.  FOR SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM JUST AND PROPER.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 14

10.  PUNITIVE DAMAGES.

DATED AUGUST 7, 2018

STEPHAN C. DEAN _____

LIZA D. DEAN _____

PRO PER

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF (1) MALICIOUS PROSECUTION(2) ABUSE OF PROCESS(3) BREACH OF WRITTEN CONTRACT(4) UNFAIR BUISNESS PRACTICES    (BUISNESS AND PROFESSION CODE 17200 ET SEQ.) - 15

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Stephan C. Dean, Liza D. Dean
37187 Bankside Drive #2
Cathedral City, CA 92234

TELEPHONE NO.: 323-314-9692    FAX NO.:

ATTORNEY FOR *(Name):* Por Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

**FILED**
Superior Court of California
County of Los Angeles

AUG 08 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shayma Bolden

CASE NAME:
Dean v Kaiser

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 7 1 7 1 6 8 JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☑ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08/08/2018

Stephan C. Dean, Liza D. Dean
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |

| SHORT TITLE: COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF | CASE NUMBER | BC 7 1 7 1 6 8 |
|---|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in
Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have
chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☑ A6017  Legal Malpractice | 1, 2, 3 |
|  | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
|  | ☐ A6109  Labor Commissioner Appeals | 10 |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
|  | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
|  | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
|  | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
|  | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
|  | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
|  | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
|  | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
|  | ☐ A6032  Quiet Title | 2, 6 |
|  | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

- Non-Personal Injury/ Property Damage/ Wrongful Death Tort
- Employment
- Contract
- Real Property
- Unlawful Detainer

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | ☐ A6160  Abstract of Judgment | 2, 6 |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | ☐ A6190  Election Contest | 2 |
| | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☐ 2. ☒ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>393 E. WALNUT STREET |
|---|---|

| CITY:<br>PASADENA | STATE:<br>CA | ZIP CODE:<br>91118 | |
|---|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Southern___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 8/8/2018

_(SIGNATURE OF ATTORNEY/FILING PARTY)_

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.   Original Complaint or Petition.

2.   If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.   Civil Case Cover Sheet, Judicial Council form CM-010.

4.   Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.   Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.   A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.   Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CIV-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO:<br>NAME: **Stephan C Dean Liza D Dean**<br>FIRM NAME:<br>STREET ADDRESS: **37187 Bankside Dr. #2**<br>CITY: **Cathedral City**    STATE: **CA**    ZIP CODE: **92234**<br>TELEPHONE NO.: **323-314-9692**    FAX NO.:<br>E-MAIL ADDRESS: **surefile@msn.com**<br>ATTORNEY FOR (Name): **Pro Per** | *FOR COURT USE ONLY*<br><br>**FILED**<br>Superior Court of California<br>County of California<br>County of Los Angeles<br><br>MAR 08 2019<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _M. Ventura_ Deputy<br>Marisa Ventura |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
 STREET ADDRESS: **111 North Hill Street**
 MAILING ADDRESS:
 CITY AND ZIP CODE: **Los Angeles 90012**
 BRANCH NAME: **Stanley Mosk**

Plaintiff/Petitioner: Stephan C Dean Liza D Dean
Defendant/Respondent: Kaiser Foundation Healthplan Et Al

| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>BC 717168 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
 a. (1) [ ] With prejudice  (2) [x] Without prejudice
 b. (1) [x] Complaint  (2) [ ] Petition
  (3) [ ] Cross-complaint filed by (name):                    on (date):
  (4) [ ] Cross-complaint filed by (name):                    on (date):
  (5) [x] Entire action of all parties and all causes of action
  (6) [ ] Other (specify):*

2. (Complete in all cases except family law cases.)
 The court [x] did  [ ] did not  waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: 03/07/2019
Stephan C Dean  Liza D Dean
_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [x] PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

► _Stephan C D_   _Liza D Dean_
(SIGNATURE)

Attorney or party without attorney for:
[x] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:
_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

►
(SIGNATURE)

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross Complainant

*(To be completed by clerk)*
4. [ ] Dismissal entered as requested on (date):
5. [ ] Dismissal entered on (date):                    as to only (name):
6. [ ] Dismissal **not entered** as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
 b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
   [ ] a copy to be conformed  [ ] means to return conformed copy

Date: _____    Clerk, by _____, Deputy    **Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.; Gov. Code,<br>§ 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courts.ca.gov |

CIV-110

| Plaintiff/Petitioner: Stephan C Dean Liza D Dean | CASE NUMBER: |
|---|---|
| Defendant/Respondent: Kaiser Foundation Healthplan Et Al | BC 717168 |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. [X] not recovering anything of value by this action.
   b. [ ] recovering less than $10,000 in value by this action.
   c. [ ] recovering $10,000 or more in value by this action.  *(If item 2c is checked, item 3 must be completed.)*

3. [ ] All court fees and court costs that were waived in this action have been paid to the court  *(check one):*    Yes    No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:  03/08/2019

Stephan C Dean  Liza D Dean
_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [X] PARTY MAKING DECLARATION)

▶ *Stephan C.D.  Liza D. Dean*
_____
(SIGNATURE)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 1 5 2024                      KMB

T. ITAH

MAY 1 6 2024

1   Stephan Dean
    Liza Dean / DBA Sure File Filing Systems
2   37187 Bankside Drive, #2
    Cathedral City CA 92234
3   Telephone: (323) 314-9692
    SUREFILE@MSN.COM
4   In Pro Se
5

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA
7              COUNTY OF RIVERSIDE (PALM SPRINGS BRANCH)

8   STEPHAN CDEAN  LIZA D Dean        Case No.: **CVPS 24 0 2 8 8 4**
    INDIVIDUALLY AND DBA SUREFILE
9   FILING SYSTEMS,                   Assigned to:
                                      COMPLAINT
10            Plaintiffs,
                                      JURY TRIAL DEMANDED
11        v.
                                      BREACH OF CONTRACT
12  KAISER FOUNDATION HEALTH          Request for judicial notice attached and
    PLAN, INC; KAISER FOUNDATION      incorporated by reference in this complaint
13  HOSPITALS; DOES 1-50 INCLUSIVE    the Declaration of Thomas Stefanelli and the
                                      July 31, 2013 Transcript on Deans motion for
14            Defendants.             summary judgement

15  Plaintiffs Stephan Dean and Liza Dean; individually and doing business as SureFile Filings

16  Systems, allege:

17
                        **I. PARTIES AND RELEVANT PERSONS**
18

19       1. Plaintiffs Stephan Dean and Liza Dean reside in Cathedral City California and do

20  business as Surefile Filing Systems. They are referred to herein collectively as "DEAN".

21  Even though DEAN is referred to herein in the singular for convenience, it refers to both Stephan

22  and Liza Dean unless specified otherwise.

23
         2. Defendants Kaiser Foundation Health Plan, Inc. is a corporation that does business
24
    throughout California, including Riverside County.
25

26       3. Defendant Kaiser Foundation Hospitals is an unincorporated entity that does business

27  throughout California, including Riverside County and is an affiliate of Kaiser Foundation

28

Health Plan, Inc. Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals are

referred to herein collectively as "KAISER".

4. Defendants named herein as DOES 1-50 inclusive are presently unknown to

Dean who therefore names said defendants by such fictitious names. When the true

names and capacities of said Defendants DOES 1-50 are ascertained, this Complaint will be

amended accordingly.

5. DEAN is informed and believes and thereon alleges that at all times herein

mentioned, the DOE Defendants and Kaiser Foundation Hospitals were the agents,

employees, co-venturers, affiliates, or partners of each other Defendant and of Kaiser

Foundation Health Plan, Inc. and in doing or planning the actions herein alleged, each

Defendant was acting with the course and scope of that agency, employment, partnership

or joint venture with the knowledge, consent, and approval of each other Defendant.

### The Contracts Between DEAN and KAISER

6. For decades the Dean family has done business with Kaiser. Between 2008 and 2010,

DEAN and KAISER entered into two written contracts and numerous verbal agreements by

which KAISER transmitted to DEAN certain information about some of KAISER's patients or

members for storing and scanning by DEAN on DEAN's computers until requested by KAISER.

The written contracts are commonly referred to as the "West Los Angeles Agreement" and the

"Moreno Valley Agreement" (collectively, along with the verbal agreements, "the

Storage/Scanning Contracts"). Both contracts contained a prohibition on Dean using the Kaiser

trademark or name in advertising unless it was affirmatively granted in writing by Kaiser.

*Publicity.   Supplier will not, without the prior written consent of Kaiser*

*Permanente, use in advertising, publicity, on the internet or otherwise the names, trade*

1    *names, service marks, trade dress or logo of Kaiser Permanente, the Kaiser Permanente*

2    *Medical Care Program or any affiliates of these entities or refer to the existence of this*

3    *Agreement in any press releases, advertising, web sites or material distributed or made*

4    *available to prospective customers or other third parties.*

5    7. In 2010, KAISER terminated the Storage/Scanning Contracts. KAISER demanded that

6    DEAN retransfer to KAISER all the paper documents regarding KAISER's patients that

7    KAISER had transferred to DEAN. DEAN did retransfer to KAISER the paper documents.

8

9                              **The Settlement Agreement**

10    8. In 2010 and 2011 KAISER and Dean had disagreements over their respective rights,

11    and duties regarding the terminated Storage/Scanning Contracts, which had been terminated by

12    Kaiser.  Representing Kaiser was Holly Burke their inhouse attorney and representing Dean was

13    Thomas Stefanelli. Request for judicial notice attached and incorporated by reference in this

14    complaint is the Declaration of Thomas Stefanelli (Exhibit 1).  See Pacific Gas & Elec. Co. v.

15    G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 442 P.2d 641 (1968)

16    holding that, under California law, "[t]he test of admissibility of extrinsic evidence to explain the

17    meaning of a written instrument is not whether it appears to the court to be plain and

18    unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to

19    which the language of the instrument is reasonably susceptible."   In the case at bar the term

20    "other claims" and "future claims" are ambiguous.

21

22

23    9. Kaisers rule of engagement was predicated on the parties agreeing without limitation to

24    a bi lateral, fully integrated release of any and all claims they had against each against each other

25    both past, present and future and that the agreement supersede all other agreements and be a final

26    resolution of the parties business relationship including a waiver of California 1542 (unknown

1  claims). As is evident from the Declaration, Kaisers main intent was that Dean be prohibited

2  from using the KAISER name or logo in the future in his business unless Kaiser affirmatively

3  granted that right in writing as was incorporated (publicity clause) in the terminated

4
   Storage/Scanning contracts. Ms. Burke made this intent clear and wanted this claim to survive
5
   this fully integrated bi lateral settlement and release of all future claims.
6

7          *As I mentioned in my email last night, I believe the Publicity clause in the*

8          *executed contract with Surefile restricts Surefile from using the KP name or logo*

9          *without KP consent (see email below). KP does not intend to modify this*
10
           *requirement. If Surefile wants to use KP's name, Mr. Dean should contact Jules*
11
           *Parent in KP's Procurement & Supply organization, to obtain prior written*
12
           *consent. Mr. Dean has Jules' contact info.*
13

14
15         10. After negotiating with DEAN and his counsel regarding whether DEAN would be

16  prohibited from using the KAISER name and logo in DEAN's future businesses without Kaiser

17  affirmatively granting it by written authorization and the price of such a prohibition, KAISER

18
   elected not to include such a provision in the Settlement Agreement and as a result, to pay a
19
   lower amount to DEAN than KAISER would have had to pay in order to include this affirmative
20
21  granting of rights in the Settlement Agreement. This decision was made after full consideration

22  by KAISER executives and its counsel; KAISER knew and understood that because of its

23  deliberate choice, it would thenceforth be legally unable to prevent DEAN from using the

24
   KAISER name or logo in his future business, without their affirmative granting of it as in the
25
   terminated storage/scanning contracts. This constituted not only kaiser releasing of any future
26
27  trademark claim against the Deans but also Kaiser bargained away that right and made it part of

28  the consideration to Dean. As is clear from Ms. Burkes email of March 8, 2011, Dean made an

1  offer and Kaiser accepted it. For ninety thousand dollars the Plaintiffs bargained for the right to

2  use Kaisers name and trademark in the future without the need for Kaiser affirmatively granting

3  its permission (publicity restrictions). In exchange for Kaiser releasing of that right (publicity

4  restrictions) to Dean as consideration and paying Dean for past services rendered of 110

5

6  thousand dollars, the Deans in return agreed to include a bi lateral release of any and all future

7  claims against Kaiser they had related to the terminated Storage/scanning contracts including a

8  waiver of California 1542.  The Kaiser executive Laurel Junk who was head of Kaisers

9  procurement and supply organization, signed the agreement having full authority to act on behalf

10  of Kaiser on these issues.  Indeed, Ms. Junk, was Jules Parents superior.

11

12  From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
    Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
13  To: lawstef7771@yahoo.com
    Date: Tuesday, March 8, 2011, 6:06 PM

14  Hi Tom,

15  I'm really sorry to hear about your Dad.

16  Thanks for getting back to me. I wanted to get confirmation on the current Dean offer.
    I want to minimize any confusion at this important point.

17  I wondered if you could confirm my understanding. As I understand the new offer, we
    have two options.

18  1. Option 1: $110K to settle with the previous language re: confidentiality. Please see
    Option 1 document, which is Version 9 (without additional confidentiality and publicity
19  restrictions). I want to confirm if the document as marked was the acceptable version
    to go with Option 1. We would need to update the dates in this version.

20  2. Option 2: $200k with updated language re confidentiality, publicity and
    disparagement. Please see Option 2 document, which is Version 9 that I sent to you
    in mid-Jan.  We would need to update theS amounts and dates in this version.

21

22  Option 1 Document:

23  Option 2 Document:

24  Can you let me know if this is correct?

25  Thanks much,
    Holly

26

27

28

**THE LAW**

11. California contract law is clear on this **"Courts will not add a term about which a contract is silent."** Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch., 229 Cal. App. 4th 549, 569 (2014). Like the Deans contention here, the Dameron plaintiff contended that a health plan it contracted with had an obligation to help it pursue additional payments from third parties, even though the contract did not say so, based on a history of cooperation. Id. at 568-69. The court rejected this argument, explaining that the "contract's silence as to any obligation to assist in collection from third party tortfeasors does not allow us to graft a new obligation into the agreement." Id. at 569. Instead, the court explained, its "function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted." Id. *Simply put, "[c]ourts will not add a term about which a contract is silent." Id.* (emphasis added).

12. California law and the facts and evidence in support of this complaint make it abundantly clear that once the plaintiffs in this case executed the Settlement agreement the Deans and Laurel Junk on behalf of Kaiser. Provides that the Settlement agreement shields the Deans from future liability regarding the use of Kaisers Name and Trademark. Kaiser cannot now graft a (publicity restriction or clause) into the this fully integrated bi lateral settlement agreement that they now wish were there and bargained away, any more than the Dameron plaintiff could add a term based on past history. In the case at bar a term requiring Dean to have written authorization to use the Kaiser name and Trademark as was in the terminated storage/scanning contracts which are superseded by the Settlement agreement. Exhibit 2. (The Settlement Agreement) of March 24, 2011.

**The Kaiser Lawsuit Results in judgement for Dean**

13. In 2012, the plaintiffs in this case had disagreements regarding DEAN's rights under

the Settlement Agreement and other matters. The parties attempted to settle their differences but

could not agree on the consideration the Deans would except to release their surviving claims

against Kaiser (one of the claims was Deans claims of omissions). On October 12, 2012,

KAISER filed a civil action in the Riverside Superior Court entitled Kaiser Foundation Health

Plan, Inc. and Kaiser Foundation Hospitals, plaintiffs v. Stephan Christopher Dean, Liza Dean,

dba SureFile Filing Systems and Does 1-10 inclusive, RSC No. INC 1207224 ("the Kaiser

Lawsuit"). The complaint contained four causes of action; the main cause was that the Deans

breached the parties Business Associate Agreement (BAA) by retaining patient information on

their computers, which was fully incorporated in the terminated storage/scanning contracts. What

is irrelevant in the Kaiser lawsuit of 2012 was the subject matter, whether it was about the BAA

or the terminated Storage/Scanning contracts being breached.  This lawsuit could have been

about trademarks and the Deans allegedly breaching the terminated Storage/Scanning contracts

by creating a website using the Kaiser name without their written authorization or alternatively

Dean retaining patient information allegedly breaching the BAA as Kaiser was claiming,

notwithstanding the outcome would be the same. It is unknown whether Kaiser will now contend

that this lawsuit in 2012 pertained to patient information and had nothing to do with Trademarks

and therefore this courts preliminary interpretation of the settlement agreement is not relevant.

That argument is futile and should be rejected as it would create a litigation nightmare by having

the plaintiffs in constant litigation because of the ambiguous term "other claims" "and "future

claims." The Settlement agreement supersedes them both (BAA, terminated Storage/Scanning

contracts) and what is important is what the settlement agreement includes and does not include.

COMPLAINT
- 7 -

13.  What is relevant was the Deans motion for summary judgement in response to this 2012 lawsuit and the basis for it, and Kaisers response or lack of one.  Most important was this court's preliminary interpretation of the settlement agreement in this 2012 lawsuit and the question this court raised. "The question becomes did Kaiser give up all those rights that they otherwise may have had to assert a breach of the BAA, ( or in the case at bar a breach of the terminated Storage/Scanning contracts)  by entering into a settlement agreement which purports to give up all claims, past, present, and future, with the exception of what is carved out under paragraph 13 of the settlement agreement?"  In the case at bar paragraph 13 is very relevant because it does not mention anything about Kaiser trademarks being carved out of the terminated Storage/Scanning contracts and surviving, the very language (publicity restrictions) Ms. Burke bargained away and wanted to include in paragraph 13. The Deans do not contend that the ambiguous terms "other claims" and "future claims" allow them to drive their car through Kaisers doors and say the agreement shields them from all future claims.   That would turn contract law on its head and require pages and pages of what parties to a contract can and cannot do, as stated earlier, it being no different than Kaiser now claiming that trademarks were not mentioned in this 2012 lawsuit only patient information, so this courts preliminary interpretation of the 2011 settlement agreement is irrelevant.  The Deans are claiming the ambiguous term "other claims" and "future claims" in the settlement agreement relates to Kaisers name and trademark, which in the terminated Storage/Scanning contracts Kaiser did maintain that affirmative right but as the facts and evidence proves bargained that term away.   On July 13, 2013, a hearing was held in the Kaiser Lawsuit on Deans motion for summary judgment. The Deans motion asserted that in the Settlement Agreement Kaiser had released any claim against Dean. Kaiser, though its attorney Tom Freeman, argued that the Settlement Agreement applied

1  only to the money debts that Kaiser had to Dean under the terminated Storage/Scanning

2  Contracts of 110 thousand dollars and any future money claims related to the Deans past services

3  rendered in the terminated contracts. This court rejected Kaisers argument and held that the

4

5  Settlement Agreement applied to any claim of any kind against Dean including future claims.

6  Request for judicial notice attached and incorporated by reference in this complaint Exhibit 3.

7  Transcript of July 13, 2013, hearing on Deans motion for summary judgement.

8  THE COURT:  Did it define the dispute? MR. FREEMAN:  It does.

9  THE COURT:  And would you read that to the court, and for the record, as to how it defines the

10  dispute.

11

12  MR. FREEMAN:  So in the recitals, it says:  "Whereas, Surefile asserts that it has yet to be fully

13  compensated for services performed and costs incurred in providing services to KP, and has

14  alleged other claims against KP -- "

15  THE COURT:  Stop right there.  "Other claims against

16  KP."  Do they identify what those other claims are?

17

18  MR. FREEMAN:  They do not define them in the settlement agreement.

19  THE COURT:  And in addition to the dispute that you identified in that language, the settlement

20  agreement goes on to purport to settle any and all claims that one has against the other, both past,

21  present, and future.  In fact, known and unknown claims.

22  MR. FREEMAN:  It does.  And -- and I'll concede that perhaps some of that language is not as

23  precise, which we would now hope it would have been.

24

25      14. On August 20, 2013, this court entered its order granting the summary judgment

26  motion but allowed KAISER to file an amended complaint permitting KAISER to present

27  extrinsic evidence as to the parties intent (as the Deans are in this complaint) in drafting the

28

1 │ settlement agreement. Kaiser declined to do so, and on September 13, 2013, the Kaiser Lawsuit

2 │ was dismissed with prejudice by Kaiser, leaving the summary judgment intact.

3 │ THE COURT: Okay. But then we -- then you are triggered by a fully integrated document. Are

4 │
5 │ you going to introduce parol evidence to try and defeat paragraph 18, which fully integrates into

6 │ this settlement agreement all prior agreements, negotiations, or understandings?

7 │ MR. FREEMAN: Yes. Your Honor, what it comes down to is the fact that Ms. Burke negotiated

8 │ this agreement understanding that the dispute that was being resolved was the compensation for

9 │ the Deans' services.

10 │
11 │ THE COURT: Despite language to the contrary. So she's going to submit a declaration to the

12 │ court saying that "I drafted this release agreement, I chose the words within this release

13 │ agreement, I made it all-encompassing, but, oh, by the way, I did not intend it to be a fully and

14 │ completely integrated release agreement, releasing all known and unknown claims" and then

15 │ specifically making reference to 1534? She's going to say that? I mean, she essentially already

16 │ has.

17 │
18 │ MR. FREEMAN: She has said that Your Honor.

19 │    15. Kaisers lawyer, Tom Freeman, throughout the hearing stated that Kaisers was going

20 │ to amend the complaint, even stating, "there be no ambiguity about the fact." It is uncertain

21 │ whether Kaiser will now try and use "smoke and mirrors" that they were induced to dismiss the

22 │
23 │ 2012 complaint with prejudice because the Deans somehow convinced them to, that argument

24 │ should be rejected.  The Deans were ready to go to trial and allow Kaiser to present extrinsic

25 │ evidence as to the parties intent in drafting the settlement agreement, and explain the ambiguous

26 │ term "other claims" in the settlement agreement.  Notwithstanding Kaiser did the prudent thing, a

27 │ cut and run, dismissing this 2012 complaint with prejudice. The reasoning behind Kaisers

28 │

decision is obvious, the extrinsic evidence (Exhibit 1 Declaration of Thomas Stefanelli attached

and incorporated by reference in this complaint) would have proven the Deans contention they

make in this complaint over a decade later. The ambiguous term "other claims "related to the

Deans future use "future claims" of Kaisers name and Trademark.  Kaiser on March 24, 2011,

could no longer legally stop the Deans from using their name or trademark by requiring the

Deans to have their affirmative granting in writing as was in the terminated storing/scanning

contracts. The Settlement agreement shields the Deans from future liability for their actions post

dating its execution regarding the use of the Kaiser name or trademark, the facts and evidence

presented in this complaint prove this material fact. The cited Dameron case is just one of many

that set legal precedent, Kaiser cannot now graft this new term into this fully integrated bi lateral

settlement and release agreement which as consideration to Dean bargained away, just because it

was in the previous terminated storage/scanning contracts. **"Courts will not add a term in which a

contract is silent."**

### The ICANN Arbitration over DEAN's Domain Name

16. On October 15, 2021, KAISER submitted to ICANN (a nationwide clearing and

enforcement organization for internet domain names) a complaint against DEAN alleging that

DEAN had wrongfully used KAISER's trademarked name and logo on his website. On

December 7, 2021, the arbitrators issued their decision. The arbitrators found that DEAN had

wrongfully and in bad faith created a domain that infringed KAISER's rights and ordered that the

domain name kphealthconnectusa.com be transferred to KAISER. The panel decided that

because the settlement agreement contained no affirmative granting of the right for the Deans to

use the Kaiser trademarks or name that the Deans had infringed on Kaisers Trademark.  They

also noted that an omission does not magically create an affirmative granting of rights and that

Kaiser never would have known about potential cybersquatting eleven years before it happened.

1    The arbitrators decided they had the authority to graft a new term into this fully integrated

2    agreement, in this case a term which Kaiser in 2011 bargained away as part of the consideration

3    to Dean.    As of March 24, 2011, Kaiser no longer had a legal right to submit a claim with

4
     ICANN against Dean and was aware of this material fact when initiating the ICANN claim.
5
     Kaisers actions in this matter constitute a Breach of the March 24, 2011, Settlement agreement
6
7    and release.

8                                    **[Breach of Contract]**

9
         17. DEAN incorporates by reference the allegations of paragraphs 1-16 above. The
10
11   actions of KAISER in bringing and pursuing the ICANN Dispute, in taking the domain name

12   created and used by DEAN, and in continuing to assert that DEAN has no right to use the

13   KAISER name or logo are all breaches of the Settlement Agreement in which KAISER

14
     bargained away and released all such claims. Such breaches of the Settlement Agreement are
15
     substantial causes of damage to DEAN in that he is unable to pursue his future business using
16
17   Kaisers name or trademark, which he is contractually entitled to do, and which KAISER cannot

18   legally prevent. The amount of damage caused to DEAN by the breaches of KAISER are

19   uncertain but exceeds $100,000. DEAN will establish the true amount at trial.

20
         18. Dean incorporates by reference the allegations in paragraphs 1-17.  The actions of
21
22   KAISER as alleged herein were done with the object of intimidating the DEANS from in the

23   future using Kaisers name or trademark in their businesses, with a conscious disregard  KAISER

24   intentionally with disregard of the DEAN rights that KAISER knew they had, were despicable,

25   malicious, and oppressive in that they were done solely to injure DEAN and make him spend

26   money they did not have to defend the rights KAISER knew they had and acts that no reasonable
27
28   person would accept. Therefore, DEAN is entitled to an award of punitive damages in an amount

1 | to be determined at trial.

2

3

4

5 | WHEREFORE, DEAN prays for judgment against all defendants, jointly and severally, as

6 | follows:

7 |     1. For damages in an amount to be proved at trial but not less than 100,000.00.

8 |     2. For punitive damages according to proof

9 |     3. For costs of suit herein incurred, and

10 |     4. For all other and further relief to which DEAN is entitled.

11

12

13 | Dated: May 14, 2024

14

15

16

17 | STEPHAN C. DEAN & LIZA D DEAN

18 | Pro Se

19

20

21

22

23

24

25

26

27

28

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |

NAME: STEPHAN C DEAN LIZA D DEAN DBA SURE FILE FILING SYSTEMS
FIRM NAME:
STREET ADDRESS: 37 187 BANKSIDE DR #2
CITY: CATHEDRAL CITY     STATE: CA     ZIP CODE: 92234
TELEPHONE NO.: 323 314 9692     FAX NO.:
E-MAIL ADDRESS: SUREFILE@MSN.COM
ATTORNEY FOR (name):

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 13 2024

C. Ortiz

DAC
SEP 13 2024

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME: PALM SPRINGS

PLAINTIFF/PETITIONER: STEPHAN C DEAN LIZA D DEAN DBA SURE FILE FILING
DEFENDANT/RESPONDENT: KAISER FOUNDATION HEALTH PLAN INC ET AL

**REQUEST FOR DISMISSAL**

| CASE NUMBER: |
| CVPS 2402884 |

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [ ] With prejudice      (2) [x] Without prejudice
   b. (1) [x] Complaint           (2) [ ] Petition
      (3) [ ] Cross-complaint filed by (name):            on (date):
      (4) [ ] Cross-complaint filed by (name):            on (date):
      (5) [x] Entire action of all parties and all causes of action
      (6) [ ] Other (specify):*

2. (Complete in all cases except family law cases.)
   The court [x] did   [ ] did not  waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).
   Date: MAY 15 2024

   STEPHAN C DEAN
   (TYPE OR PRINT NAME OF [ ] ATTORNEY [x] PARTY WITHOUT ATTORNEY)
   *If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed

   ► (SIGNATURE)
   Attorney or party without attorney for:
   [x] Plaintiff/Petitioner      [ ] Defendant/Respondent
   [ ] Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date: SEPTEMBER 12 2024

   STEPHAN C DEAN
   (TYPE OR PRINT NAME OF [ ] ATTORNEY [x] PARTY WITHOUT ATTORNEY)
   ** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

   ► (SIGNATURE)
   Attorney or party without attorney for:
   [x] Plaintiff/Petitioner      [ ] Defendant/Respondent
   [ ] Cross-Complainant

4. [✓] Dismissal entered as requested  on (date): 9-13-24
5. [✓] Dismissal entered on (date):            as to only (name):
6. [ ] Dismissal **not entered** as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified  on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed      [ ] means to return conformed copy

Date: 9-13-24          Clerk, by                              , Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. January 1, 2013]            **REQUEST FOR DISMISSAL**            Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

| PLAINTIFF/PETITIONER: Stephan C. Dean, Liza D Dean DBA Surefile | CASE NUMBER: | **CIV-110** |
|---|---|---|
| DEFENDANT/RESPONDENT: Kaiser Foundation Health Plan Inc, et al | CVPS 2402884 | |

> **COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
>
> If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):* STEPHAN C DEAN LIZA D DEAN DBA SURE FILE FILING SYSTI

2. The person named in item 1 is *(check one below):*

   a. [x] not recovering anything of value by this action.

   b. [ ] recovering less than $10,000 in value by this action.

   c. [ ] recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. All court fees and court costs that were waived in this action have been paid to the court *(check one):*  [ ] Yes  [x] No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: SEPTEMBER 12 2024

STEPHAN C DEAN
(TYPE OR PRINT NAME OF [ ] ATTORNEY [x] PARTY MAKING DECLARATION)

▶ _____ (SIGNATURE)

---

**REQUEST FOR DISMISSAL**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]    [ Clear this form ]

1  Stephan C Dean
2  Liza D Dean DBA SUREFILE FILING SYSTEMS
3  37187 Bankside Drive, #2
   Cathedral City CA 92234
   Telephone: (323) 314-9692
4  SUREFILE@MSN.COM
5  In Pro Se

FILED

CLERK, U.S. DISTRICT COURT

12/27/2024

CENTRAL DISTRICT OF CALIFORNIA

BY ___AP___ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

L/N

| | |
|---|---|
| STEPHAN AND LIZA DEAN INDIVIDUALLY AND DBA SUREFILE FILINGS SYSTEMS, | Case No.:   5:24-cv-02742-KK(SPx) |
| Plaintiffs, | Assigned to: COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| KAISER FOUNDATION HEALTH PLAN, INC; KAISER FOUNDATION HOSPITALS; DOES 1-50 INCLUSIVE | BREACH OF CONTRACT DECLARATORY RELIEF UNDER 28 U.S.C 1331 AND 1338  15 USC 1051 TO 1127 |
| Defendants. | Request for judicial notice attached and incorporated by reference the Declaration of Thomas Stefanelli, Declaration of Stephan C Dean and Liza  D Dean DBA Surefile Filing Systems, July 2010 Transfer agreement, March 2011 Settlement and Release Agreement, October 2012 Kaiser lawsuit, July 31, 2013 Transcript on Deans motion for summary judgement, August 20, 2013 State Court Ruling on Summary Judgement |

Plaintiffs Stephan Dean and Liza Dean; individually and doing business as SureFile Filings Systems, allege:

**I. Parties and Relevant Persons**

1. Plaintiffs Stephan Dean and Liza Dean reside in Cathedral City California and do business as Surefile Filing Systems. They are referred to herein collectively as "DEAN". Even though DEAN is referred to herein in the singular for convenience, it refers to both Stephan and Liza Dean unless specified otherwise.

2. Defendants Kaiser Foundation Health Plan, Inc. is a corporation that does business throughout California, including Riverside County.

3. Defendant Kaiser Foundation Hospitals is an unincorporated entity that does business throughout California, including Riverside County and is an affiliate of Kaiser Foundation Health Plan, Inc. Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals are referred to herein collectively as "KAISER".

4. Defendants named herein as DOES 1-50 inclusive are presently unknown to Dean who therefore names said defendants by such fictitious names. When the true names and capacities of said Defendants DOES 1-50 are ascertained, this Complaint will be amended accordingly.

5. DEAN is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendants and Kaiser Foundation Hospitals were the agents, employees, co-venturers, affiliates, or partners of each other Defendant and of Kaiser Foundation Health Plan, Inc. and in doing or planning the actions herein alleged, each Defendant was acting with the course and scope of that agency, employment, partnership or joint venture with the knowledge, consent, and approval of each other Defendant.

**The Parties Dispute in 2011 was over the Deans future use of the Kaiser name and trademark without a license (Lanhan Act Claims) this court has supplemental jurisdiction**

6. For years the Deans have done business with Kaiser. Between 2008 and 2010, plaintiffs entered into two written contracts and numerous verbal agreements by which Kaiser transmitted to Dean certain information about some of Kaiser's patients or members for storing and scanning by Dean on plaintiffs' computers until requested by Kaiser. The written contracts

are commonly referred to as the "West Los Angeles Agreement" and the "Moreno Valley

Agreement" (collectively, along with the verbal agreements, "the Storage/Scanning Contracts").

Both terminated written contracts contained a prohibition on Dean using the Kaiser trademark or

name in advertising unless it was affirmatively granted in writing by Kaiser, to wit:

> *Publicity. Supplier will not, without the prior written consent of Kaiser*
> *Permanente, use in advertising, publicity, on the internet or otherwise the names, trade*
> *names, service marks, trade dress or logo of Kaiser Permanente, the Kaiser Permanente*
> *Medical Care Program or any affiliates of these entities or refer to the existence of this*
> *Agreement in any press releases, advertising, web sites or material distributed or made*
> *available to prospective customers or other third parties.*

7. In 2010, Kaiser terminated the Storage/Scanning Contracts. The Plaintiff demanded

that the Deans restore to them all the paper documents regarding Plaintiffs members and patients

that had been transferred to Dean under the terminated contracts. The plaintiffs entered into a

transfer agreement to facilitate the transfer. Request for judicial notice Dean Declaration (Exhibit

1). Kaiser conceded in that agreement that they owed the Plaintiffs money for storage and

services rendered. In late 2010 the Deans wanted to be paid the money plaintiffs owed them of

110 thousand dollars**. The dispute was not about paying the money owed or even how much

was owed. Kaiser refused to pay the money unless the parties agreed to resolve any future

name and Trademark licensing issues.**

> *"As you can imagine, I'm a bit disappointed we couldn't close this off last year.*
> *I fear that Mr. Dean is backing himself into a corner with little upside.*
> *As you are aware, my client's offer to do a complete settlement in consideration for a payment of*
> *$110,000 has expired. Sounds to me like your client never really intended to do a complete*
> *release. I had tried to be very clear that the only basis for resuming discussions with Mr. Dean*

1    *last year was based on Mr. Dean's agreement to release all claims. I was quite surprised that*

2    *Mr. Dean felt he had some surviving claims*"

3                                **The Settlement Agreement**

4        8. **In 2010 and 2011 the plaintiffs in this case were in a dispute over future**

5    **trademark licensing terms (Lanham Act Claims) (Common Nucleus of Operative Fact) not**

6    **money issues and this court has supplemental jurisdiction Under 15 USC 1051 TO 1141n**

7    **and 28 U.S.C 1331 AND 1338. The admissible extrinsic evidence proves this material fact.**

8

9

10       **9.** The extrinsic admissible evidence attached and incorporated by reference in this

11   complaint proves this material fact.   Representing Kaiser was Holly Burke, their in-house

12   attorney and representing the Deans was Thomas Stefanelli. Attached and incorporated by

13   reference in this complaint is the Declaration of Thomas Stefanelli.  See Skilstaf, Inc. v. CVS

14   Caremark Corp., 669 F.3d 1005, 12 Cal. Daily Op. Serv. 1739, 2012 Daily Journal D.A.R. 1848

15   (9th Cir. 2012) stating that, under California law, if a party claims that extrinsic evidence renders

16   a contract ambiguous, "the court must consider extrinsic evidence of possible ambiguity" no

17   matter "how clearly a contract is written"  )  Trident Center v. Connecticut General Life Ins. Co.,

18   847 F.2d 564, 569-70 (9th Cir. 1988) holds "  While we have our doubts about the wisdom of

19   Pacific Gas, we have no difficulty understanding its meaning, even without extrinsic evidence to

20   guide us. As we read the rule in California, we must reverse and remand to the district court in

21   order to give plaintiff an opportunity to present extrinsic evidence as to the intention of the

22   parties in drafting the contract. It may not be a wise rule we are applying, but it is a rule that

23   binds us. Erie R.R. Co. v. Tompkins,304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)."

10. Trident made two arguments as to why the district court's ruling was wrong. First, it contends that the language of the contract is ambiguous and proffers a construction that it believes supports its position. Second, Trident argues that, under California law, even seemingly unambiguous contracts are subject to modification by parol or extrinsic evidence. Trident faults the district court for denying it the opportunity to present evidence that the contract language did not accurately reflect the parties' intentions.

11. The plaintiffs in this case make the same argument as in Trident and unless this court considers the extrinsic evidence presented it will not understand the parties intent in executing the settlement agreement and the subject matter of the dispute. The Deans are not asking this court to add or delete or amend the agreement but to allow extrinsic evidence to explain the intent of the parties and prove that Kaisers' name and trademarks were the subject of the dispute in 2011 (Common Nucleus of Operative Fact) providing this court has subject matter jurisdiction. In Dean 1 see Case 5:22-cv-00278-MCS-KK Document 31 this court could not and would not consider extrinsic evidence because it was not properly incorporated and attached to the complaint, the legal theory the Deans presented (commission by omission) was not plausible as this court noted. The Deans did appeal the ruling but only on one issue, the courts refusal to consider the Deans declaration, which this court correctly ruled was not attached and incorporated by reference. This has all now been remedied and this court must consider this relevant extrinsic evidence. The evidence attached and incorporated by reference into this complaint is central to the Deans' allegations and plaintiff depends on it. Based on this new never-considered evidence the Deans respectfully ask that the injunction presently in place in Dean 1 be vacated by this court under FRCP 60 (b). **This is the reason why in Dean 2 (See**

**case number 5: 24-cv-1277-MCS-JPR Docket 23) when this court ordered Kaiser to show cause and present additional facts and argument why this court should not remand, they cut and ran, rather than conceding the dispute was over Lanham act claims in 2011. If the plaintiff had conceded, it would have been admission of this material fact and this court on its own or by motion could have under rule 60 (b) vacated the injunctions in Dean 1 Case No. 5:22-cv-00278-MCS-KK.** This is nothing new in a previous state action in 2012 the plaintiff did the exact same thing as will be discussed in detail in this complaint. Based on this new admissible evidence the 2013 states uncontested ruling request for judicial notice Dean declaration exhibit 5 provides this matter has already been fully adjudicated to a final uncontested judgement and claim and issue do apply as well as the Rooker- Feldman doctrine. The extrinsic evidence provides that prior to Kaiser signing the agreement in 2011 the use of their name and Trademark was the outstanding issue (other claims). The uncontested ruling and interpretation provide that the March 2011 settlement and release resolved not only**" disputes arising out of the subject agreements"** but **"all outstanding issues"** between the parties. The extrinsic evidence provides that trademarks were an outstanding issue in 2011 prior to executing the settlement agreement by the plaintiffs in this case.  It is too late to relitigate the issue or for Kaiser to expand the issues in federal court more than a decade later.  The plaintiffs in this case agreed a decade ago to have the state court interpret the settlement agreement and have subject matter jurisdiction of their federal claims. The state court even invited Kaiser to amend their complaint to Breach of the settlement agreement expanding the issues. The plaintiff in 2013 instead decided to dismiss all their claims with prejudice making the state ruling a final adjudication based on the merits, the states interpretation of the settlement agreement controls. The conduct alleged by Kaiser in their counter claims in Dean 1 did amount to a De Facto appeal

of the state courts ruling, because the conduct alleged was part of the original dispute in 2011 prior to executing the agreement and the agreement resolved all trademark issues. In other words, this conduct was addressed by the state court ruling in 2013 because the agreement resolved "ALL OUTSTANDING ISSUES" between the parties, and the Kaiser name and trademark was at issue in 2011 prior to filing the lawsuit. The declaration of Thomas Stefanelli attached and incorporated by reference in this complaint along with the judicially noticed state litigation support this.

**In the case at bar the terms**

**" Any and All Claims" "Other Claims" and "Future Claims" are Ambiguous**

12. The Deans are not contending, that the ambiguous terms "other claims" and "future claims" allow them to drive their car through Kaisers doors and say the agreement shields them from all future claims. That would turn contract law on its head and require pages and pages of what parties to a contract can and cannot do. Notwithstanding, they are claiming the ambiguous term "other claims" and "future claims" in the settlement agreement relates to Kaisers name and trademark, which in the Storage/Scanning contracts Kaiser maintained the affirmative right, but as the extrinsic admissible evidence proves bargained away.

13. As is evident from the Declaration**, the dispute was about Dean being prohibited from using the KAISER name or logo in the future** in his business unless Kaiser affirmatively granted that right in writing a (trademark license) as was incorporated in the terminated Storage/Scanning agreements. Ms. Burke made clear that Kaisers trademark licensing claims had to survive this fully integrated bi lateral settlement and release of all future claims. **Her intent**

**was that Kaiser be able to continue to enforce its protected mark in the future and prevent the Deans from using it for commercial purposes in the future. The parties were not trying to settle a Trademark infringement claim that had never occurred.**

> *As I mentioned in my email last night, I believe the Publicity clause in the executed contract with Surefile restricts Surefile from using the KP name or logo without KP consent (see email below). KP does not intend to modify this requirement. If Surefile wants to use KP's name, Mr. Dean should contact Jules Parent in KP's Procurement & Supply organization, to obtain prior written consent. Mr. Dean has Jules' contact info.*

> *Please note that the no publicity clause applies across the board to*
> *all of our vendors. I believe it is enforceable as Kaiser Permanente*
> *is a protected mark. I believe KP is firmly entitled to prevent a party from using this*
> *mark and logo for commercial purposes.*

**Dean makes the offer and Kaiser accepts**

14. After negotiating with Dean and his counsel regarding whether DEAN would be prohibited from using the Kaiser name and logo in Deans future businesses without Kaiser affirmatively granting it by written authorization and the price of such a prohibition, plaintiff elected not to include such a provision in the Settlement Agreement and as a result, to pay a lower amount to Dean than Kaiser would have had to pay in order to include this licensing term in the Settlement Agreement. This decision was made after full consideration by Kaiser executives and its counsel; the plaintiff knew and

understood that because of its deliberate choice, it would thenceforth be legally unable to prevent Dean from using the plaintiff's name or logo in the future, as it had in the previous storage/scanning agreements.

   15. This constituted not only plaintiff releasing any future trademark claims against the Deans but also Kaiser bargained away that right and made it part of the consideration to Dean. In exchange the plaintiffs agreed to this bi lateral fully integrated release agreement. As is clear from Ms. Burkes email Dean made an offer and Kaiser accepted it.

> From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
> Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
> To:lawstef7771@yahoo.com
> Date: Tuesday, March 8, 2011, 6:06 PM
>
> Hi Tom,
>
> I'm really sorry lo hear about your Dad.
>
> Thanks for getting back to me. I wanted to get confirmation on the current Dean offer. I want to minimize any confusion at this important point.
>
> I wondered if you could confirm my understanding. As I understand the new offer, we **have two options.**
>
> 1. Option 1: $110K to settle with the previous language re: confidentiality. Please see Option 1 document, which is Version 9 (without additional confidentiality and publicity restrictions). I want to confirm if the document as marked was the acceptable version to go with Option 1. We would need to update the dates in this version.
>
> 2. Option 2: $200k with updated language re confidentiality, publicity and disparagement. Please see Option 2 document, which is Version g that I sent to you in mid-Jan. We would need to update the$ amounts and dates in this version.

   16. Ms. Burke, Kaisers legal counsel even states **"I WANT TO MINIMIZE ANY CONFUSION AT THIS IMPORTANT POINT" "Without publicity restrictions."** Here is the offer, acceptance and consideration. The admissible extrinsic evidence provides that the Kaiser name and trademark was the underlying issue of the dispute prior to signing the agreement.  Once Kaiser signed and paid the Deans on March 24 2011 it became a binding release agreement, and they were no longer entitled to enforce publicity restrictions on the Deans.

   "The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date."

   A release is a permission tool and is a promise by the owner not to sue for unauthorized use. Kaiser released publicity restrictions to the Deans on March 24, 2011.  The plaintiff agreed and compromised ahead of time not to sue the Deans over future name and trademark claims. The admissible extrinsic evidence attached and incorporated by reference in this complaint proves this material fact.

1

2

**The ICANN Arbitration over DEAN's Domain Name**

3

4        17. On October 15, 2021, KAISER submitted to ICANN (a nationwide clearing and
enforcement organization for internet domain names) a complaint against DEAN alleging that

5   DEAN had wrongfully used KAISER's trademarked name and logo in his website. On December
7, 2021, the arbitrators issued their decision. The arbitrators found that DEAN had wrongfully

6   and in bad faith created a domain that infringed KAISER's rights and ordered that the domain
name kphealthconnectusa.com be transferred to KAISER. The panel decided that because the

7   settlement agreement contained no affirmative granting of the right for the Deans to use the
Kaiser trademarks or name that the Deans had infringed on Kaisers rights, they also noted Kaiser

8   never would have known about potential cybersquatting eleven years before it happened.  The
arbitrators decided they had the authority to add a term to a fully integrated agreement, in this

9   case a term which Kaiser in 2011 bargained away as part of the consideration to Dean.   As of
March 24, 2011, Kaiser no longer had a legal right to submit a claim with ICANN against Dean

10  and was aware of this material fact when initiating the ICANN claim. Kaisers' actions in this
matter constitute a Breach of the March 24 2011 settlement and release.

11

12

13

14                                   **THE LAW**

15

16        18.  California law is clear on this matter "Courts will not add a term about which a

17  contract is silent." Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch., 229 Cal.

18  App. 4th 549, 569 (2014). Similar to Plaintiffs' argument here, the Dameron plaintiff contended

19  that a health plan it contracted with had an obligation to help it pursue additional payments from

20  third parties, even though the contract did not say so, based on a history of cooperation. Id. at

21  568-69. The court rejected this argument, explaining that the "contract's silence as to any

22  obligation to assist in collection from third party tortfeasors does not allow us to graft a new

23  obligation into the agreement." Id. at 569. Instead, the court explained, its "function is to

24  determine what, in terms and substance, is contained in the contract, not to insert what has been

25  omitted." Id. Simply put, "[c]ourts will not add a term about which a contract is silent." Id.

26  (emphasis added). Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056,

27

28

1060 (9th Cir. 2011) (When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."). Kaiser cannot, after executing the March 24, 2011 agreement, try and enforce terms that are contained in the previous agreements ("the Storage/Scanning Contracts") because it supersedes them and is fully integrated.  The same as the Dameron plaintiff could not add terms based on past cooperation.

19. The settlement agreement contains no provisions explicitly related to the use of the KFHP marks because Kaiser decided to not include them as consideration to the Deans to settle the dispute, the extrinsic evidence attached and incorporated by reference proves this material fact. Kaiser willfully released all Lanham act claims.  Courts are not at liberty to read into a contract language that is demonstrably not there. See, e.g., Moss Dev. Co. v. Geary, 41 Cal. App. 3d 1, 9 (1974) ("Courts will not add a term to a contract about which the agreement is silent."); Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59 (2000) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").

20. The admissible extrinsic evidence proves the Deans case. Once executed**, by law the agreement shields the Deans from future liability regarding the use of Kaisers Name or Trademark.** Kaiser cannot add a term into the settlement agreement (**PUBLICITY RESTRICTIONS)** that they now wish were there and bargained away. A term that requires Dean have a (Trademark license) to use the Kaiser name and Trademark. Request for judicial notice Dean Declaration (Exhibit 2) March 24, 2011, Settlement and release agreement

**The Kaiser Lawsuit Results in Judgment for Dean**

21. In 2012, KAISER and DEAN had disagreements regarding DEAN's rights under the Settlement Agreement and other matters. The parties attempted to settle their differences but could not agree on the consideration the Deans would accept to release their surviving rights against Kaiser. On October 12, 2012, KAISER filed a civil action in the Riverside Superior Court entitled Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals, plaintiffs v. Stephan Christopher Dean, Liza Dean, dba SureFile Filing Systems and Does 1-10 inclusive, RSC No. INC 1207224. Request for judicial notice Dean Declaration (Exhibit 3) ("the Kaiser Lawsuit"). The parties agreed to allow the state court to have jurisdiction over the federal claims. Kaiser contended that the Deans had breached the parties canceled written agreements but conceded in the complaint that the parties had resolved all outstanding issues between them in the March 24 2011 settlement and release agreement.

22. What is not relevant in the Kaiser lawsuit was the subject matter and which canceled agreement was allegedly breached.  The March 24, 2011 settlement and release supersedes all previous canceled agreements, important is what the settlement agreement includes and does not include.

23. What is relevant was the Deans motion for summary judgement and the basis for it, and Kaisers response or lack of one.  The issue the Deans raised was in all relevant aspects the same as what is in front of this court (common nucleus of operative fact) the interpretation of the

settlement agreement. Most important was the court's preliminary interpretation of the settlement agreement, and the question the court raised. "The question becomes: Did Kaiser give up all of those rights that they otherwise may have had to assert a breach of the BAA," or in the case at bar a breach of the canceled Storage/Scanning contracts " by entering into a settlement agreement which purports to give up all claims, past, present, and future, with the exception of what is carved out under paragraph 13 of the settlement agreement?"  In the case at bar paragraph 13 is very relevant because it does not mention anything about Kaiser trademarks being carved out of the canceled Storage/Scanning contracts and surviving. The very paragraph Ms. Burke wanted to have the trademark licensing language inserted.

24. On July 31, 2013, a hearing was held in the Kaiser Lawsuit on Deans motion for summary judgment. Plaintiffs motion asserted that in the Settlement Agreement, the plaintiffs had released any claim against each other including future claims and that Kaiser had conceded in the complaint it resolved all outstanding issues between the parties.  **Kaiser, though its attorney Tom Freeman, argued that the Settlement Agreement applied only to the money debts that KAISER had to DEAN under the Storage/Scanning Contracts.**

 "Mr. FREEMAN: Yes. Your Honor, what it comes down to is the fact that Ms. Burke negotiated this agreement understanding that the dispute that was being resolved was the compensation for the Deans' services. "

25. The court rejected plaintiffs' argument and held that the Settlement Agreement applied to any claim of any kind against DEAN including future claims.  Request for judicial notice Dean Declaration (Exhibit 4). Transcript of July 31, 2013, hearing on Deans motion for summary judgement.

THE COURT:  Did it define the dispute? MR. FREEMAN:  It does.

THE COURT:  And would you read that to the court, and for the record, as to how it defines the dispute.

MR. FREEMAN:  So in the recitals, it says:  "Whereas, Surefile asserts that it has yet to be fully compensated for services performed and costs incurred in providing services to KP, and has alleged other claims against KP -- "

THE COURT**:  Stop right there.  "Other claims against**

**KP."  Do they identify what those other claims are?**

**MR. FREEMAN:  They do not define them in the settlement agreement**.

THE COURT:  And in addition to the dispute that you identified in that language, the settlement agreement goes on to purport to settle any and all claims that one has against the other, both past, present, and future.  In fact, known and unknown claims.

MR. FREEMAN:  It does.  And -- and I'll concede that perhaps some of that language is not as precise, which we would now hope it would have been.

26. On August 20, 2013, the court entered its order granting the summary judgment Motion. The uncontested ruling states the March 2011 settlement and release resolved not only disputes arising out of the subject agreements, but all "outstanding issues" (common nucleus of operative fact) between the parties not just money claims as Kaiser was arguing. Request for judicial notice Dean Declaration (Exhibit 5) summary judgement order. This ruling is a final

undisputed order and cannot over a decade later be appealed or relitigated as a federal claim by Kaiser. Based on the new admissible extrinsic evidence attached and incorporated by reference in this complaint, claim and issue preclusion do apply, and the agreement resolved trademark issues (**ALL OUTSTANDING ISSUES**). Trademarks were an outstanding issue in 2011 prior to signing the agreement and the extrinsic evidence attached and incorporated by reference in this complaint proves this material fact.  Kaiser by not amending and expanding the issues in their complaint and providing parol evidence **explaining the subject matter** (other claims) and the parties intent or appealing the ruling is a concession of this fact. The extrinsic evidence proves this material fact attached and incorporated by reference in this complaint.

27. The court allowed Kaiser to file an amended complaint in 2013 permitting them to present extrinsic/parol evidence as to the parties intent in drafting the settlement agreement and expand the issues. The plaintiff declined to do so, and on September 13, 2013, the Kaiser Lawsuit was dismissed with prejudice by Kaiser, leaving the summary judgment intact. A final judgement on the interpretation of the settlement agreement.  Claim and issue preclusion due apply in this case as well as the Rooker- Feldman doctrine apply.

THE COURT: Okay. But then we -- then you are triggered by a fully integrated document. **Are you going to introduce parol evidence to try and defeat paragraph 18, which fully integrates into this settlement agreement all prior agreements, negotiations, or understandings?**

**MR. FREEMAN: Yes. Your Honor, what it comes down to is the fact that Ms. Burke negotiated this agreement understanding that the dispute that was being resolved was the compensation for the Deans' services.**

THE COURT: Despite language to the contrary. So she's going to submit a declaration to the court saying that "I drafted this release agreement, I chose the words within this release agreement, I made it all-encompassing, but, oh, by the way, I did not intend it to be a fully and completely integrated release agreement, releasing all known and unknown claims" and then specifically making reference to 1534? She's going to say that? I mean, she essentially already has.

MR. FREEMAN: She has said that Your Honor.

      28. Kaisers lawyer, Tom Freeman, throughout the hearing stated that Kaisers was going to amend the complaint, expanding the issues, even stating, "there be no ambiguity about the fact." When the court asked if they were going to plead Breach of the settlement agreement Mr. Freeman stated.

    THE COURT: But not leave to amend on an allegation of

    a breach of the settlement agreement?

    MR. FREEMAN: Well, it may be with respect to the

    settlement agreement, Your Honor.

    THE COURT: Okay.

29.  **The Deans were ready to go to trial and allow Kaiser to present extrinsic evidence as to the parties intent in drafting the settlement agreement, and explain the ambiguous term "other claims" in the settlement agreement**.  Notwithstanding, Kaiser did the prudent thing, a cut and run, dismissing the complaint with prejudice. The exact same thing that plaintiff in Dean 2 did. (See case number 5: 24-cv-1277-MCS-JPR Docket 23)

30. The reasoning behind the plaintiffs' decision is obvious, the admissible extrinsic evidence (Declaration of Thomas Stefanelli attached and incorporated by reference into this complaint) would have proven the Deans contention they make in this complaint over a decade later. The ambiguous term "other claims "related to the Deans future use "Future Claims" of Kaisers name and Trademark (Lanham Act Claims**).**

31. Kaiser on March 24, 2011, could no longer legally stop the Deans from using their name or trademark by requiring the Deans to have their affirmative granting in writing to do so. The Settlement agreement shields the Deans from future liability for their actions postdating its execution regarding the use of the Kaiser name or Trademark. By law the plaintiff cannot now add a licensing term to this fully integrated bi lateral settlement and release agreement which they as consideration bargained away.

32. Kaiser in 2011 wanted to be able to continue to enforce its protected mark in the future, but instead released the right to preclude the Deans from using it in the future for commercial purposes as consideration.  Plaintiff can no longer try and enforce language from the previous agreements. The uncontested ruling states the March 2011 settlement and release resolved not only**" disputes arising out of the subject agreements"** but **"all outstanding**

1    **issues"** (common nucleus of operative fact) between the parties not just money claims as Kaiser

2    was arguing. Dean Declaration (Exhibit 5)

3        "WHEREAS, the parties to this Agreement now desire to settle and compromise any

4    claims they might possess against the other, settle the Dispute and otherwise resolve any

5    outstanding issues as more fully set forth herein. The Settlement Funds shall be in full and final

6    settlement and compromise of any claims they might possess against the other, including without

7    limitation the Dispute and any counterclaims and allegations related to or in connection with the

8    Dispute for all times prior to and after the Effective Date."

9

10

11       33. The admissible extrinsic evidence provides that the Kaiser name and trademark was

12   the outstanding issue in 2011 and was the underlying dispute (Common Nucleus of Operative

13   Fact) not money owed to the Deans.  Plaintiffs are legally no longer entitled to enforce their

14   protected mark and have this court in 2024 add a term that in 2011 they willfully decided to

15   release and not to include in the settlement agreement.  **There is no publicity clause in the**

16   **settlement agreement.**

17       "Please note that the no publicity clause applies across the board to

18            all of our vendors. I believe it is enforceable as Kaiser Permanente

19            is a protected mark. I believe KP is firmly entitled to prevent a party from using this

20            mark and logo for commercial purposes."

21

22

23

24       34. The language above is simply not there for a reason; Kaiser conceded trademark

25   rights to the Deans in March of 2011. **The courts interpretation in 2013 below is clear and**

26

27

28

unambiguous.  **Whether the future claim was" known or unknown." The settlement agreement has this catch all provision.**

"THE COURT: And in addition to the dispute that you identified in that language, the settlement agreement goes on to purport to settle any and all claims that one has against the other, both past, present, and future**.  In fact, known and unknown claims."**

**MR. FREEMAN: It does.  And -- and I'll concede that perhaps some of that language is not as precise, which we would now hope it would have been.**

35.Courts are not at liberty to read into a contract language that is demonstrably not there. See, e.g., Moss Dev. Co. v. Geary, 41 Cal. App. 3d 1, 9 (1974) ("Courts will not add a term to a contract about which the agreement is silent."); Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59 (2000**) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").**

36. Kaiser has no affirmative Lanham Act claims in 2024 because they willfully released them on March 24 ,2011 as consideration to the Deans. The admissible extrinsic evidence attached and incorporated by reference into this complaint proves this material fact.  The Kaiser name and Trademark claims were known by the plaintiff Kaiser prior to executing the settlement agreement in 2011 and that is an uncontested material fact.  **Kaiser, the defendant in this case made trademarks the issue in 2011 not the Deans.**

**"The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and**

any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date."

37**.** It is a material fact that the defendants name and Trademark is connected to the dispute of 2011.   This court cannot now add or change the language to make the contract more precise at Kaisers' behest**.  ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").**

38. **Just because the Deans decided to wait until 2021 to use the Kaiser name and Trademark is not relevant.  The parties in this case bargained in good faith for its use in 2011 prior to executing the release agreement. Plaintiff released all Lanham act claims in 2011.  Kaiser cannot use this court to get them out of a deal they made just because they do not like it, or change a final uncontested state court order, the agreement resolved all outstanding trademark issues. The legally presented extrinsic evidence attached and incorporated by reference in this complaint along with the judicially noticed 2012 state litigation proves this material fact.**

### Breach of Contract

39. DEAN incorporates by reference the allegations of paragraphs 1-38 above. The actions of KAISER in bringing and pursuing the ICANN Dispute, in taking the domain name created and used by DEAN, and in continuing to assert that DEAN has no legal right to use the KAISER name or logo are all breaches of the Settlement Agreement in which KAISER released all such claims. Such breaches of the Settlement Agreement are substantial causes of damage to DEAN in that he is unable to pursue his business using Kaisers trademark, which he is legally and contractually entitled to do, and which KAISER cannot legally prevent. The amount of damage caused to DEAN by the breaches of KAISER are uncertain  but exceeds $100,000. DEAN will establish the true amount at trial.

1
2
## DECLARATORY RELIEF
3
4      40. Dean incorporates by reference allegations of paragraphs 1-39 above. The Deans
5 respectfully request that this court grant declaratory relief stating that the settlement and release
6 agreement resolved all outstanding issues between the parties including federal Lanham act
7 claims Under 15 USC 1051 TO 1127.  That Dean does not need to have written consent to use
  the Kaiser name and trademark for marketing purposes. And that based on this new, never
  considered, admissible evidence that the previous injunction be vacated under FRCP 60(b).
8
9      WHEREFORE, DEAN prays for judgment against all defendants, jointly and severally, as
10 follows:   Damages to be proven at trial and a judicial Declaration that the parties Marh 24 2011
11 Settlement and Release agreement has resolved all outstanding Lanham Act claims. That Dean
   does not need to have written consent to use the Kaiser name and trademark for marketing
   purposes. and that the previous injunction be vacated in Case No. 5:22-cv-00278-MCS-KK
   under FRCP 60(b)
12
13
   */s/Stephan C. Dean    11/14/2024_____*
14
15 In Pro Per
16
   */s/Liza D. Dean       11/14/2024_____*
17
18 In Pro Per
19
20
21
22
23
24
25
26
27
28